EXHIBIT A

Skip To MainContent

[         ] [ Search ]

Civil Court Case Information - Case History

## Case Information

Case Number: CV2016-007692    Judge: Mroz, Rosa
File Date: 5/19/2016    Location: Downtown
Case Type: Civil

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Kenneth Long | Plaintiff | Male | Anne Findling |
| Cora Long | Plaintiff | Female | Anne Findling |
| State Of Arizona | Defendant | | Anthony Fernandez |
| Corizon Health Inc | Defendant | | Anthony Fernandez |
| Christopher Lee Johnson | Defendant | Male | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 7/9/2018 | MOT - Motion | 7/10/2018 | |

NOTE: DEFENDANTS' RULE 37 MOTION FOR SANCTIONS

| 7/9/2018 | SOF - Statement Of Facts | 7/10/2018 | |

NOTE: DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF DEFENDANTS' RULE 37 MOTION FOR SANCTIONS

| 7/2/2018 | ANS - Answer | 7/3/2018 | |

NOTE: DEFENDANTS STATE OF ARIZONA AND CORIZON HEALTH, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

| 6/22/2018 | SUM - Summons | 6/26/2018 | |
| 6/22/2018 | AFS - Affidavit Of Service | 6/28/2018 | |

NOTE: CHRISTOPHER LEE JOHNSON

| 6/13/2018 | 023 - ME: Order Entered By Court | 6/13/2018 | |
| 6/13/2018 | AMC - Amended Complaint | 6/14/2018 | |

NOTE: First Amended Complaint

| 5/21/2018 | REL - Reply | 5/23/2018 | |

NOTE: REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

| 5/8/2018 | RES - Response | 5/9/2018 | |

NOTE: DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

| 5/8/2018 | RES - Response | 5/9/2018 | |

NOTE: DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

| 4/19/2018 | 019 - ME: Ruling | 4/19/2018 | |
| 4/12/2018 | RES - Response | 4/14/2018 | |

NOTE: PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER FOR LEAVE TO AMEND COMPLAINT

| 4/5/2018 | NAR - Notice Of Appearance | 4/6/2018 | |
| 3/29/2018 | SUM - Summons | 4/2/2018 | |
| 3/29/2018 | AFS - Affidavit Of Service | 4/4/2018 | |

NOTE: CHRISTOPHER LEE JOHNSON

| 3/27/2018 | 023 - ME: Order Entered By Court | 3/27/2018 | |
| 3/23/2018 | MFR - Motion For Reconsideration | 3/26/2018 | |

NOTE: DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER FOR LEAVE TO AMEND COMPLAINT

| 3/20/2018 | ORD - Order | 3/20/2018 | |

NOTE: ORDER FOR LEAVE TO AMEND COMPLAINT

| 3/20/2018 | AMC - Amended Complaint | 3/21/2018 | |

NOTE: First Amended Complaint

| 3/9/2018 | 029 - ME: Status Conference | 3/9/2018 | |
| 3/8/2018 | STA - Statement | 3/9/2018 | |

NOTE: OF DISCOVERY DISPUTE

| 3/8/2018 | STA - Statement | 3/9/2018 | |

NOTE: ON DISCOVERY DISPUTE

| 3/8/2018 | 028 - ME: Status Conference Set | 3/8/2018 | |
| 2/23/2018 | 019 - ME: Ruling | 2/23/2018 | |
| 2/21/2018 | MTA - Motion To Amend | 2/23/2018 | |

NOTE: MOTION FOR LEAVE TO AMEND COMPLAINT

| 2/20/2018 | MTC - Motion To Compel | 2/21/2018 | |

NOTE: DEFENDANTS' EXPEDITED RULE 37 MOTION TO COMPEL DISCLOSURE AND FOR SANCTIONS, INCLUDING: IMMEDIATE STAY OF THE LITIGATION; STRIKING PLAINTIFFS' EXPERT DR. O'STEEN; AND PERMITTING TESTIMONY TO BE TAKEN OF DR. O'STEEN REGARDING HIS IMPROPER CONTACTS

| 2/20/2018 | MOT - Motion | 2/22/2018 | |

NOTE: MOTION FOR EXPEDITED CONSIDERATION OF DEFENDANTS' MOTION FOR SANCTIONS DATED FEBRUARY 20, 2018

| 12/13/2017 | ORD - Order | 12/13/2017 | |

NOTE: REGARDING CONFIDENTIALITY OF THE MEDICAL AND MENTAL HEALTH RECORDS OF PLAINTIFFS CORA LONG AND KENNETH LONG

| 12/11/2017 | 083 - ME: Conference Reset/Cont | 12/11/2017 | |
| 12/8/2017 | STP - Stipulation | 12/11/2017 | |

NOTE: STIPULATION AND PROTECTIVE ORDER RE CONFIDENTIALITY OF MEDICAL AND MENTAL HEALTH RECORDS OF PLAINTIFFS

| 12/6/2017 | SCO – Scheduling Order | 12/6/2017 | |

NOTE: AMENDED

| 12/1/2017 | STP - Stipulation | 12/1/2017 | |

NOTE: JOINT STIPULATION TO AMEND SCHEDULING ORDER

| 8/11/2017 | 083 - ME: Conference Reset/Cont | 8/11/2017 | |
| 8/11/2017 | ORD - Order | 8/11/2017 | |

NOTE: PROPOSED AMENDED SCHEDULING ORDER

| 8/8/2017 | STP - Stipulation | 8/9/2017 | |

NOTE: Stipulation to Amend Scheduling Order

| 6/26/2017 | 023 - ME: Order Entered By Court | 6/26/2017 | |
| 4/5/2017 | 029 - ME: Status Conference | 4/5/2017 | |
| 3/8/2017 | 028 - ME: Status Conference Set | 3/8/2017 | |
| 3/3/2017 | SCO – Scheduling Order | 3/3/2017 | |

NOTE: SCHEDULING ORDER

| 2/22/2017 | NNF - Not Of Non-Parties At Fault | 2/23/2017 | |

NOTE: DEFENDANTS' NOTICE OF NON-PARTY AT FAULT

| 2/1/2017 | JSR – Joint Scheduling Report | 2/2/2017 | |

NOTE: Joint Report

| 12/23/2016 | 022 - ME: Order Signed | 12/23/2016 | |
| 12/22/2016 | ORD - Order | 1/3/2017 | |

NOTE: REGARDING CONFIDENTIALITY OF POLICIES AND PROCEDURE OF DEFENDANT CORIZON HEALTH INC

| 12/16/2016 | ORD - Order | 12/16/2016 | |

NOTE: ORDER REGARDING CONFIDENTIALITY OF POLICIES AND PROCEDURES OF DEFENDANT CORIZON HEALTH, INC.

| 12/13/2017 | STP - Stipulation | 12/14/2016 | |

NOTE: Stipulation and Protective Order Regarding Confidentiality of Documents and Materials

| 10/26/2016 | 311 - ME: 150 Day Minute Entry | 10/26/2016 | |
| 9/1/2016 | ANS - Answer | 9/1/2016 | |

NOTE: Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint-CO CHRG RECEIPT 25454605

| 9/1/2016 | NOT - Notice | 9/1/2016 | |

NOTE: Defendants' Demand for Compliance with ARS 12-2603

| 9/1/2016 | NJT - Not Demand For Jury Trials | 9/1/2016 | |

**NOTE:** Defendants' Demand for Jury Trial
9/1/2016            CCA - Cert Compulsory Arbitration                          9/1/2016
**NOTE:** Defendants' Certificate of Arbitration
8/24/2016          322 - ME: Notice Of Intent To Dismiss                      8/24/2016
8/15/2016          AFS - Affidavit Of Service                                 8/22/2016
**NOTE:** STATE OF ARIZONA
8/15/2016          AFS - Affidavit Of Service                                 8/22/2016
**NOTE:** CORIZON HEALTH INC
8/15/2016          SUM - Summons                                              8/16/2016
8/15/2016          SUM - Summons                                              8/16/2016
5/19/2016          COM - Complaint                                            5/20/2016
5/19/2016          CCN - Cert Arbitration - Not Subject                       5/20/2016
5/19/2016          CSH - Coversheet                                           5/20/2016
5/19/2016          NJT - Not Demand For Jury Trials                           5/20/2016

## Case Calendar

| Date | Time | Event |
|------|------|-------|
| 3/30/2017 | 9:30 | Status Conference |
| 3/8/2018 | 9:30 | Status Conference |
| 4/18/2018 | 8:45 | Status Conference |
| 6/27/2018 | 9:00 | Pre-Trial Conference |
| 9/18/2018 | 9:00 | Pre-Trial Conference |

## Judgments

**There are no judgments on file**

Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
Attorneys for Defendants

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV- 2016-007692 |
| Plaintiff, | **DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION** |
| v. | (The Honorable Rosa Mroz) |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., a Missouri corporation, doing business in the State of Arizona; CHRISTOPHER LEE JOHNSON, D.O., an individual, | |
| Defendants. | |

Pursuant to 28 U.S.C. §§ 1331, 1441, 1446 and Rule 3.6 of the Rules of the United States District Court for the District of Arizona, Defendants State of Arizona, Corizon Health, Inc. and Christopher Johnson, D.O. (collectively "Defendants"), by and through counsel undersigned, have removed this action to the United States District Court in and for the District of Arizona, Phoenix Division.

Pursuant to 28 U.S.C. § 1446, this Court shall take no more action in this case, unless the case is remanded. A copy of the Notice of Removal filed with the United States District Court, without exhibits, is attached as **Exhibit 1**.

**RESPECTFULLY SUBMITTED** this 11th day of July, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By /s/Rebecca E. Stanton
  Rebecca E. Stanton
  Anthony J. Fernandez
  *Attorneys for Defendants*

**ORIGINAL** efiled via AZ TurboCourt
on this 11th day of July, 2018 with:

**The Clerk of the Court**

The Honorable Rosa Mroz
**MARICOPA COUNTY SUPERIOR COURT**
East Court Building - 414
101 Jefferson
Phoenix, AZ  85003-2243

**COPIES** mailed this same day to:

Joel B. Robbins
Anne E. Findling
Lauren E. Channell
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
*Attorneys for Plaintiffs*

Krista Carman
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
*Attorneys for Plaintiffs*

By: /s/  Nelly Preca

2

EXHIBIT 1

Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth and Cora Long, Husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of Nicholas Long, <br><br> Plaintiff, <br><br> v. <br><br> State of Arizona, a body politic, Corizon Health, Inc., a Missouri corporation, doing business in the State of Arizona; Christopher Lee Johnson, D.O., an individual, <br><br> Defendants. | Case No._____ <br><br> **DEFENDANTS' NOTICE OF REMOVAL** <br><br> (Arizona Superior Court, County of Maricopa, Case No. CV-2016-007692) |

**TO:  THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, PHOENIX DIVISION**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§1441 and 1446, and LRCiv 3.6, Defendants State of Arizona, Corizon Health, Inc. and Christopher Johnson ("Defendants"), hereby remove the state court civil action originally commenced in the Superior Court of the State of Arizona, County of Maricopa, entitled *Kenneth and Cora Long, et al. vs. State of Arizona, et al.* Case No. CV-2016-007692 ("State Court Action") to this Court.  In support of such removal, Defendants state as follows:

A.    The state court action was filed by Plaintiffs, Kenneth and Cora Long, in the Superior Court of the State of Arizona in and for the County of Maricopa or about May 18, 2016, as Case No.  CV-2016-007692, alleging state-law claims.  Plaintiffs filed a First

Amended Complaint on or about June 13, 2018. True and correct copies of the most recent state court docket, process, pleadings, and orders filed in the State Court Action to date are attached hereto as **EXHIBIT A.**

B.     Plaintiffs' First Amended Complaint, filed on or about June 13, 2018, added constitutional claims under 42 U.S.C. §1983, thereby conferring federal question jurisdiction to the federal courts under 28 U.S.C. §§1331.[1] Previously, Plaintiffs had alleged only state-law claims.

C.     On June 13, 2018, Defendants State of Arizona and Corizon Health, Inc. were served with the First Amended Complaint. On June 20, 2018, Defendant Christopher Johnson was served with the First Amended Complaint. Accordingly, this Notice of Removal is filed within the thirty (30) days after receipt by Defendants of the First Amended Complaint, and it is timely filed under 28 U.S.C. § 1446(b)(3).

D.     This Court has federal question jurisdiction because Plaintiffs' First Amended Complaint alleges violations of the U.S. Constitution, including deliberate indifference of a serious medical need, pursuant to 42 U.S.C. § 1983.

E.     Under 28 U.S.C. § 1446(a), venue of this action is proper in this Court as the district and division within which the state court action was brought.

F.     Under 28 U.S. § 1446 (b)(2)(a), all Defendants have properly joined/consented to the removal of this action.

G.     A notification of the filing of this Notice of Removal to District Court will be promptly filed in the Superior Court of Maricopa County in the State of Arizona.  Written Notice of the filing of this Notice of Removal is being delivered to all parties through counsel of record.

---

[1]  Plaintiffs originally filed their First Amended Complaint on March 20, 2018, during a stay in the state-court litigation. However, the Court vacated Plaintiffs' First Amended Complaint in an Order dated April 18, 2018, thus dissolving Defendants' right to remove the case to Federal Court within the time-period prescribed for removal under 28 U.S.C. § 1446(b)(3). Plaintiffs thereafter filed the First Amended Complaint on June 13, 2018, and served it on Defendant Johnson on June 20, 2018. Under the plain language of 28 U.S.C. § 1446(b)(3), Defendants' Notice of Removal is timely. Moreover, the time limit stated in 28 U.S.C. § 1446(b)(3) is not jurisdictional. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

WHEREFORE, Defendants request that the above-referenced action currently pending in the Superior Court of Maricopa County, State of Arizona, be removed to this Court. As required by 28 U.S.C. § 1446(d), Defendants will promptly give written notice to Plaintiffs. Defendants shall also promptly file notice with the Clerk of Superior Court of Maricopa County.

**RESPECTFULLY SUBMITTED** this 11th day of July, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By s/ Rebecca E. Stanton
Rebecca E. Stanton
Anthony J. Fernandez
*Attorneys for Defendants*

## **VERIFICATION OF REBECCA E. STANTON**

I, Rebecca E. Stanton, verify as follows:

1.     I am an active member in good standing of the State Bar of Arizona and an associate with the law firm of Quintairos, Prieto, Wood & Boyer, P.A., counsel of record for Defendants. I have firsthand knowledge of the matters set forth herein. I submit this verification pursuant to Local Rule Civ. 3.6 and pursuant to Federal Rule of Civil Procedure 11.

2.     Attached as Exhibit A are true and complete copies of all pleadings and other documents filed in the state court civil action originally commenced in the Superior Court of the State of Arizona in and for the County of Maricopa, entitled *Kenneth and Cora Long, et al. vs. State of Arizona, et al.* Case No. CV-2016-007692.

I verify under oath that the foregoing is true and correct.

Executed this 11th day of July, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By _____
    Rebecca E. Stanton
    *Attorneys for Defendants*

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of July, 2018, I electronically transmitted the foregoing with the Clerk of the Court using the CM/ECF system for filing, and copies were mailed to all counsel of record at the following addresses:

Joel B. Robbins
Anne E. Findling
Lauren E. Channell
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
*Attorneys for Plaintiffs*

Krista Carman
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
*Attorneys for Plaintiffs*

By: s/ Nelly Preca

| From: | CustomerService=turbocourt.com@smtp.turbocourt.com on behalf of TurboCourt Customer Service |
|---|---|
| To: | Nelly Preca |
| Subject: | E-Filing Status: Form Set # 2698445 Delivered |
| Date: | Wednesday, July 11, 2018 10:41:49 AM |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2698445 has been DELIVERED to Maricopa County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2698445
Keyword/Matter #: 92015 - AJF - LONG
Delivery Date and Time: Jul 11, 2018 10:41 AM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Notice of Removal to Federal Court: DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
Exhibit/Attachment (Supporting): EX 1 TO NTC OF REMOVAL

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com
7
8  Krista Carman (021700)
   Warnock, MacKinlay & Carman, PLLC
9  246 S. Cortez Street
   Prescott, AZ 86303
10 Telephone: (928) 445-8056
11 Facsimile: (928) 445-8046
   kcarman@lawwmc.com
12
13 *Attorneys for Plaintiffs*



COPY



MAY 19 2016

MICHAEL K. JEANES, CLERK
N. COTTON
DEPUTY CLERK

14
15       **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
16          **IN AND FOR THE COUNTY OF MARICOPA**
17

18  KENNETH and CORA LONG,            Case No. CV 2016-007692
19  husband and wife, individually, and
    as statutory beneficiaries for Nicholas
20  Long, deceased; and on behalf of the
    estate of NICHOLAS LONG,          **COMPLAINT**
21
22        Plaintiffs,                 (Wrongful Death)
23     vs.                            **(Jury Trial Requested)**
24
25  STATE OF ARIZONA, a body politic,
    CORIZON HEALTH, INC., an
26  Missouri corporation, doing business
    in the State of Arizona,
27
28        Defendants.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Plaintiffs Kenneth Long and Cora Long, for their complaint on behalf of themselves and the estate of Nicholas Long against Defendants State of Arizona and Corizon Health, Inc., allege as follows:

<u>PARTIES</u>

1.      Plaintiffs Kenneth Long and Cora Long ("Plaintiffs") are residents of the State of Arizona. They are the natural parents of decedent Nicholas Long.

2.      Decedent Nicholas Long was a resident of the State of Arizona. Although incarcerated with the Arizona Department of Corrections at the time of his death, Mr. Long's residence was in Yavapai County, Arizona prior to his incarceration. He died on May 25, 2015.

3.      Defendant State of Arizona is a governmental entity organized under the Constitution of the United States. Its subdivisions or agencies include the Arizona Department of Corrections (ADC).

4.      Defendant State of Arizona is liable for the acts and omissions of its employees within the scope of their employment, including the Director, officers and other employees of the ADC under the doctrine of *respondeat superior*.

5.      Pursuant to A.R.S. §31-201.01(F), any and all causes of action which may arise out of tort caused by the Director, prison officers, or employees of ADC, run only against the State.

6.      Defendant State of Arizona has a non-delegable duty of care, custody, and control over the inmates within its custody, including the duty to provide medical care for the serious medical needs of the inmates.

7.      Effective March 4, 2013, Defendant Corizon Health, Inc. ("Corizon") contracted with Arizona Department of Corrections to provide full service medical, mental health, and dental care (collectively "healthcare" to the

inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma.

8. Defendant State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

9. Defendant State of Arizona requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who present for treatment.

10. Defendant State of Arizona remains ultimately liable for the acts and omissions of Defendant Corizon in providing healthcare to inmates within the ADC and the Arizona prison system.

## JURISDICTION AND VENUE

11. The amount in controversy exceeds the jurisdictional threshold of the Court.

12. A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on November 20, 2015. More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

13. This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

## FACTUAL BACKGROUND

14. Nicholas Long was admitted to the Arizona Department of Corrections on March 12, 2014, to serve a sentence for selling six prescription pills to a neighbor to pay his cell phone bill. The maximum end date of his sentence was March 13, 2019.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

15. Nicholas was naïve and guileless. His disciplinary tickets in prison were for playing basketball when he was supposed to be working with the grounds crew and refusing to shave.

16. At intake, Nicholas (5'10") was reported to have weighed 153 lbs. He reported a history of Bipolar Disorder (a mood disorder) that had been previously treated with medication. He also reported stomach issues for which he requested Prilosec (omeprazole), a medication commonly used for Gastroesophageal Reflux Disease (GERD). Nicholas was transferred to ASPC-Yuma to serve his sentence.

17. On March 28, 2014, Nicholas submitted a Health Needs Request (HNR) to request Prilosec "for his stomach." A progress note of April 3, 2014 documents Nicholas's weight to be 160 lbs. Nicholas was assessed as having GERD and a prescription for Prilosec was ordered.

18. On June 28, 2014, Nicholas (at the time 180 lbs) was seen by a nurse for a chief complaint of 10/10 abdominal pain, intermittent, for one week. The pain was described as sharp. He was tachycardic. The record does not include referral to an appropriate provider or any GI work-up.

19. Nicholas's October 7, 2014 HNR for "really bad" stomach cramping, diarrhea, pain, and inability to sleep, and his October 10, 2014 HNR report of "severe pain" resulted in being placed on the "nurse's line" on October 12. Records document bloody stool, inability to urinate, anorexia, diarrhea, weakness, dizziness and vomiting. He described his pain as 9/10 to 10/10. His weight was down 24 pounds since his last assessment. His abdomen was described as tender, hyperactive bowel sounds present, guarding present, with confirmed blood in his stool. The record does not include referral to an appropriate provider or any GI work-up. No CT was done and no surgical consult was obtained.

20. His condition deteriorated and on November 6, 2014 he was admitted to Yuma Regional Medical Center for possible acute colitis. He was discharged on November 11, with instructions to continue Levaquin. Nicholas was transferred to ASPC-Florence. He continued to have stomach cramps and diarrhea. He was weak and required supplemental nutrition.

21. Nicholas's GI symptoms continued. He had trouble eating. His stools were grossly abnormal, with bleeding and diarrhea.

22. On November 26, 2014, Nicholas was admitted to Tempe St. Luke's Hospital. A CT revealed circumferential large bowel mucosal thickening consistent with infectious or inflammatory colitis, likely ulcerative colitis. Nicholas was reported to having signed out against medical advice, apparently because he was unable to eat. There's no record of a mental health consult or contact with Nicholas's family. Protocols for addressing his condition were ignored.

23. Sometime during this period, someone labeled Nicholas as being on a "hunger strike." The label clearly infected the treatment he was given. Although the records show that he complained that he was unable to eat and that his medication was causing side effects, he was stigmatized and denied appropriate care apparently on someone's assumption that his conduct was willful. Again, the protocols for addressing these issues were disregarded.

24. It wasn't until late January that mental health became involved and it wasn't until Nicholas was critically ill and unable to understand his condition that he saw a psychiatrist. Still the protocols were ignored.

25. Nicholas was ultimately admitted to Mountain Vista Medical Center after becoming unresponsive from starvation and dehydration. Abdominal surgery revealed severe adhesions and perforations. He had

subtotal colectomy, placement of ileostomy, enterorrhaphy and lysis of adhesions.

26. Complications ultimately led to Nicholas's death on May 25, 2015.

### CLAIMS FOR RELIEF

#### Count One

#### NEGLIGENCE

#### (Defendant State of Arizona)

27. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

28. The State of Arizona has a non-delegable duty of care, custody, and control of inmates within the state prison system. This non-delegable duty includes providing appropriate medical care for serious medical needs.

29. The State of Arizona also has a duty to ensure, through appropriate monitoring, that reasonable and necessary medical care is being provided by contracted and subcontracted medical providers duly licensed and acting within the scope of those licenses according to the community standard of care to inmates within the ADC and the Arizona state prison system is delivered.

30. The State of Arizona breached its duty to Plaintiffs' decedent by failing to provide appropriate medical care for his serious medical needs.

31. The State of Arizona further breached its duty to Plaintiffs' decedent by failing to adequately monitor the contracted medical services being provided to Plaintiffs' decedent and others.

32. As a result of these breaches, Plaintiffs' decedent failed to receive competent medical care for his serious medical needs resulting in his death.

33. By virtue of the non-delegable duty set forth above, Defendant State of Arizona is vicariously liable for the medical negligence of Defendant Corizon Health, Inc. as set forth in Count Two of Plaintiffs' Complaint.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

<div align="center">

**Count Two**

**NEGLIGENCE**
**(Defendant Corizon Health, Inc.)**

</div>

34. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

35. Defendant Corizon has a duty to provide reasonable healthcare in accordance with the community standard of care by appropriately licensed medical personnel acting within the scope of their respective licenses.

36. Defendant Corizon breached that duty by failing to provide necessary medical care to Plaintiffs' decedent within the community standard of care.

37. Defendant Corizon and its employees and agents failed to properly recognize, assess, diagnose or treat Plaintiffs' decedent's serious medical condition resulting in his death.

38. Defendant Corizon and its employees and agents failed to exercise that degree of care that a reasonable provider would exercise under the same or similar circumstances.

39. Defendant Corizon created policies and procedures that resulted in its employees failing to practice within the scope of their respective licenses.

40. Defendant Corizon's negligence includes:

    a. Failing to properly assess Plaintiffs' decedent after he made his medical needs known;

    b. Failing to establish proper policy, procedures, custom and practice for identifying inmates who require a higher level of care than can be provided at the prison complex;

    c. Failing to provide appropriate personnel and to train that personnel in the recognition of conditions requiring a higher

level of medical care than can be provided at the prison complex;

    d.    Failing to properly assess Plaintiffs' decedent when his medical condition had obviously deteriorated;

    e.    Failing to investigate Plaintiffs' decedent's declining medical condition and waiting until his condition was life-threatening before taking action;

    f.    Failing to ascertain the source of Plaintiffs' decedent's complaints;

    g.    Failing to act on objective signs of an increasingly serious medical condition until it was too late for effective treatment.

41. Ordinary care required Defendant Corizon to refer Plaintiffs' decedent to a qualified and properly equipped medical professional who could conduct an adequate and proper medical examination, properly and competently diagnose Mr. Long's medical condition, and provide for competent and adequate treatment.

42. As a result of the breach of Defendant Corizon's duties to Plaintiffs' decedent as more fully set forth above, Defendant Corizon caused Plaintiffs' decedent to be denied timely, appropriate and competent medical care resulting in his death.

## Count Three
## WRONGFUL DEATH
### (All Defendants)

43. Pursuant to A.R.S. § 12-611, et seq., Plaintiffs hereby assert a claim for damages for the wrongful death of Nicholas Long based on the wrongful acts and negligent conduct set forth in Counts One and Two of this complaint.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

44.   As a result of the wrongful acts of Defendants as set forth above, Plaintiffs suffered damages including loss of love, companionship, and support.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.   For special damages;

B.   For lost wages, income, and other economic losses;

C.   For other general damages, including but not limited to pain and suffering, loss of enjoyment of life and other emotional trauma;

D.   For exemplary damages to the extent permitted by law;

E.   For taxable costs and pre- and post-judgment interest to the extent permitted by law;

F.   Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED:  May 18, 2016

ROBBINS & CURTIN, p.l.l.c.


By: _____
Joel B. Robbins
Anne E. Findling
*Attorneys for Plaintiffs*



1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com
7
   Krista Carman (021700)
8  Warnock, MacKinlay & Carman, PLLC
9  246 S. Cortez Street
   Prescott, AZ 86303
10 Telephone: (928) 445-8056
11 Facsimile: (928) 445-8046
   kcarman@lawwmc.com
12
13 *Attorneys for Plaintiffs*





COPY

MAY 1 9 2016

MICHAEL K. JEANES, CLERK
DEPUTY CLERK

14

15 **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

16 **IN AND FOR THE COUNTY OF MARICOPA**

17

18 KENNETH and CORA LONG,           Case No.
   husband and wife, individually, and as
19 statutory beneficiaries for Nicholas        CV 2016-007692
20 Long, deceased; and on behalf of the
   estate of NICHOLAS LONG,
21
22        Plaintiffs,                 **CERTIFICATE OF**
                                      **COMPULSORY ARBITRATION**
23 vs.
24
25 STATE OF ARIZONA, a body politic,
   CORIZON HEALTH, INC., an
26 Missouri corporation, doing business
   in the State of Arizona,
27
28        Defendants.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

The undersigned certifies that the largest award sought by the complainant, including punitive damages, but excluding interest, attorney's fees, and costs does exceed the $50,000 limits set by Local Rule for compulsory arbitration. This case is **NOT** subject to the Uniform Rules of Procedure for Arbitration.

RESPECTFULLY SUBMITTED: May 18, 2016

ROBBINS & CURTIN, p.l.l.c.

By: _____

Joel B. Robbins
Anne E. Findling
*Attorneys for Plaintiffs*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267



1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com
7
   Krista Carman (021700)
8  Warnock, MacKinlay & Carman, PLLC
9  246 S. Cortez Street
   Prescott, AZ 86303
10 Telephone: (928) 445-8056
11 Facsimile: (928) 445-8046
   kcarman@lawwmc.com
12
13 *Attorneys for Plaintiffs*
14
15     **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
16       **IN AND FOR THE COUNTY OF MARICOPA**
17
18 KENNETH and CORA LONG,          Case No.
   husband and wife, individually, and as
19 statutory beneficiaries for Nicholas             CV 2016-007692
   Long, deceased; and on behalf of the
20 estate of NICHOLAS LONG,
21        Plaintiffs,              **DEMAND FOR JURY TRIAL**
22
23 vs.
24 STATE OF ARIZONA, a body politic,
   CORIZON HEALTH, INC., an
25 Missouri corporation, doing business
26 in the State of Arizona,
27        Defendants.
28

COPY

MAY 1 9 2016

MICHAEL K. JEANES, CLERK
N. COTTON
DEPUTY CLERK

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Plaintiffs, through counsel undersigned, respectfully request a trial by jury on all issues in this matter triable to a jury.

RESPECTFULLY SUBMITTED: May 18, 2016

ROBBINS & CURTIN, p.l.l.c.

By: _____

Joel B. Robbins
Anne E. Findling
*Attorney for Plaintiffs*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267



Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
Warnock, MacKinlay & Carman, PLLC
246 S. Cortez Street
Prescott, AZ 86303
Telephone: (928) 445-8056
Facsimile: (928) 445-8046
kcarman@lawwmc.com

*Attorneys for Plaintiffs*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **SUMMONS** |
| vs. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona, | |
| Defendants. | |

If you would like legal advice from a lawyer, contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

THE STATE OF ARIZONA TO THE DEFENDANTS:

**CORIZON HEALTH, INC.**
**950 West Elliot Road, Suite 220**
**Tempe, Arizona 85284**

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court.  If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service.  If served out of the State of Arizona--whether by direct service, by registered or certified mail, or by publication--you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service.  Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director.  Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court.  Service by publication is complete 30 days after the date of first publication.   Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return.  **RULE 4, Arizona Rules of Civil Procedure, ARS Sections 20-222, 28-502, 28-503.**

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.  If you do not have an attorney and are a resident of Maricopa County, you may call the Lawyer Referral Service at 257-4434.  If you are not a resident of Maricopa County, you may call the Bar Association in your area.

YOU ARE HEREBY NOTIFIED that requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by parties at least three (3) judicial days in advance of a scheduled court proceeding.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the plaintiff's attorney.  **RULE 10(d), Arizona Rules of Civil Procedure, A.R.S.  Section 12-311; RULE 5, Arizona Rules of Civil Procedure.**

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:  (602) 265-0267

The name and address of plaintiff's attorney is:

Joel B. Robbins, Esq.
Anne E. Findling, Esq.
**Robbins & Curtin, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012

and

Krista Carman, Esq.
Warnock, MacKinlay & Carman, PLLC
246 S. Cortez Street
Prescott, AZ 86303

SIGNED AND SEALED this date: _____ 

By: _____
Deputy Clerk

AUG 1 2 2016

MICHAEL K. JEANES, CLERK
I. GARCIA
DEPUTY CLERK



Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
Attorneys for Defendants

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, Husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., a Missouri corporation, doing business in the State of Arizona <br><br> Defendants. | Case No. CV2016-007692 <br><br> **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT** <br><br> (Assigned to the Honorable Jo Lynn Gentry) |

Defendants Corizon Health, Inc. and the State of Arizona, hereby Answer Plaintiffs' Complaint dated May 18, 2016, as follows:

### PARTIES

1. Answering paragraphs 1 and 2, Defendants admit that Decedent passed away on May 25, 2015. Defendants deny knowledge or information sufficient to form a belief as to the balance of the allegations contained therein, and therefore deny same. Defendants further deny any and all allegations of liability or damages.

2. Answering paragraphs 3, 4, 5 and 6, Defendants admit that the State of Arizona is a governmental entity organized under Arizona law and that it has certain obligations under the law. Defendants are without sufficient information to form a belief

1 as to the remainder of the allegations contained therein, and therefore deny same.
2 Defendants expressly deny any and all allegations of liability or damages.

3     3.    Answering paragraph 7, Corizon Health, Inc. admits that Corizon, Inc.
4 contracted to provide certain services at certain Arizona correctional facilities as of March
5 4, 2013.

6     4.    Answering paragraphs 8, 9, and 10, Defendants admit that the State of
7 Arizona is a governmental entity organized under Arizona law and that it has certain
8 obligations. Those obligations were met with respect to Decedent's care. Defendants are
9 without sufficient information to form a belief as to the remainder of the allegations
10 contain therein, and therefore deny same. Defendants expressly deny any and all
11 allegations of liability or damages.

12 **JURISDICTION AND VENUE**

13     5.    Answering paragraph 11, Defendants deny knowledge or information
14 sufficient to form a belief as to the allegations contained therein, and therefore deny same.

15     6.    Answering paragraphs 12 and 13, Defendants deny knowledge or
16 information sufficient to form a belief as to the truth of the allegations contained therein,
17 and therefore deny same. Defendants expressly deny any and all allegations of liability or
18 damages.

19 **FACTUAL BACKGROUND**

20     7.    Answering paragraph 14, Defendants admit the allegations contained therein
21 concerning the time period of Decedent's incarceration and the location of his
22 incarceration. Defendants deny the balance of the allegations contained therein.

23     8.    Answering paragraph 15, Defendants deny the allegations contained therein.

24     9.    Answering paragraphs 16, 17, 18, 19, 20, 21, and 22, Defendants aver that
25 the records reflect Mr. Long's status and care while incarcerated. Defendants deny any and
26 all allegations of liability or damages.

27
28

10. Answering paragraphs 23 and 24, Defendants admit that a record indicates Decedent went on a hunger strike at some point in time, but deny the balance of the allegations, including any allegations of liability or damages.

11. Answering paragraph 25, Defendants aver that the medical records speak for themselves. Defendants further deny any and all allegations of liability or damages.

12. Answering paragraph 26, Defendants deny any and all allegations contained therein, including any allegations of liability or damages.

## COUNT ONE

## NEGLIGENCE (STATE OF ARIZONA)

13. Answering paragraph 27, Defendants repeat and reiterate their responses to paragraphs 1 -26 as if fully set forth herein.

14. Answering paragraphs 28, 29, 30, 31, 32 and 33, Defendants admit that the State has certain duties as prescribed by law, and that those duties were met. Defendants deny the balance of the allegations contained therein.

## CLAIMS FOR RELIEF

## COUNT TWO (DEFENDANT CORIZON)

15. Answering paragraph 34, Defendants admit, deny, and incorporate their responses to paragraphs 1- 33 above.

16. Answering paragraphs 35 and 36, Corizon admits that Corizon, Inc. had certain obligations under law. Those obligations were met in all aspects with respect to Decedent's health and mental healthcare. Corizon further denies any and all allegations of liability or damages against it contained therein.

17. Answering paragraphs 37, 38, 39, 40 (and subparts), 41 and 42, Defendants deny any and all allegations contained therein, including any allegations of liability or damages.

## COUNT THREE

## WRONGFUL DEATH

18.     Defendants deny all allegations against them in paragraphs 43 and 44 of Plaintiffs' Complaint.

## GENERAL DENIAL

1.     Defendants deny each and every allegation not specifically admitted above.

## AFFIRMATIVE DEFENSES

1.     Defendants affirmatively assert that Plaintiffs' Complaint fails to state a claim upon which relief can be granted against them pursuant to Rule 12(b)(6) Ariz. R. Civ. P.

2.     Defendants affirmatively assert no loss of chance existed and therefore Plaintiffs have no entitlement to recovery.

3.     Plaintiffs are required to prove that Defendants and their agents, and/or employees failed to exercise that degree of care, skill, and learning required of reasonable and prudent healthcare providers under the same or similar circumstances, and that the failure to do so was the proximate cause of injury sustained by Plaintiffs/Decedent in accordance with ARS Section 12-563.     The care and treatment provided to Plaintiffs/Decedent was appropriate and met the standard of care.

4.     Defendants assert that the alleged damages of Plaintiffs may be as a result of the care rendered by other individuals and/or entities beyond their control. This may include other healthcare providers that provided care and treatment before and/or after the care provided by Corizon, Inc.  Defendants are entitled to have their liability apportioned under ARS § 12-2501 in the event any liability is found. *See* ARS §§ 12-2501 – 2509.

5.     Defendants plead the affirmative defense of comparative negligence.

6.     Defendants plead the affirmative defense of contributory negligence and assumption of risk.

7.     Defendants plead the affirmative defense of failure to mitigate damages.

8.     Defendants affirmatively assert that they are not liable for the policies and procedures of an outside provider, facility and/or any non-party at fault.

9. Defendants allege all affirmative defenses in 8(c) and 12(b) Ariz. R. Civ. P. to avoid waiver.

10. Defendants reserve the right to amend their affirmative defenses, and to add affirmative defenses in the event future discovery reveals the existence of the need for such.

11. The State is entitled to immunity pursuant to A.R.S. § 12-820.01, 12-820.02(A), 12-820.04 and 12-820.05.

12. Defendants affirmatively allege that some or all of Plaintiffs' claims against the State are barred by the applicable statute of limitations.

13. The State affirmatively alleges that Plaintiffs' claims against the State are barred by Plaintiffs' failure to satisfy the requirements of A.R.S. §12-821.01, concerning the filing of a notice of claim.

14. There were no acts of negligence by the State.

15. Defendants affirmatively allege that they did not breach any duty owed to Decedent.

16. Defendants affirmatively allege the damages alleged by Plaintiffs were not casually connected to the alleged actions of the Defendants.

17. Decedent was comparatively and contributorily negligence and at fault, including negligent per se.

18. Defendants hereby reserve their right to assert, as investigation and discovery proceed, any other matter constituting a set-off, avoidance or defense pursuant to Arizona Rules of Civil Procedure 4, 8 and 12 as the result of such ongoing investigation and discovery may warrant. Defendants are not sure which, if any, additional affirmative defenses may be applicable and therefore reserve the right to allege further defenses after discovery is undertaken.

WHEREFORE, having fully answered Plaintiffs' Complaint, Defendants respectfully request:

a)   Plaintiffs take nothing by the Complaint;

b)   Plaintiffs' Complaint be dismissed <u>with prejudice</u>;

c)   Defendants be awarded their costs and reasonably incurred attorney's fees;

DATED this 1st day of September, 2016.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By _Rebecca Stanton — as for_
Anthony J. Fernandez
Vincent J. Montell
Attorneys for Defendants

**ORIGINAL** efiled and copy mailed
this 1st day of September, 2016, to:

The Honorable Jo Lynn Gentry
MARICOPA COUNTY SUPERIOR COURT
101 Jefferson
Phoenix, AZ 85003-2243

Joel B. Robbins
Anne E. Findling
ROBBINS & CURTIN, PLLC
301 E. Bethany Home Road, Suite B100
Phoenix, AZ 85012-0001
*Attorneys for Plaintiffs*

Krista Carman
WARNOCK, MACKINLAY & CARMAN, PLLC
246 S. Cortez Street
Prescott, AZ 86303
*Attorneys for Plaintiffs*

By _D. McKinley_

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 1918577 has been DELIVERED to Maricopa County.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918577
Keyword/Matter #: Long-92015-AJF
Delivery Date and Time: Sep 01, 2016 1:29 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Answer: Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint

Fees Paid:
First Appearance Filing Fee: $237.00
Total Filing Fees: $237.00
Provider Fee: $ 6.00
Total Amount Paid: $243.00

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #1918577 ==has been accepted and FILED== at Maricopa County and is part of the official court record.

Here are the filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918577
Keyword/Matter #: Long-92015-AJF
Filing date and time: Sep 01, 2016 1:29 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Answer: Defendants' Answer and Affirmative Defenses to Plaintiffs' Complaint



Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
Attorneys for Defendants

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. 2016-007692 |
| Plaintiff, | **DEFENDANTS' DEMAND FOR JURY TRIAL** |
| v. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | (Assigned to the Honorable Jo Lynn Gentry) |
| Defendants. | |

Defendants demand a trial by jury with respect to all claims triable.

DATED this 1st day of September, 2016.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By _____
Anthony J. Fernandez
Vincent J. Montell
Attorneys for Defendants

1 | **ORIGINAL** efiled and copy mailed
this 1ˢᵗ day of September, 2016, to:

2

3 | The Honorable Jo Lynn Gentry
MARICOPA COUNTY SUPERIOR COURT
4 | 101 Jefferson
Phoenix, AZ 85003-2243

5

Joel B. Robbins
6 | Anne E. Findling
ROBBINS & CURTIN, PLLC
7 | 301 E. Bethany Home Road, Suite B100
Phoenix, AZ 85012-0001
8 | *Attorneys for Plaintiffs*

9 | Krista Carman
WARNOCK, MACKINLAY & CARMAN, PLLC
10 | 246 S. Cortez Street
Prescott, AZ 86303
11 | *Attorneys for Plaintiffs*

12 | By _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| From: | TurboCourt Customer Service |
|---|---|
| To: | Barbara McKinley |
| Subject: | E-Filing Status: Form Set # 1918601 Filed |
| Date: | Thursday, September 01, 2016 4:10:15 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #1918601 has been accepted and FILED at Maricopa County and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918601
Keyword/Matter #: Long-92015-AJF
Filing date and time: Sep 01, 2016 1:41 PM MST



Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Demand for Jury Trial: Defendants' Demand for Jury Trial

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.00
Total Amount Paid: $6.00



YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
Attorneys for Defendants

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. 2016-007692 |
| Plaintiff, | **DEFENDANTS' DEMAND FOR COMPLIANCE WITH A.R.S. § 12-2603** |
| v. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | (Assigned to the Honorable Jo Lynn Gentry) |
| Defendants. | |

Defendants agree that expert testimony is necessary to prove each of Plaintiff's claims. Defendants hereby demand that Plaintiff timely produce all documents in compliance with A.R.S. § 12-2603.

DATED this 1st day of September, 2016.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By _____
Anthony J. Fernandez
Vincent J. Montell
Attorneys for Defendants

1
**ORIGINAL** efiled and copy mailed
this 1st day of September, 2016, to:
2

3
The Honorable Jo Lynn Gentry
MARICOPA COUNTY SUPERIOR COURT
4
101 Jefferson
Phoenix, AZ 85003-2243
5

Joel B. Robbins
6
Anne E. Findling
ROBBINS & CURTIN, PLLC
7
301 E. Bethany Home Road, Suite B100
Phoenix, AZ 85012-0001
8
*Attorneys for Plaintiffs*

9
Krista Carman
WARNOCK, MACKINLAY & CARMAN, PLLC
10
246 S. Cortez Street
Prescott, AZ 86303
11
*Attorneys for Plaintiffs*

12

13
By B. McKinley

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 1918445 has been DELIVERED to Maricopa County.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918445
Keyword/Matter #: Long-92015-AJF
Delivery Date and Time: Sep 01, 2016 1:36 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Miscellaneous: Defendants' Demand for Compliance with ARS 12-2603

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.00
Total Amount Paid: $6.00

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

| From: | TurboCourt Customer Service |
|---|---|
| To: | Barbara McKinley |
| Subject: | E-Filing Status: Form Set # 1918445 Filed |
| Date: | Thursday, September 01, 2016 4:10:10 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #1918445 has been accepted and FILED at Maricopa County and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918445
Keyword/Matter #: Long-92015-AJF
Filing date and time: Sep 01, 2016 1:36 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Miscellaneous: Defendants' Demand for Compliance with ARS 12-2603

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.00
Total Amount Paid: $6.00

YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



1  Anthony J. Fernandez (Bar No. 018342)
   Vincent J. Montell (Bar No. 014236)
2  **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
   2390 E. Camelback Road, Suite 440
3  Phoenix, Arizona 85016
   Telephone: (602) 954-5605
4  Facsimile: (602) 954-5606
   afernandez@qpwblaw.com
5  vmontell@qpwblaw.com
   Attorneys for Defendants

6

7  ## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8  ## IN AND FOR THE COUNTY OF MARICOPA

9  KENNETH and CORA LONG, husband       Case No. 2016-007692
   and wife, individually, and as statutory
10 beneficiaries for Nicholas Long, deceased;
   and on behalf of the Estate of NICHOLAS   **DEFENDANTS' CERTIFICATE OF**
11 LONG,                                      **ARBITRATION**

12              Plaintiff,

13        v.
                                             (Assigned to the Honorable Jo Lynn
14 STATE OF ARIZONA, a body politic,         Gentry)
   CORIZON HEALTH, INC., an Missouri
15 Corporation, doing business in the State of
   Arizona,
16
              Defendants.
17

18

19       Defendants can neither agree with, nor controvert Plaintiff's Certificate of

20 Compulsory Arbitration that the largest award sought by the Complaint, but excluding

21 interest, attorney's fees and costs, exceeds the amount set forth in the Rules of Compulsory

22 Arbitration.

23

24       DATED this 1st day of September, 2016.

25                          QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

26

27       By _____
                          Anthony J. Fernandez
28                        Vincent J. Montell
                          Attorneys for Defendants

1

2   **ORIGINAL** efiled and copy mailed
    this 1st day of September, 2016, to:

3
    The Honorable Jo Lynn Gentry
4   MARICOPA COUNTY SUPERIOR COURT
    101 Jefferson
5   Phoenix, AZ 85003-2243

6   Joel B. Robbins
    Anne E. Findling
7   ROBBINS & CURTIN, PLLC
    301 E. Bethany Home Road, Suite B100
8   Phoenix, AZ 85012-0001
    *Attorneys for Plaintiffs*
9
    Krista Carman
10  WARNOCK, MACKINLAY & CARMAN, PLLC
    246 S. Cortez Street
11  Prescott, AZ 86303
    *Attorneys for Plaintiffs*
12
13  By  *B. McKinley*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

| | |
|---|---|
| **From:** | TurboCourt Customer Service |
| **To:** | Barbara McKinley |
| **Subject:** | E-Filing Status: Form Set # 1918584 Delivered |
| **Date:** | Thursday, September 01, 2016 1:48:12 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 1918584 has been DELIVERED to Maricopa County.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918584
Keyword/Matter #: Long-92015-AJF
Delivery Date and Time: Sep 01, 2016 1:47 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Certificate: Defendants' Certificate of Arbitration

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.00
Total Amount Paid: $6.00

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

PLEASE DO NOT REPLY TO THIS EMAIL.

A party in this case requested that you receive an AZTurboCourt Courtesy Notification.

AZTurboCourt Form Set #1918584 has been accepted and FILED at Maricopa County and is part of the official court record.

Here are the filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #1918584
Keyword/Matter #: Long-92015-AJF
Filing date and time: Sep 01, 2016 1:47 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Certificate: Defendants' Certificate of Arbitration



Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
*Attorneys for Defendants*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, <br><br> Defendants. | Case No. 2016-007692 <br><br><br> **STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIALITY OF DOCUMENTS AND MATERIALS** <br><br><br><br> (Assigned to the Honorable Jo Lynn Gentry) |

WHEREAS, Plaintiffs by and through their attorneys, have requested Defendant Corizon Health, Inc. ("Corizon") to make available for inspection and/or copying specified Polices & Procedures; and

WHEREAS, Corizon contends that some of these documents, information and other materials are in whole or in part proprietary information, confidential business records, and/or trade secrets, all of which is competitively sensitive data as hereinafter defined;

WHEREAS, Corizon requests that the confidentiality of the documents and/or materials, and the information contained in the documents and materials, be maintained; and

WHEREAS, the parties will comply with this confidentiality agreement until such time as the agreement may be modified by the parties or the court or as otherwise provided in this agreement;

IT IS HEREBY STIPULATED THAT:

1.     When Corizon or Corizon's attorneys deliver any documents or materials by way of discovery in this case, or divulges any documents or materials or any information contained therein, Corizon shall designate as "confidential" any such documents, materials, or information it claims constitute or contain trade secrets or confidential business information; such documents will presumptively be considered confidential.

2.     The parties shall not directly or indirectly disclose any confidential documents, materials or information produced by Corizon in this action, the substance thereof, or any copies, prints, negatives or summaries thereof, to any entity or person except Plaintiffs; Corizon; Co-Defendant; Plaintiffs', Co-Defendant's and Corizon's agents, insurers, necessary witnesses, or experts or consultants employed by the parties for this action

3.     Any and all of the parties' necessary witnesses, experts, consultants and/or counsel associated in this arbitration and/or litigation and any other individuals who have access to confidential documents and/or materials and/or information subject to this Protective Order, or to the substance or existence thereof, or to any copies, prints, negatives or summaries thereof, shall be presented with a copy of this Protective Order. Those necessary witnesses, experts, consultants, counsel, and other individuals shall not give, show, or otherwise, directly or indirectly, disclose any of the confidential documents or materials or information subject to this Protective Order, or the substance thereof, or the existence thereof, or any copies, prints, negatives, or summaries thereof, to any entity or person, except as may be necessary in preparing to render, or rendering, testimony expert advice or assistance in this Superior Court litigation only.

4.      At the conclusion of the work of such necessary witnesses, experts, consultants, counsel, or other persons as described in Paragraph 3 herein, all confidential documents and materials and all copies, prints, negatives, and summaries thereof shall

be destroyed.

Upon completion of this matter, including any appeals in this action and the satisfaction of any judgment, judgment dismissing this matter, or upon conclusion of any settlement, counsel may retain a copy of any confidential documents in the client file as may be required for professional liability or to comply with any applicable rule of professional conduct. Confidential documents so retained shall continue to be considered confidential and not subject to disclosure to third parties.

5.      The parties to this action and their attorneys agree that all objections, including, but not limited to, objections based on relevancy, materiality, and privilege, are reserved and all questions of admissibility may be asserted at the time of arbitration and/or trial of any action in which such confidential documents and/or materials are used or proffered should any such party deem it proper.

Any party may challenge the designation of any document designated "confidential", on the basis that the document does not contain proprietary information about Defendant's business, practices, or procedures that, in the ordinary course of its business, is neither confidential nor proprietary. Corizon has the burden of proving any designated document should be "confidential", as defined herein.

6.      Confidential documents and materials, as those terms are used herein, mean information, including confidential and proprietary information about Corizon's business, practices, or procedures that, in the ordinary course of business, Corizon keeps confidential. Confidential documents and materials shall be so designated by prominent markings placed on each document or item at or before the time the document or item is divulged or produced for inspection. If the parties require more than one copy of any confidential document or material produced pursuant to this Protective Order, they must ensure that each copy is made with the

3

marking designating the confidentiality of the document and/or material and the information contained therein. The parties shall limit the number of copies to that which is necessary to adequately prepare their case and shall ensure that unnecessary copies are destroyed. Any and all copies shall be treated in accordance with the terms of this Protective Order.

7.    No party hereto shall be bound by this Protective Order as to any information that it possessed prior to this action,

8.    Any party claiming that information designated by Corizon as confidential was in the possession of such party or had been in the possession of the public, prior to Corizon's disclosure of such information, that party shall have the burden of proving such earlier possession or such public knowledge of such information.

9.    This Protective Order shall be without prejudice to the rights of the parties in any other action and applies solely to the above-captioned action.

10.    The parties do not waive any rights they may possess to compel further discovery responses or to object to any further discovery requests made by either party.

11.    If a party intends to attach an otherwise confidential document to a court filing, the party will take steps to protect its confidentiality including redaction and/or filing under seal. Quotations and citations from confidential documents in court documents shall be limited so as not to unnecessarily divulge the confidential or proprietary portions of the confidential documents.

12.    Any confidential documents and materials produced during discovery and/or offered and/or admitted into evidence during arbitration, trial, or appeal, and any testimony relating to such confidential documents and materials, and any papers filed with the Arbitrator and/or Court in this action, which attach, include, or summarize any such confidential information, shall be sealed and protected from disclosure by this Protective Order. Such productions and/or offerings and/or admissions into evidence do not waive the terms of this Protective Order. Should this matter proceed to trial, the parties agree to cooperate in good

faith in reviewing the necessity of continued claims of confidentiality when preparing exhibits for trial. Consideration will be given to the source of the document and its public availability elsewhere in determining the necessity of continued claims of confidentiality.

13.     The terms of this Protective Order shall remain fully active for a period of seven years following the production or disclosure of the materials or two years after the conclusion of the case, whichever first occurs. The Arbitrator and/or Court shall retain jurisdiction over the parties, this Protective Order, and recipients of confidential documents and materials, for the sole purpose of enforcing this Protective Order and adjudicating claims of breaches thereof and administering damages and other remedies related thereto. The provisions of this Protective Order shall continue to be binding as to the confidential documents and materials produced pursuant to it.

14.     Corizon must number each page of each document (like the Bates numbering system); and designate "Confidential" in the numbering system prior to any disclosure. Corizon must also maintain for all parties it makes this disclosure to, an index of all designated confidential documents. The parties will rely on this sequential numbering system and index to enact and maintain the integrity of this protective order.

IT IS SO STIPULATED:

DATED this 13th day of December, 2016.


QUINTAIROS PRIETO WOOD & BOYER, P.A.


By: _____/s/ Anthony J. Fernandez_____ _____
        Vincent J. Montell
        Anthony J. Fernandez
        *Attorneys for Defendants*



ROBBINS & CURTIN, PLLC


By: __/s/ Anne Findling (with permission)____ _____
        Anne Findling
        *Attorneys for Plaintiffs*

1

2   **ORIGINAL** of the foregoing e-filed
this 13th day of December, 2016, with:

3

Clerk of the Court

4

with **COPY** of the foregoing sent

5   this 13th day of December, 2016, to:

6   Judge Jo Lynn Gentry

7   and **COPY** of the foregoing mailed
this 13th day of December, 2016, to:

8

Anne Findling

9   ROBBINS & CURTIN, PLLC
2355 E. Camelback Road, Suite 910

10   301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012

11   *Attorneys for Plaintiff*

12

13   By: /s/Barbara McKinley

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

| | |
|---|---|
| **From:** | TurboCourt Customer Service |
| **To:** | Barbara McKinley |
| **Subject:** | E-Filing Status: Form Set # 2027922 Delivered |
| **Date:** | Tuesday, December 13, 2016 1:04:27 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2027922 has been DELIVERED to Maricopa County.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #2027922
Keyword/Matter #: Long-92015-AJF
Delivery Date and Time: Dec 13, 2016 1:04 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Stipulation: Stipulation and Protective Order Regarding Confidentiality of Documents and Materials
Proposed Order/Judgment (Supporting): Order Regarding Confidentiality of Policies and Procedures of Defendant Corizon Health, Inc.

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.00
Total Amount Paid: $6.00

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

| From: | TurboCourt Customer Service |
|---|---|
| To: | Barbara McKinley |
| Subject: | E-Filing Status: Form Set # 2027922 Filed |
| Date: | Wednesday, December 14, 2016 10:59:49 AM |

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #2027922 has been accepted and FILED at Maricopa County and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Barbara J McKinley
AZTurboCourt Form Set: #2027922
Keyword/Matter #: Long-92015-AJF
Filing date and time: Dec 13, 2016 1:04 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Stipulation: Stipulation and Protective Order Regarding Confidentiality of Documents and Materials
Proposed Order/Judgment (Supporting): Order Regarding Confidentiality of Policies and Procedures of Defendant Corizon Health, Inc.

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.00
Total Amount Paid: $6.00

YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select

Paste.

Thank you for using TurboCourt!



1  Anthony J. Fernandez (Bar No. 018342)
   Vincent J. Montell (Bar No. 014236)
2  **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
   2390 E. Camelback Road, Suite 440
3  Phoenix, Arizona 85016
   Telephone: (602) 954-5605
4  Facsimile: (602) 954-5606
   afernandez@qpwblaw.com
5  vmontell@qpwblaw.com
   Attorneys for Defendants
6

7        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8            **IN AND FOR THE COUNTY OF MARICOPA**

9  KENNETH and CORA LONG,                    Case No. CV2016-007692
   Husband and wife, individually, and as
10 statutory beneficiaries for Nicholas Long,
   deceased; and on behalf of the estate of
11 NICHOLAS LONG,
                                             **DEFENDANTS' NOTICE OF NON-**
12              Plaintiff,                    **PARTY AT FAULT**

13         v.

14 STATE OF ARIZONA, a body politic,         (Assigned to the
   CORIZON HEALTH, INC., a Missouri           Honorable Jo Lynn Gentry)
15 corporation, doing business in the State of
   Arizona
16
                Defendants.
17

18        Pursuant to A.R.S. § 12-2506(B) and Rule 26(b)(5), Arizona Rules of Civil

19 Procedure, Defendants State of Arizona and Corizon Health, Inc. ("Defendants"), hereby

20 file this Notice of Non-Party at Fault. Discovery is in its infancy and the parties have not

21 been able to fully discover/investigate potential non-party-at-fault issues. Defendants reserve

22 the right to name non-parties at fault, if appropriate, as discovery progresses.

23
24 ///

25 ///

26 ///
27

28

              **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

DATED this 22nd day of February, 2017.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


By /s/ Anthony J. Fernandez
   Anthony J. Fernandez
   Vincent J. Montell
   Attorneys for Defendants

**ORIGINAL** efiled and copy mailed
this 22nd day of February, 2017, to:

The Honorable Jo Lynn Gentry
MARICOPA COUNTY SUPERIOR COURT
101 Jefferson
Phoenix, AZ  85003-2243

Joel B. Robbins
Anne E. Findling
ROBBINS & CURTIN, PLLC
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
*Attorneys for Plaintiffs*

Krista Carman
WARNOCK, MACKINLAY & CARMAN, PLLC
246 S. Cortez Street
Prescott, AZ  86303
*Attorneys for Plaintiffs*

By /s/ Nelly Preca

# Payment Details

| | |
|---|---|
| **Filing Type** | General Civil - Superior Court |
| **Jurisdiction** | Maricopa - Superior Court |
| **Form Set #** | 2101836 |
| **Case #** | CV2016-007692 |
| **Keyword/Matter #** | 92015 |
| **Submission Name** | Long, Et.Al. Vs. State Of Arizona, Et.Al. |
| **Transaction Date** | 02/22/2017 12:32 PM MST |
| **Transaction #** | 8X661502LF118235M |
| **Payment Status** | Paid |
| **Service** | e-File |

| | |
|---|---|
| **Provider Fee** | $ 6.50 |
| **E-Payment Fee** | $ 0.20 |
| **Total** | $ 6.70 |

Print Payment Details    Close Window

ver. 10.16.2-s20                    Copyright © 2017 Intresys, Inc.

| | |
|---|---|
| **From:** | TurboCourt Customer Service <CustomerService@TurboCourt.com> |
| **Sent:** | Wednesday, February 22, 2017 12:33 PM |
| **To:** | Nelly Preca |
| **Subject:** | E-Filing Status: Form Set # 2101836 Delivered |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2101836 has been DELIVERED to Maricopa County.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2101836
Keyword/Matter #:
Delivery Date and Time: Feb 22, 2017 12:32 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Notice of Non-Party at Fault: DEFENDANTS' NOTICE OF NON-PARTY AT FAULT

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com
7
   Krista Carman (021700)
8  Warnock, MacKinlay & Carman, PLLC
   246 S. Cortez Street
9  Prescott, AZ 86303
10 Telephone: (928) 445-8056
   Facsimile: (928) 445-8046
11 kcarman@lawwmc.com
12
   *Attorneys for Plaintiffs*
13
14
15        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
16            IN AND FOR THE COUNTY OF MARICOPA
17
18 KENNETH and CORA LONG,
   husband and wife, individually, and          Case No. CV2016-007692
19 as statutory beneficiaries for Nicholas
   Long, deceased; and on behalf of the
20 estate of NICHOLAS LONG,                      **DECLARATION UNDER OATH
                                                  OF JOHN O'STEEN, M.D.**
21          Plaintiffs,
22
23    vs.
24 STATE OF ARIZONA, a body politic,
   CORIZON HEALTH, INC., an
25 Missouri corporation, doing business
   in the State of Arizona;
26
27          Defendants.
28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

John O'Steen, M.D., makes the following declaration under oath:

1.　　I am a physician licensed to practice medicine in Arizona. I graduated from medical school from the University of Michigan Medical School. I attended residency training in psychiatry from the University of New Mexico School of Medicine Affiliated Hospitals and at the Maricopa Medical Center in Phoenix, Arizona.

2.　　I am currently practicing as a primary care provider in a general practice with incarcerated adults at the Central Arizona Florence Correctional Complex.

3.　　During the year immediately preceding the death of Nicholas Long, I devoted a majority of my professional time to the active clinical practice of general medicine in a correctional setting as a general practitioner.

4.　　I have been provided the following materials for review.

    a.　Corizon Medical Records;

    b.　Yuma Regional Hospital Records;

    c.　Tempe St. Luke's Hospital;

    d.　Florence Anthem Hospital;

    e.　Mountain Vista Hospital;

    f.　Promise Hospital;

    g.　Banner Desert Hospital

    h.　ADC technical manuals

    i.　Corizon policies and procedures

5.　　A summary of the factual basis for my preliminary opinion is as follows:

    a.　　Mr. Long was a 21 year old Caucasian male who was, at the time of admission to ADOC, reported to be in good health except for a history of a significant learning disorder and a previous diagnosis of

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

Bipolar Disorder. While incarcerated at the Yuma Complex, Mr. Long began to complain of abdominal pain, cramping, frequent diarrhea and fevers along with marked weight loss of over 20 pounds. His initial weight at Yuma Complex was 160 pounds. He was initially seen in the health unit at Yuma Complex and when the prescribed interventions did not seem to benefit Mr. Long he was referred to Yuma Regional Medical Center for admission on 11/06/2014.

b.     While at Yuma Regional Medical Center, Mr. Long was diagnosed with chronic diarrhea and possible acute infectious colitis with treatment provided with antibiotics. Of interest, is that his lactoferrin level returned high which is a marker of inflammatory bowel disease(IBD), his CT scan was consistent with IBD, stool cultures were negative for bacterial pathogens and a Nutritionist who was consulted proposed the diagnosis of IBD based on the patient's presentation and lab values.

c.     Mr. Long, after his hospital release, reported to Yuma Complex Medical on 11/13/2014 complaining of persistent severe abdominal cramps and diarrhea despite the treatment provided at hospital and pleaded with the nurse to send him back to the hospital where he could receive additional needed care. This was not done and subsequently he was transferred to Florence Complex Central Unit Housing Unit 10.

d.     On 11/26/2014 direct admission to Tempe St. Luke's Hospital was arranged by the Infirmary attending physician Dr. Zoran Vukcevic. PA Asztalos working under the supervision of Dr. Vasiq performed his admitting history and physical exam and noted that Mr. Long had been complaining of cramping abdominal pain and bloody

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

diarrhea for about six months. He was febrile to 102.7 degrees, with a pulse of 120 and appeared very thin and in moderate distress due to pain. Another CT scan was done which again was suggestive of infectious or inflammatory colitis.

e.     The patient was then seen by Dr. Florin Gaidici, a Gastroenterologist, who subsequently performed a colonoscopy which revealed diffuse mucosal inflammation consistent with UC. The procedure was "aborted" due to a fear of perforating the colon and a diagnosis of severe ulcerative colitis was made and confirmed by biopsy. Oral prednisone, oral and topical (rectal) mesalamine was ordered by Dr. Gaidici. When the patient was offered total parenteral nutrition and NPO (nothing by mouth) to "rest the bowel" he refused further treatment and agreed to return to Florence Complex and take the medication offered by Dr.Gaidici.  Of great interest is that Dr. Gaidici did theorize that due to the severity of his UC he might require biological agents or 6 Mercaptopurine or lmuran for more aggressive treatment.

f.     At this point it should be noted that the severity of UC is often graded base on the Montreal Classification System which includes the following criteria for diagnosis of severe disease:

1). Frequent loose bloody stools greater than six a day

2). Severe cramps

3). Systemic Toxicity which is indicated by fever greater than 37.5 degrees, tachycardia greater than 90 beats per minute, anemia less than a hemoglobin of 10.5 and elevated sedimentation rate.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

g. Mr. Long clearly met all of these criteria for a diagnosis of severe disease. The next consideration would be what the appropriate treatment for severe disease is.

h. Mr. Long was discharged on 11/30/2014 and returned to Florence Complex Infirmary/HU 10. The Corizon records suggest that Mr. Long was not started on Prednisone until on or about 12/08/2014 a week or more after his hospital release and he was provided with no mesalamine at that time. He was never provided with mesalamine topical (rectal) therapy as advised by Dr. Gaidici. The reasons for this are not clear. Also he was ordered anti-diarrheal and opioid medications despite this being contraindicated and was prescribed omeprazole which when given with mesalamine, which is designed to dissolve in the colon, can cause immediate release of the mesalamine in the stomach and small intestines reducing its efficacy and promoting side effects.

i. Mr. Long was again returned to Tempe St. Luke's on 12/11/2014 due to continued severe abdominal cramps, worsening anemia and worsening nutrition. He was initially given IV steroids along with mesalamine and then released back to prison because he still did not wish NPO status.

j. After returning to Florence Complex on 12/14/2014, Mr. Long was provided with tapering doses of prednisone but only over a three week period and tapering is recommended over a six to eight week treatment period with the tapering to be halted if a flair occurs. Oral mesalamine was offered on or about 12/29/2014 without topical therapy provided.

k. Despite this intervention, Mr. Long's condition continued to deteriorate and ultimately he began to refuse the mesalamine because it

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

made him nauseated and seemed to worsen his abdominal pain. Rather than reassessing his condition, proposing new treatments including more aggressive and costly ones that might be better tolerated and more effective, referring him for urgent Gastroenterology Consultation for another opinion or seeking urgent psychiatric consultation, Mr. Long seems to have been told to take the treatment or leave it since no other options were going to be considered.

l.      Throughout his stay in the infirmary/HU10 he continued to demonstrate marked and severe weight loss and quite obviously was very anorectic due to the severity of his disease and his starvation state. Rather than appreciating how anorectic he was and taking appropriate steps to intervene, he was alleged to be on a hunger strike and therefore his skeletal condition was attributed to his own aberrant behavior rather that the health services division accepting any responsibility for his deteriorating condition due to inadequate health care.

m.      UpToDate, a reliable source of medical information, points out that depression is commonly associated with Ulcerative Colitis and early psychiatric consultation is very important. This would be even more important in a young man with a learning disability and a history of Bipolar Disorder. This should have been requested at St. Luke's as well as at the Complex level but was not done until 02/02/2015 when Dr. Anderson, a psychiatrist, first saw Mr. Long. This was on the same day that he was found in extremis, unresponsive and required emergency intubation and admission to Mountain Vista Medical Center.

n.      The psychiatrist noted the emaciation and severe weight loss and pointed out that his labs were, "suggestive of a man whose life is in critical danger if supportive medical services are not applied within the

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

near future." Dr. Anderson diagnosed him with delirium and dehydration with possible underlying depression. Mr. Long was felt to be incapable of making sound judgments about his medical care.

o.    On 02/02/2015, Mr. Long was transported by ambulance in an unresponsive state to Florence Anthem Hospital where he was intubated and then transferred to Mountain Vista Hospital for definitive care.

p.    At Mountain Vista Hospital he was found to have free intraabdominal air suggestive of a perforated viscus on imaging studies. Mr. Long presented to Mountain Vista with a number of decubitus ulcers which did not seem to have been addressed at Florence Complex.

q.    Mr. Long was then returned to Promise Hospital where he seemed to do fairly well until on or about 05/24/2015 when he began to complain of respiratory distress. Studies were done and he was offered breathing treatments. The following day he sustained a respiratory arrest, and intubation both at Promise Hospital and Banner Desert proved futile due to, in part, at least extensive scaring from his previous tracheostomy and he was pronounced dead.

6.    It is in my opinion, extremely inappropriate for a previously healthy young man to waste away from 160 pounds to 104 pounds over the course of two and a half months with severe symptomology and to be seen by the attending physician on only two or three occasions at the most. At my facility it is mandatory that all Infirmary inmates be seen daily by a licensed independent practitioner. Further, it cannot absolve the attending physician of any responsibility for Mr. Long's deteriorating health at Florence Complex by periodically sending the patient out to the hospital without insuring that

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

his condition is being properly treated at the Complex Level which was never done.

7. Dr. Vukcevic bore the responsibility of insuring that this individual was receiving adequate care and he clearly did not fulfill that responsibility. He should have been well informed on the current medical literature concerning the appropriate treatment of severe ulcerative colitis and not merely have relied on subspecialty consultation which in this case was lacking.

8. Based on my review of Mr. Long's records, it is my opinion, to a reasonable degree of medical certainty, that the medical care provided to Mr. Long by Corizon did not meet the minimum standard of care and, as a result, he died from a treatable medical condition.

Subject to the penalty of perjury, I attest that this declaration is true and accurate to the best of my knowledge.

DATED: _06/26/2017_____

_John O'Steen MD_____
JOHN O'STEEN, M.D.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267



1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com

7
   Krista Carman (021700)
8  CARMAN LAW FIRM
9  246 S. Cortez Street
   Prescott, AZ 86303
10 E: kcarman@carmanlf.com

11 *Attorneys for Plaintiffs*

12

13         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

14               **IN AND FOR THE COUNTY OF MARICOPA**

15

16 KENNETH and CORA LONG,                    Case No. CV2016-007692
   husband and wife, individually, and
17 as statutory beneficiaries for
18 Nicholas Long, deceased; and on
   behalf of the estate of NICHOLAS            **PLAINTIFFS' MEDIATION**
19 LONG,                                            **MEMORANDUM**

20
              Plaintiffs,                     Mediator:  William J. Friedl
21

22    vs.                                     Date:  November 13, 2017
                                                Time:  9:30 a.m.
23
   STATE OF ARIZONA, a body
24 politic, CORIZON HEALTH, INC.,              Location:  QPWB
   an Missouri corporation, doing             2390 E. Camelback Road,
25 business in the State of Arizona,           Suite 440, Phoenix, AZ

26
              Defendants.
27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

**Introduction**

Defendant Corizon Health is the private, for-profit company that contracts with the State of Arizona to provide health services to inmates in the Arizona state prison system. Corizon is responsible for medical care for ten facilities. Since taking over the $117,000,000.00 contract from competitor Wexford Health, Corizon's practices have come under scrutiny for failing to provide the care required under the contract.

Nicholas Long was serving a 4-1/2 year sentence at the Arizona Department of Corrections for two sales involving six prescription opiate pills to a neighbor in a sting operation. He was also sentenced to a six-month term for a class 6 facilitation of theft of means conviction.

On May 25, 2015, Nicholas, 21, died at Banner Hospital while in custody. The immediate cause of Nicholas' death was complications of ulcerative colitis, but, in fact, Nicholas' death was the result of medical neglect by Defendants See *Exhibit 9 – Report of Medical Examiner.* Nicholas' condition was both recognizable and treatable had Corizon followed ADC's own policies and provided the medical and mental health care it was contractually obligated to provide.

This lawsuit is brought by Nicholas' parents, Kenneth and Cora Long, for the wrongful death of their son. This mediation memorandum supports their offer to settle this case for $3,500,000.

**I. DEFENDANT STATE OF ARIZONA OWES A NON-DELEGABLE DUTY TO INMATES TO PROVIDE MEDICAL AND MENTAL HEALTH CARE.**

The State of Arizona owes a non-delegable duty to provide medical and health services for inmates within the state prison system. *See* A.R.S. § 31-201.01 (D); *see also DeMontiney v. Desert Manor Convalescent Center, Inc.,* 144

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

Ariz. 6, 8 (1985). The State has not only a statutory duty, but a constitutional duty as well. *See Estelle v. Gamble,* 429 U.S. 97, 103-104 (1976). While the State of Arizona is authorized to contract with a private contractor, it exercises supervision and retains the right to control Corizon under its contract for the provision of medical and mental health care. *See Wagner v. State,* 242 Ariz. 95, 97-98 ¶ 10 (App. 2017). The State exercises its supervision through Contract Monitors.

## II. INMATE HEALTH CARE IS GOVERNED BY ADC POLICIES, WHICH HAVE AS THEIR GOAL, MAXIMUM EFFORT TO MAINTAIN AN INMATE'S LIFE.

### A. Inmate Access to Health Care / Court Ordered Treatment

The Arizona Department of Corrections (ADC) promulgates department orders that govern an inmate's access to health care. Department Order 1101, Inmate Access to Health Care provides:

> This Department Order requires inmates to be provided opportunities for reasonable and appropriate access to medical, mental health, and dental health care at reasonable fees. The Department Order also requires appropriate and uninterrupted health care be provided to inmates with chronic health conditions. Security, program, transportation and Health Services staff cooperate and coordinate their activities to provide scheduled and emergency health care.

*See **Exhibit 13** - Department Order 1101, Inmate Access to Care.* The Order requires Corizon to "ensure that medical and mental health care providers have available to them the resources to provide constitutionally mandated and appropriate referrals for inmates who appear for treatment. *Id.* at § 1101.01 (1.1).

For non-emergent needs, inmates access medical care through a system of written Health Needs Requests (HNR). *Id.* at § 1101.03 (1.1). Medical

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

services provided by providers outside the prison system are arranged through Corizon. *Id.* at § 1101.04. The Order requires Corizon to track and regularly see patients with chronic medical needs. *Id.* at § 1101.07.

Corizon's responsibility to inmates extends to ensuring "all efforts are taken to maintain the inmate's life while on the prison complex." *Id.* at § 1101.08. Inmates retain the right to refuse treatment, but if the inmate's decision is life-threatening, Corizon must follow § 1101.11 (1.2.1), which initiates the chain of command to ensure that the inmate is mentally competent and makes a knowing, fully informed decision, including seeking court authority for treatment.

Policy requires notification to the Facility Health Administrator (FHA), the ADC Contract Monitor, and the Warden. A significant incident report must be completed, and the Department's General Counsel must be contacted. Contact with General Counsel initiates the involvement of the Office of the Attorney General in petition for court mandated treatment.

### B. Inmate Hunger Strikes

Corizon's duties also extend to inmates on hunger strikes. An inmate is considered to be on a hunger strike when:

> The inmate **communicates the fact to staff** and is **observed by staff to be refraining from eating** for a period of time, ordinarily in excess of 72 hours.
>
> **Staff observes the inmate to be refraining from eating** for a period in excess of 72 hours.

*Id.* at § 1101.12 (1.2), emphasis added. Even if an inmate does not specifically say that he is on a hunger strike, any time staff observes that an inmate has not eaten for more than 72 hours, the inmate must be referred for a medical evaluation. *Id.*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Policy requires that the inmate be monitored to ensure that "legal and medical procedures are pursued to preserve the inmate's life." *Id.* Just as with life-threatening refusals of treatment, hunger strikes must be reported through the chain of command, looping in medical, security, chaplaincy, mental health, and the attorney general to obtain a court order. Decision making capacity must be determined and stringent conditions of confinement imposed:

> If the inmate is determined to have the capacity to make decisions his/her medical status shall be monitored as follows:
>
> The inmate **shall be moved to a single occupant cell and shall be provided with regularly scheduled meals and an adequate supply of drinking water**.
>
> Security staff shall **confiscate store purchased food or other private food supplies from the inmate**. Confiscated items shall be held for the duration of the hunger strike. The inmate shall not be allowed to purchase any food items from the inmate store while under hunger strike management.
>
> Health Services staff shall take and record the inmate's weight, intake and output, and vital signs at least once every 24 hours. **Other medical procedures, including mental health assessments, shall be repeated as medically indicated**.
>
> The inmate shall be monitored in accordance with the Health Services Technical Manual. At the discretion of the inmate's attending medical provider, the inmate shall undergo additional medical and lab testing.
>
> An interdisciplinary clinical staffing panel as outlined in the Health Services Technical Manual shall determine any potential issues and attempt to resolve them. The inmate shall be informed of the medical consequences of the hunger strike and shall be asked to sign a Refusal to Submit to Treatment form acknowledging understanding the consequences.

> The inmate's treating physician shall make the determination regarding the potential need to have the inmate placed on a medical watch, to include the monitoring intervals.

*Id.* at § 1101.12, emphasis added. When medically mandatory, an inmate on a hunger strike must be moved to an acute care facility. *Id.*

### C.    Clinical Staffing of Special Problems

Even if an inmate refuses needed medical treatment, Corizon's responsibility extends to ensuring "that every possible avenue is explored to encourage cooperation by inmates in completion of their own care." See ***Exhibit 17 - ADC Health Services Technical Manual (HSTM)***. To that end, ADC adopted HSTM ch. 7, § 1.8, Clinical Staffing of Special Problems. HSTM ch. 7, § 1.8.

Section 1.8 is triggered when an inmate "present[s] with a complex issue(s) or series of health issues" and when an interdisciplinary approach is required. *Id.* The process provides "a mechanism and forum to ensure a cooperative effort between the facilities administration and treating clinicians in responding to a specific inmate's health needs *especially in situations of treatment refusals." Id.*, emphasis added.

As with the previously referenced departmental orders, clinical staffing provides a mechanism and forum to problem-solve a complex issue and is especially applicable in cases of combined medical and mental health issues or when a patient presents with "multiple and incessant complaints." Staffing includes the provider, the FHA, the Correctional Registered Nurse Supervisor II (CRNS II), Psychologist or Psych. Associate, the Unit Deputy Warden, the Unit Medical Records Librarian, and any other staff deemed appropriate. *Id.*

The agenda of a Section 1.8 staffing is defined by policy and includes participation of the inmate:

The Staffing will be scheduled to **last approximately one hour** and, unless otherwise indicated, will proceed as follows:

- The FHA will provide general directions to the other members, paying particular attention to the need for confidentiality and the reason and authority for including a non-medical individual in a meeting which will most likely reveal clinical information.

- The **unit provider will present** the case to the committee paying particular attention to his/her observations, laboratory, and other clinical findings.

- The remainder of the **members will query the provider**, seeking to determine the current status of the inmate and developing a base of information.

- *The inmate will be brought into the meeting room* and the FHA will describe the clinical staffing process. The attending provider will provide the issue(s) to be discussed.

- The inmate will be asked to provide their concern(s) relative to the clinical staffing topic.

- Upon completion of the inmate's presentation, the FHA will provide a synopsis of the problem and the inmate will be asked to leave while the clinical staffing members discuss their case. **The inmate shall be called back and the consensus statement arrived at for resolution of any issues and/or improved treatment(s) will be provided to the inmate.** A statement of understanding or misunderstanding (refusal) shall be included in the minutes of meeting as well as a S.O.A.P. entry.

- The attending provider shall provider shall provide a "S.O.A.P." note entry as to the staffing and recommendations.

- A copy of the minutes shall be forwarded to the Health Services Division Administrator.

*Id.,* emphasis added.

In this case, Corizon communicated to outside providers that Nicholas Long was on a hunger strike. *See Exhibit 5 – Florence Hospital Medical Records*. Dr. Vukcevic, however, adamantly denied that Nick was on a hunger strike. *See Exhibit 1, Deposition Transcript of Zoran Vikcevic (9/6/2017) 44:23 – 45:25*. Dr. Vukcevic's denial is well-supported by Corizon's own records that include statements by Nicholas that he wanted treatment, he wanted to eat, and he wanted to get better. *See Exhibit 1 – Corizon Medical Records*.

## III. DEFENDANT CORIZON BREACHED ITS DUTY TO NICHOLAS LONG TO PROVIDE REASONABLE MEDICAL AND MENTAL HEALTH CARE, RESULTING IN NICHOLAS' DEATH, AND PLAINTIFFS' DAMAGES.

### A. Nicholas Long is Admitted to ADC and Housed at ASPC-Yuma from March 18, 2014 through November 10, 2014.

Nicholas Long was admitted to the Arizona Department of Corrections on March 12, 2014, to serve a sentence for selling six prescription pills to a neighbor to pay his cell phone bill. The maximum end date of his sentence was March 13, 2019, but a release date of October 27, 2017 was expected. Nicholas was a minimum custody inmate.

Nicholas was naïve and guileless. His disciplinary tickets in prison were for playing basketball when he was supposed to be working with the grounds crew or refusing to shave. Nicholas was a high school graduate, but led a relatively sheltered life with his family in rural Arizona. He depended on and was close to his parents, particularly his mother. Nicholas' father had been incarcerated in California and missed significant time with Nick when he was younger.

ROBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

At intake, Nicholas (5'10") was noted to weigh 153 lbs. (BMI est. 22), which is considered within the range of normal weight. He reported a history of Bipolar Disorder (a mood disorder) that had been previously treated with medication. He also reported stomach issues for which he requested Prilosec (omeprazole), a medication commonly used for Gastroesophageal Reflux Disease (GERD). Nicholas was transferred from intake to ASPC-Yuma to serve his sentence.

On March 28, 2014, Nicholas submitted a Health Needs Request (HNR) to request Prilosec "for his stomach." A progress note of April 3, 2014 documents Nicholas's weight to be 160 lbs. (BMI 23). Nicholas was assessed as having GERD and a prescription for Prilosec was ordered.

Below is ADC Record in March 17, 2014 noting Nicholas' weight:

| 03/17/2014 | 01:01 AM | | | 5 ft 10 in | 160 lb |
|---|---|---|---|---|---|

See **Exhibit 1** – Corizon Medical Records at 000679.

On June 28, 2014, Nicholas (at the time 160 lbs.) was seen by a nurse for a chief complaint of 10/10 abdominal pain, intermittent, for one week. The pain was described as sharp. He was tachycardic. The record does not include referral to a provider or any GI work-up.

Nicholas' October 7, 2014 HNR for "really bad" stomach cramping, diarrhea, pain, and inability to sleep, and his October 10, 2014 HNR report of "severe pain" resulted in being placed on the "nurse's line" on October 12, 2014.

Records document bloody stool, inability to urinate, anorexia, diarrhea, weakness, dizziness and vomiting. He described his pain as 9/10 to 10/10. His weight was down 24 pounds (BMI 20) since his last assessment. His abdomen

was described as tender, hyperactive bowel sounds present, guarding present, with confirmed blood in his stool. The record does not include referral to a provider or any GI work-up. No CT was performed and no surgical consult was obtained.

Nicholas' condition deteriorated and on November 6, 2014 he was admitted to Yuma Regional Medical Center (YRMC) for severe colitis, leukocytosis and fever. On November 7, he was evaluated to be at nutritional risk. Nick was treated with IV antibiotics and fluids. Stool cultures were negative and his symptoms were reported as resolved after three days. Nicholas was discharged on November 10, 2014 with diagnoses of unspecified noninfectious gastroenteritis and colitis, dehydration, leukocytosis, and fever, with instructions to continue Levaquin.

**B. Nicholas Long is Transferred to ASPC-Florence, Central Unit on November 25, 2014.**

Two weeks after his hospitalization at YRMC, Nicholas was transferred from ASPC-Yuma to ASPC-Florence. *See Exhibit 1 – Corizon Records.* He was admitted to the Infirmary under the care of Zoran Vukcevic, M.D. On admission, he was febrile (T 101.3), tachycardia (P 137), and weighed 115 lbs. *See Exhibit 2 – Tempe St. Luke's 11/26/2014.*

| 11/26/2014 | 05:52 AM | 101.3 F | 137 | 24 | 5 ft 10 in | 115 lb |
|---|---|---|---|---|---|---|

On November 26, 2014, Nicholas was admitted to Tempe St. Luke's Hospital for severe protein malnutrition, fever, and severe abdominal pain with bloody stool. A CT revealed circumferential large bowel mucosal

thickening consistent with infectious or inflammatory colitis, likely ulcerative colitis.

Gastroenterologist Florin Gaidici performed a partial colonoscopy. He stopped the colonoscopy after he discovered severe disease. He did not continue with the procedure out of fear that he would perforate Nicholas' colon. He was, however, able to make the diagnosis of active chronic colitis with ulceration. Dr. Gaidici concluded that Nicholas would "very likely" require a biologic[1] substance due to the severity of his disease, but didn't feel that Nicholos would need surgery with total colectomy.

Nicholas was reported to having signed out against medical advice, apparently because he was unable to eat. There's no record of a mental health consult or contact with Nicholas's family. Nick returned to ADC on November 30, and was readmitted to the Infirmary. Nicholas was quoted as saying: "I could not tolerate diet in the hospital, I did not need another colonoscopy, as I know my diagnosis."

Nick remained in the infirmary. On December 9, 2014, Nicholas submitted an HNR for medical care:

> **I would like to see the doctor for a check up and about my med's as soon as possible please.**
> **Thank you.**

On December 10, 2014, Nicholas' medications were changed to Prilosec, Phenergan, and Zantac. Nick's prior prescription for steroids was discontinued.

On December 12, 2014, Nicholas was readmitted to Tempe St. Luke's. *See **Exhibit 3** – Tempe St. Luke's Records.* Dr. Muhammad Vasiq, Corizon's

representative at the hospital, was the admitting and attending physician. The admitting assessment was lower GI bleeding related to chronic ulcerative colitis. Discharge instructions included continued medication with mesalamine (5-ASA). Id.

Nicholas again returned to ASPC-Florence Central Unit Infirmary under Dr. Vukcevic's care. Medication was changed from mesalamine to Balsalazide. On December 15, 2014, Flagyl was added to Nick's mediations. Nick poorly tolerated the balsalazide, reporting that it made him nauseous.

On December 29, 2014, Nicholas was tachycardiac and refusing the balsalazide. By January 6, 2015, Nicholas was reporting poor tolerance to mesalamine. As a result, he was receiving no medication for ulcerative colitis. He continued to be tachycardiac and febrile. Labs were ordered with abnormal values for hematocrit (below lower panic level), hemoglobin (below lower panic level), and red blood cells (below lower panic level). MCH, MCHC, Absolute Neutrophil CT, GPLT, RDW, and White Blood Count were also abnormal. Nicholas is described as cachectic.

Nicholas' condition continued to deteriorate on return to the prison. Although he was in the "infirmary," little was done to address the ulcerative colitis disease process. At one point, Dr. Vukcevic apparently sought authority to send Nicholas out to Maryvale Hospital for a GI consult, but Corizon only authorized a "routine" consultation resulting in a planned appointment in mid-February. From January 7 to January 21, Nicholas lost another four pounds and weighed just 109 lbs. (BMI 11.4). Throughout this period, Nicholas remained weak, cachectic, and tachycardic without significant medical

1 The term "biologics" refer to medications such as Humira, which can be prescribed for ulcerative colitis.

intervention. A nutritional consult was ordered, but there is no indication that one was completed.

Nicholas' deterioration would be obvious to a lay person. His 5' 10" frame had reduced by 50% He was described as weak and cachectic (physical wasting and loss of muscle mass). He needed help to walk.

Medically, the objective evidence that Nicholas was critical was undeniable:

| VITAL SIGNS | | | | | |
| --- | --- | --- | --- | --- | --- |
| DATE | TEMP | PULSE | RESP | BP | BMI charted |
| 3/12/2014 | 99 | 66 | 18 | 124/67 | [22] [est.] |
| 11/26/2014 | 101.3 | 137 | 24 | 112/56 | 16.5 |
| 1/7/2015 | 99.3 | 128 | 18 | 106/66 | 16.2 |
| 1/8/2015 | 94.8 | 133 | 20 | 138/100 | 15.8 |
| 1/19/2015 | 97.2 | 127 | 20 | 116/76 | 15.8 |
| 1/23/2015 | 97.5 | 130 | 16 | 122/60 | 15.1 |
| | | | | *Percentage Change in* | *-31%* |
| | | | | *BMI* | |

## Lab Test Order/Procedure

MSSS031B                                             Friday May 25, 2015 10.41 01 AM

Ordered Date: 01/21/2015                    Time: 11:00:00 AM
Encounter Type: Lab Test (Unsolicited)
Location: ASPC-F CENTRAL/U MED [A23]     Staff: Vukcevic, Zoran, MD
Ordering Practitioner:

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**Lab Test Results**

| Observation Code | Result | Unit | Abnormal Flag | Reference | Result Status |
|---|---|---|---|---|---|
| BUN-BLOOD, UREA, NITROGEN SERUM | 16 | MG/DL | Normal | 7-18 | Final Results |
| CHLORIDE, SERUM | 94 | MEQ/L | Below Low Normal | 98-107 | Final Results |
| CARBON DIOXIDE (CO2) | 28 | MEQ/L | Normal | 22-33 | Final Results |
| CREATININE, TOTAL-SERUM | 0.24 | MG/DL | Below Lower Panic Levels | 0.7-1.3 | Final Results |
| GFR (NON-AFRICAN AMERICAN) | 520 | mL/MIN | HH | 60-300 | Final Results |
| GFR (AFRICAN AMERICAN) | 631 | mL/MIN | HH | 60-300 | Final Results |
| GGLU | 59 | MG/DL | Below Low Normal | 70-105 | Final Results |

| POTASSIUM, SERUM | 4.9 | MEQ/L | Normal | 3.5-5.1 | Final Results |
|---|---|---|---|---|---|
| SODIUM, SERUM | 128 | MEQ/L | Below Low Normal | 136-145 | Final Results |

On January 23, 2015, Nicholas was again transferred to Tempe St. Luke's. *See **Exhibit 4** – Tempe St. Luke's Records.* On admission Dr. Vasiq noted Nicholas' condition and reported that he called the prison medical director to see if there were court orders to treat. He records that he was told there were no court orders for treatment.

```
IMPRESSION:
1.  Abdominal pain with likely ulcerative colitis exacerbation.
2.  Extreme cachexia with severe protein-calorie malnutrition.

PLAN:  We were admitting the patient to the hospital including the GI
evaluation.  GI is here to see the patient.  We ordered the TPN, PICC
line placement, CT of the abdomen and pelvis, and initiated the
further workup, but the patient is not willing to stay in the hospital
and wants to leave against the medical advice.  I personally called
and spoke to the prison medical director to see if they have any court
orders to hold him in the hospital to try to feed him because he is
extremely cachectic and he is still refusing to eat, but the prison
authorities does not have any court orders, hence we cannot hold him
against his wishes.  He will be discharged back to the prison with a
continuous watch under the Department of Corrections' medical services
and further management as an outpatient.
```

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

Dr. Nadim Zyadeh saw Nicholas for a GI consult. Nicholas was severely malnourished. His labs were abnormal and Dr. Zyadeh assessed him as having:

**1. Acute abdomen with severe leukocytosis, likely secondary to severe ulcerative colitis flare-up; however, toxic megacolon has to be excluded.**

**2. Ulcerative colitis.**

**3. Severe protein-calorie malnutrition.**

Nicholas was again returned to the prison infirmary. His physical condition continued to deteriorate. On February 2, 2015, psychiatrist Robert Anderson was told to see Nicholas. Dr. Anderson had been given limited information and told to see Nicholas for a capacity evaluation. *See Exhibit 12, Depo. of Robert Anderson, D.O. (9/8/2017) 46:25 to 47:16.* He was "absolutely" shocked when he saw that Nicholas was emaciated and cachectic. *Id.* Nicholas was not able to meaningfully participate in a capacity evaluation and was, in fact, emaciated and cachectic with "labs suggestive of a man whose life is in critical danger if supportive medical services are not applied, within the near future." Dr. Anderson concluded that it was "highly questionable" that Nicholas was even "able to cognitively process information present to him."

Nicholas was ultimately admitted to Mountain Vista Medical Center after becoming unresponsive from starvation and dehydration on February 3, 2015. *See Exhibit 5 – Florence Hospital & Exhibit 6 – Mountain Vista Hospital.* Abdominal surgery revealed severe adhesions and perforations. He had subtotal colectomy, placement of ileostomy, enterorrhaphy and lysis of adhesions.

Nicholas underwent further procedures at Mountain Vista with gastrostomy tube placement, abdominal lavage, vacuum assisted wound closure, and porcine graft closure of the abdominal wall. Postoperative course

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

was complicated by failure to be weaned from ventilator requiring tracheostomy on February 21, 2015, and by the growth of vancomycin-resistant enterococci from his urine. Nicholas was eventually discharged to Promise Hospital for continued care on February 24, 2015. *See Exhibit 7 – Promise Hospital Records.*

On May 25, 2015, Nicholas arrived via EMS to Banner Desert Medical Center from Promise Hospital at approximately 9:27 a.m. *See Exhibit 8 – Banner Hospital Records.* On arrival Nicholas is completely unresponsive.

**History of Present Illness**
    The patient presents in respiratory arrest, This is a 21 y/o male who was transferred to the ED from outside facility after being found in respiratory arrest and hypoxia. Per EMS; pt began c/o SOB last night and was being given breathing treatments. EMS state that pt went into respiratory arrest today , became hypoxic, multiple intubation attempts in the care facility were not successful. Pt has hx of tracheotomy secondary to respiratory arrest , but I'm not able to obtain any further information in terms of patient's medical history otherwise this time .Tracheotomy was removed 6 weeks ago and per case staff, pt has been immobile and refusing anticoagulation. Per carestaff, pt was dx with IV line sepsis yesterday. Pt arrives to ED with LMA in place. Patient apparently had an abdominal surgery, but I do not have any details of what surgery that was and why he had it.. The onset was just prior to arrival. Witnessed arrest unknown. Pre-arrival Treatment Oxygen intubated (unsuccessful). Preceding symptoms shortness of breath.

**Review of Systems**
    Additional review of systems information: Unable to obtain due to: Clinical condition.

Complications ultimately led to Nicholas's death on May 25, 2015 at 10:10 a.m.

## Liability

The State of Arizona has a non-delegable duty of care, custody, and control of inmates within the state prison system. This non-delegable duty includes providing reasonable medical care to its inmates. The claims in this case are based on negligence and gross negligence in breaching these fundamental duties.

The State is also responsible for monitoring its contractor and ensuring that medical care is being provided. In this regard, the State was negligent in failing to monitor the contractor to ensure that the contractor's employees are licensed and are practicing within the scope of their respective health care licenses, and that they are providing care according to ADC's policies.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Corizon is at fault for the death of Nicholas Long. At this stage, final expert disclosures have not been made. Plaintiff's preliminary affidavits were provided by John O'Steen, M.D., a physician practicing primary care in a general practice with incarcerated adults at the Central Arizona Florence Correctional Complex, and Meyer Solny, M.D., a board-certified gastroenterologist and clinical instructor in medicine at Weill Cornell College of Medicine. Both Drs. O'Steen and Solny will testify that Corizon failed to appropriately manage Nicholas Long's complex medical condition resulting in his deterioration and severe malnutrition. Had those conditions been appropriately managed, Nick would likely have survived his acute ulcerative colitis crisis and ultimately recovered. *See Exhibit 15 – Affidavit of Merit Meyer Solny & Exhibit 16 – Declaration Under Oath of John O'Steen.*

In addition to finalizing the above preliminary opinions, Plaintiffs will be disclosing expert opinions addressing Corizon's failure to following ADC's policies, deficiencies in the nursing care provided, and failure to provide appropriate nutrition.

Plaintiffs also anticipate that they will be seeking to amend their complaint to add a count for civil rights violation. Dr. Vukcevic testified at his deposition that he was thwarted in his attempts to seek appropriate care by Corizon's medical director, Dr. Chris Johnson, who apparently supervised Nick's care. This information is not contained in any medical record and, given Dr. Vukcevic's testimony, constitutes deliberate indifference to a serious medical need.

Dr. Vukcevic also describes a hostile environment and adversary relationship between Corizon and the contract monitors. Plaintiff will be conducting additional discovery regarding this relationship as well as the financial disincentives for providing appropriate medical care.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**V.   NICHOLAS LONG'S WRONGFUL DEATH HAS PERMANENTLY DAMAGED THIS FAMILY. HIS DEATH AT AGE 21 AND THE CIRCUMSTANCES SURROUNDING THE DENIAL OF MEDICAL CARE EXACERBATE THEIR GRIEF**

This claim is brought pursuant to A.R.S. § 12-611, which provides:

> When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under such circumstances as amount in law to murder in the first or second degree or manslaughter.

**A.R.S. § 12-611.**

The measure of damages is found in A.R.S. § 12-613:

> In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such action shall not be subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate.

**A.R.S. § 12-613.**

Damages include the loss of love, affection, comfort, guidance and companionship that the statutory beneficiaries of Mr. Long would have received from their son but for his wrongful death.  Mr. Long had two statutory beneficiaries: his mother, Cora Long, and his father, Kenneth Long. Although each had a different relationship with Nicholas, both loved him and face this loss each day.

Nick's death has devastated this family. Both Cora and Ken have experienced tremendous grief from the loss of their son. Their grief is

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

magnified by their frustration at a system that denied them information about their son and prevented them from getting their son the care he needed.



Cora Long had a close relationship with her son. She had seen him occasionally stumble as an adult, but she remained close to him. Nicholas had plans for when he left the state prison system, including returning to his family home.

Cora would have never allowed Nicholas' medical condition to deteriorate without making sure he had proper medical care. She is horrified by the callousness and negligence demonstrated in this case.

Nicholas' father was very involved in caring and loving their son. Kenneth Long will forever miss his son and the opportunity for continuing their father/son relationship in the future.

Nicholas Long's death has been emotionally devastating for both parents. Both continue to experience significant grief and loss over the death of their son.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

They demonstrated their love for Nicholas with visits to the prison and frequent letters and calls. They fully planned to greet Nicholas at the gates of the prison with open arms to take him home. Kenneth counted on his son coming back home to help care for him. Cora just wanted her son home safe and in good health. Instead, the State's conduct has forever deprived Nicholas' parents' the right to watch and further participate in their child's future.

Nicholas's death followed months of agonizing suffering. He presented with a serious medical need to which providers were deliberately indifferent. Nicholas Long suffered serious, painful injuries from the lack of treatment.

## Settlement

There have been no pre-mediation negotiations. Plaintiffs are prepared to offer to settle this case to include all claims arising from Nicholas' death.

"The loss of a loved one is not measurable in money." *Caldarera v. Eastern Airlines*, 705 F.2d 778, 784 (5th Cir.1983). Nonetheless, as settlements and verdicts in related matters demonstrate, the amount sought by Plaintiffs here is more than reasonable. *See, e.g., Agster v. Maricopa*



*County*, United States District Court No. CV06-1686-PHX-JAT ($6 million verdict for estate, $2 million verdict for parents, in wrongful death of detained person); *Norberg v. Maricopa County*, United States District Court No. CV97-866-PHX-PGR ($8.25 million wrongful death settlement in wrongful death

case involving detained individual); *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, 129 P.3d 966 (App. 2006) ($2.4 million wrongful death jury verdict to husband, mother, and son); *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 63 P.3d 282 (2003) (noting settlement of $5.4 million for wrongful death of 11-year old boy); *Althaus v. Cornelio*, 203 Ariz. 597, 58 P.3d 973 (App. 2002) (noting jury verdict of $6.5 million for wrongful death of a minor); *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 961 P.2d 449 (1998) (noting jury verdict of $1.7 million dollars in wrongful death case).

Plaintiff's counsel's trial experience includes a jury verdict of $4,000,000 for an inmate who committed suicide[2] and $2,000,000 for the wrongful death of an adult psychiatric patient.

Given the circumstances of this death and the likelihood that Plaintiffs will be successful in a constitutional claim for pre-death pain and suffering, a settlement offer of $3,500,000 is supported.

**RESPECTFULLY SUBMITTED**: November 9, 2017

ROBBINS & CURTIN, p.l.l.c.

By: *Anne E. Findling*

Joel B. Robbins
Anne E. Findling
*Attorneys for Plaintiffs*

---

[2] The verdict was adjusted for the decedent's comparative fault and, therefore, the net to the statutory beneficiaries was less than the stated verdict.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

# CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2017, a copy of the foregoing has been served by hand-delivery* and mail on counsel (without exhibits) for all parties, as designated below:

William J. Friedl*
Friedl Richardson
19840 North Cave Creek
Phoenix, AZ 85024
E: Bill@friedlrichardson.com
*Mediator*

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

By: _____
    Kimberly M. Gonzalez



1  Anthony J. Fernandez (Bar No. 018342)
   Vincent J. Montell (Bar No. 014236)
2  **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
   2390 E. Camelback Road, Suite 440
3  Phoenix, Arizona 85016
   Telephone: (602) 954-5605
4  Facsimile: (602) 954-5606
   afernandez@qpwblaw.com
5  vmontell@qpwblaw.com
   *Attorneys for Defendants*

6

7        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8            **IN AND FOR THE COUNTY OF MARICOPA**

9

| | |
|---|---|
| 10 KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| 12 Plaintiff, | **JOINT STIPULATION TO AMEND SCHEDULING ORDER** |
| 13 v. | |
| 14 STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | (Assigned to The Hon. Rosa Mroz) |
| 17 Defendants. | |

18        The parties, through counsel undersigned, jointly request to amend certain

19   discovery and disclosure deadlines. This Joint Stipulation is not made for purposes of

20   delay but is in the interests of justice in light of the current discovery status. A number of

21   depositions have been done, including plaintiffs' depositions and the depositions of

22   several Corizon staff members. The parties also recently attended private mediation,

23   which was not successful. There remains significant discovery that needs to be completed

24   since the case did not settle.

25        For this reason, the parties stipulate to amend the scheduling order to extend all

26   dates, as follows:

27

28

1. Plaintiff shall disclose the identity and opinions of experts by **February 2, 2018,** and Defendant shall disclose the identity and opinions of experts by **March 9, 2018.**

The parties shall simultaneously disclose their rebuttal expert opinions by **March 30, 2018.**

2. Lay (non-expert) witness disclosure: The parties have already disclosed lay (non-expert) witness disclosure.

3. Final supplemental disclosure: Each party shall provide final supplemental disclosure by **May 30, 2018.** This order does not replace the parties' obligation to seasonably disclose Rule 26.1 information on an on-going basis and as it becomes available.

No party shall use any lay witness, expert witness, expert opinion, or exhibit at trial not disclosed in a timely manner, except upon order of the court for good cause shown or upon a written or an on-the-record agreement of the parties.

4. Discovery deadlines: The parties will propound all discovery undertaken pursuant to Rules 33 through 36 by **April 11, 2018**. The parties will complete discovery, including the depositions of parties, lay witnesses and expert witnesses, by **June 19, 2018**. ("Complete discovery" includes conclusion of all depositions and submission of full and final responses to written discovery.)

5. Settlement conference or private mediation:

Private mediation: The parties participated in mediation on November 13, 2017.

6. Dispositive motions: The parties shall file all dispositive motions by **August 15, 2018**.

///

///

///

///

**RESPECTFULLY SUBMITTED** this 1st day of December, 2017.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By:   /s/ Anthony J. Fernandez
      Anthony J. Fernandez
      *Attorneys for Defendants*

ROBBINS & CURTIN, p.l.l.c.

By:   /s/ Anne Findling   (with permission)
      Anne E. Findling
      *Attorneys for Plaintiffs*

CARMAN LAW FIRM

By:   /s/ Krista Carman   (with permission)
      Krista Carman
      *Attorneys for Plaintiffs*

**ORIGINAL** efiled via AZ TurboCourt
this 1st day of December, 2017, with:

**The Clerk of the Court**

The Honorable Rosa Mroz
**MARICOPA COUNTY SUPERIOR COURT**
East Court Building - 414
101 Jefferson
Phoenix, AZ  85003-2243

**COPIES** of the foregoing mailed this same day to:

Joel B. Robbins
Anne E. Findling
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
*Attorneys for Plaintiffs*

Krista Carman
**WARNOCK, MACKINLAY &**
**CARMAN, PLLC**
246 S. Cortez Street
Prescott, AZ  86303
*Attorneys for Plaintiffs*


By  /s/ Nelly Preca

| | |
|---|---|
| **From:** | TurboCourt Customer Service <CustomerService@TurboCourt.com> |
| **Sent:** | Friday, December 01, 2017 11:18 AM |
| **To:** | Nelly Preca |
| **Subject:** | E-Filing Status: Form Set # 2426691 Delivered |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2426691 has been DELIVERED to Maricopa County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2426691
Keyword/Matter #: 92015 - AJF - LONG
Delivery Date and Time: Dec 01, 2017 11:18 AM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Stipulation: JOINT STIPULATION TO AMEND SCHEDULING ORDER
Proposed Order/Judgment (Supporting): PROPOSED AMENDED SCHEDULING ORDER

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

| | |
|---|---|
| **From:** | TurboCourt Customer Service |
| **To:** | Nelly Preca |
| **Subject:** | E-Filing Status: Form Set # 2426691 Filed |
| **Date:** | Friday, December 01, 2017 4:20:16 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #2426691 has been accepted and <mark>FILED</mark> at Maricopa County - Superior Court and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2426691
Keyword/Matter #: 92015 - AJF - LONG
Filing date and time: Dec 01, 2017 11:18 AM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Stipulation: JOINT STIPULATION TO AMEND SCHEDULING ORDER
Proposed Order/Judgment (Supporting): PROPOSED AMENDED SCHEDULING ORDER

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.
Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
*Attorneys for Defendants*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, <br><br> Defendants. | Case No. CV2016-007692 <br><br> **STIPULATION AND PROTECTIVE ORDER REGARDING CONFIDENTIALITY OF MEDICAL AND MENTAL HEALTH RECORDS OF PLAINTIFFS CORA LONG AND KENNETH LONG** <br><br> (The Honorable Rosa Mroz) |

WHEREAS, Defendants State of Arizona and Corizon Health, Inc. ("Defendants"), by and through their attorneys, have requested Plaintiffs to produce: the medical and/or mental health records of Cora Long and Kenneth Long related to any alleged hospitalizations, suicide attempts, or any other mental health or medical care sought or received allegedly due and/or related to, in part or in whole, the sickness and/or death of Nicholas Long;

WHEREAS, Plaintiffs contend that the requested documents are confidential;

WHEREAS, Plaintiffs request that the confidentiality of the documents and/or materials, and the information contained in the documents and materials, be maintained; and;

///

WHEREAS, the parties will comply with this confidentiality agreement until such time as the agreement may be modified by the parties or the court or as otherwise provided in this agreement;

IT IS HEREBY STIPULATED THAT:

1.    When Plaintiffs or Plaintiffs' attorneys deliver any documents or materials by way of discovery in this case, or divulge any documents or materials or any information contained therein, Plaintiffs shall designate as "confidential" any such documents, materials, or information they claim constitute or contain confidential medical and/or mental health information pertaining to Plaintiffs Cora or Kenneth Long; such documents will presumptively be considered confidential.

2.    When Defendants or Defendants attorneys obtain through signed authorization any such medical and/or mental health information, documents or materials pertaining to Plaintiffs Cora or Kenneth Long, Defendants shall designate as "confidential" any such documents, materials, or information; such documents will presumptively be considered confidential.

3.    The parties shall not directly or indirectly disclose any confidential documents, materials or information produced or obtained by the parties in this action, the substance thereof, or any copies, prints, negatives or summaries thereof, to any entity or person except Plaintiffs; Corizon; Co-Defendant State of Arizona; Plaintiffs', Co-Defendant's and Corizon's agents, insurers, necessary witnesses, or experts or consultants employed by the parties for this action.

4.    Any and all of the parties' necessary witnesses, experts, consultants and/or counsel associated in this arbitration and/or litigation and any other individuals who have access to confidential documents and/or materials and/or information subject to this Protective Order, or to the substance or existence thereof, or to any copies, prints, negatives or summaries thereof, shall be presented with a copy of this Protective Order. Those necessary witnesses, experts, consultants, counsel, and other individuals shall not give, show, or otherwise, directly or indirectly, disclose any of the confidential documents or

materials or information subject to this Protective Order, or the substance thereof, or the existence thereof, or any copies, prints, negatives, or summaries thereof, to any entity or person, except as may be necessary in preparing to render, or rendering, testimony expert advice or assistance in this Superior Court litigation only.

5. At the conclusion of the work of such necessary witnesses, experts, consultants, counsel, or other persons as described in Paragraph 4 herein, all confidential documents and materials and all copies, prints, negatives, and summaries thereof shall be destroyed. Upon completion of this matter, including any appeals in this action and the satisfaction of any judgment, judgment dismissing this matter, or upon conclusion of any settlement, counsel may retain a copy of any confidential documents in the client file as may be required for professional liability or to comply with any applicable rule of professional conduct. Confidential documents so retained shall continue to be considered confidential and not subject to disclosure to third parties.

6. The parties to this action and their attorneys agree that all objections, including, but not limited to, objections based on relevancy, materiality, and privilege, are reserved and all questions of admissibility may be asserted at the time of arbitration and/or trial of any action in which such confidential documents and/or materials are used or proffered should any such party deem it proper.

7. Any party may challenge the designation of any document designated "confidential", on the basis that the document does not contain confidential medical or mental health related information concerning Plaintiffs. Plaintiffs have the burden of proving any designated document should be "confidential", as defined herein.

8. Confidential documents and materials shall be so designated by prominent markings placed on each document or item at or before the time the document or item is divulged or produced for inspection. If the parties require more than one copy of any confidential document or material produced pursuant to this Protective Order, they must ensure that each copy is made with the marking designating the confidentiality of the document and/or material and the information contained therein. The parties shall limit the

number of copies to that which is necessary to adequately prepare their case and shall ensure that unnecessary copies are destroyed. Any and all copies shall be treated in accordance with the terms of this Protective Order.

9.     No party hereto shall be bound by this Protective Order as to any information that it possessed prior to this action.

10.     Any Defendant claiming that information designated as confidential was in the possession of such Defendant or had been in the possession of the public, prior to any party's disclosure of such information, that party shall have the burden of proving such earlier possession or such public knowledge of such information.

11.     This Protective Order shall be without prejudice to the rights of the parties in any other action and applies solely to the above-captioned action.

12.     The parties do not waive any rights they may possess to compel further discovery responses or to object to any further discovery requests made by either party.

13.     If a party intends to attach an otherwise confidential document to a court filing, the party will take steps to protect its confidentiality including redaction and/or filing under seal. Quotations and citations from confidential documents in court documents shall be limited so as not to unnecessarily divulge the confidential or proprietary portions of the confidential documents.

14.     Any confidential documents and materials produced during discovery and/or offered and/or admitted into evidence during arbitration, trial, or appeal, and any testimony relating to such confidential documents and materials, and any papers filed with the Arbitrator and/or Court in this action, which attach, include, or summarize any such confidential information, shall be sealed and protected from disclosure by this Protective Order. Such productions and/or offerings and/or admissions into evidence do not waive the terms of this Protective Order. Should this matter proceed to trial, the parties agree to cooperate in good faith in reviewing the necessity of continued claims of confidentiality when preparing exhibits for trial. Consideration will be given to the source of the document

and its public availability elsewhere in determining the necessity of continued claims of confidentiality.

15. The terms of this Protective Order shall remain fully active for a period of seven years following the production or disclosure of the materials or two years after the conclusion of the case, whichever first occurs. The Arbitrator and/or Court shall retain jurisdiction over the parties, this Protective Order, and recipients of confidential documents and materials, for the sole purpose of enforcing this Protective Order and adjudicating claims of breaches thereof and administering damages and other remedies related thereto. The provisions of this Protective Order shall continue to be binding as to the confidential documents and materials produced pursuant to it.

16. The party producing a confidential document under the terms of this Protective Order must number each page of each document (like the Bates numbering system); and designate "Confidential" in the numbering system prior to any disclosure. Said party must also maintain for all parties it makes this disclosure to, an index of all designated confidential documents. The parties will rely on this sequential numbering system and index to enact and maintain the integrity of this protective order.

**IT IS SO STIPULATED.**


**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**


By: __/s/ Anthony J. Fernandez_____
Anthony J. Fernandez
*Attorneys for Defendants*


**ROBBINS & CURTIN, p.l.l.c.**

By: __/s/ Anne Findling___(with permission)___
Anne E. Findling
*Attorneys for Plaintiffs*

5

**ORIGINAL** efiled via AZ TurboCourt
this 8th day of December, 2017, with:

**The Clerk of the Court**

The Honorable Rosa Mroz
**MARICOPA COUNTY SUPERIOR COURT**
East Court Building - 414
101 Jefferson
Phoenix, AZ  85003-2243

**COPIES** of the foregoing mailed this
same day to:

Joel B. Robbins
Anne E. Findling
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
*Attorneys for Plaintiffs*

Krista Carman
**WARNOCK, MACKINLAY &**
**CARMAN, PLLC**
246 S. Cortez Street
Prescott, AZ  86303
*Attorneys for Plaintiffs*



By  /s/ Nelly Preca

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2435752 has been DELIVERED to Maricopa County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2435752
Keyword/Matter #: 92015 - AJF - LONG
Delivery Date and Time: Dec 08, 2017 2:35 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Stipulation: STIPULATION AND PROTECTIVE ORDER RE CONFIDENTIALITY OF MEDICAL AND MENTAL HEALTH RECORDS OF PLAINTIFFS
Proposed Order/Judgment (Supporting): PROPOSED ORDER RE CONFIDENTIALITY OF THE MEDICAL AND MENTAL RECORDS OF PLAINTIFFS CORA AND KENNETH LONG

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #2435752 has been accepted and FILED at Maricopa County - Superior Court and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2435752
Keyword/Matter #: 92015 - AJF - LONG
Filing date and time: Dec 08, 2017 2:35 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Stipulation: STIPULATION AND PROTECTIVE ORDER RE CONFIDENTIALITY OF MEDICAL AND MENTAL HEALTH RECORDS OF PLAINTIFFS
Proposed Order/Judgment (Supporting): PROPOSED ORDER RE CONFIDENTIALITY OF THE MEDICAL AND MENTAL RECORDS OF PLAINTIFFS CORA AND KENNETH LONG

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.

3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **MOTION FOR LEAVE TO AMEND COMPLAINT** |
| vs. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona, | (Assigned to the Honorable Rosa Mroz) |
| Defendants. | |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

Plaintiffs seek leave to file their First Amended Complaint (Exhibit 1) for the reasons that follow. Ariz. R. Civ. P. 15(a) (2). A "red-lined" copy of the proposed amended complaint is attached as Exhibit 2.

Arizona Rules of Civil Procedure 15(a)(1) requires Plaintiffs to seek leave of the Court to amend their Complaint. Rule 15 provides that leave to amend shall be freely given when justice requires. Granting leave to amend is within the sound discretion of the trial judge and should be liberally allowed. *Forman v. Davis,* 371 U.S. 178, 181 (1962); *Cathermer v. Hunter,* 27 Ariz. App. 780, 785, 558 P.2d 975, 980 (1977); *Romo v. Reyes,* 26 Ariz. App. 374, 375, 548 P.2d 1189, 1190 (1976). Trial on the merits is preferred, therefore, amendments are liberally allowed. *Owens v. Superior Court,* 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982). Amendments will be permitted unless there has been undue delay, dilatory action or undue prejudice. *Id.* Amendments should be allowed at any stage of the proceedings, even during trial to conform to the proof. *Walton v. Hager,* 13 Ariz. App. 520, 521, 478 P.2d 135, 136 (1971).

### Factual Background

This case involves the death of 21-year old Nicholas Long. Nicholas died on May 25, 2015, while in the custody of the Arizona Department of Corrections (ADC) from complications of ulcerative colitis (UC).

> Ulcerative colitis (UC) is a disease in which the lining of the colon (the large intestine) becomes inflamed and develops sores (ulcers), leading to bleeding and and diarrhea. The inflammation almost always affects the rectum and lower part of the colon, but it can affect the entire colon.

> Although ulcerative colitis cannot be cured, it can be controlled. Most people with ulcerative colitis are able to live active and productive lives. Controlling the disease usually means taking medications and seeing a healthcare provider on a regular basis.

Exhibit 3, Patient education: Ulcerative colitis (Beyond the Basics), Official Reprint from UpToDate®, www.uptodate.com, accessed February 21, 2018.

According to Corizon's medical record, Nicholas reported symptoms and asked for medical help on October 7, 2014, while he was housed at ASPC-Yuma. *See* Exhibit 4,

Health Needs Request (10-7-2014), ADOC-Long-02204. Nicholas was admitted to Yuma Regional Medical Center on November 6, 2014.

On November 25, 2014, Nicholas was admitted to the ASPC-Florence Central Unit Medical Infirmary under the care of Zoran Vukcevic, M.D. Nicholas weighed 115 pounds, a weight loss in excess of 30 pounds. From November 25, 2014 to February 2, 2015, Nicholas's condition further deteriorated. On three occasions, Nicholas requested to leave Tempe St. Luke's Hospital against medical orders. On numerous occasions he reported that the prescribed medication was making his condition worse. As a result, Nicholas also frequently refused available medication.

Because Nicholas was an inmate, he had a constitutionally-protected right to medical care to treat his serious medical conditions. *See Jett v. Penner,* 439 F. 3d 1091, 1096 (9th Cir. 2006); *see also Braillard v. Maricopa County,* 224 Ariz. 481, 489-90 (App. 2010) (pretrial detainee). Although a private entity, Corizon is a state actor because it provides constitutionally-mandated medical care pursuant to its contract with the State. *See Jensen v. Lane County,* 222 F.3d 570, 574 (9th Cir. 2000). As described by plaintiffs' correctional mental health care expert, Michael Champion, M.D., policies and procedures were not followed in Nicholas Long's case. *See* Exhibit 5, Report of Michael K. Champion, M.D. (1/31/2018).

<center>ARGUMENT</center>

Mr. and Mrs. Long served a timely notice of claim on the State of Arizona and filed this lawsuit on May 19, 2016. At the time of the filing of the lawsuit, the Longs had Nicholas's medical records. On October 24, 2016, Plaintiff first requested depositions of representatives of Corizon. *See* Exhibit 6, Letter from Anne Findling to Anthony Fernandez (10/24/2016). Plaintiff again requested depositions on January 24, 2017. *See* Exhibit 7, Letter from Anne Findling to Anthony Fernandez (1/24/2017). Defendants responded: "The medical record clearly documents staff's interactions with Mr. Long, and identifies staff members by name." *See* Exhibit 8, Letter from Anthony Fernandez to Anne Findling. Ultimately, the depositions of treating physicians Vukcevic, Anderson, Riaz, and

<center>Page 3 of 5</center>

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

1   Johnson were taken on September 6, 2017; September 8, 2017; December 15, 2017; and

2   December 20, 2017.

3       The constitutional violations alleged were revealed during the depositions of those

4   providers. Specifically, Dr. Vukcevic named Dr. Johnson as a decision-maker in Nicholas

5   Long's care. Dr. Anderson testified that he was unable to adequately provide mental health

6   care due to inadequate staffing. Together with the Corizon's policies and procedures,

7   which were disclosed during this litigation under a protective order, the testimony of the

8   providers established that Nicholas Long's death was not merely medical negligence, but

9   the result of deliberate indifference.

10                              **CONCLUSION**

11      Plaintiffs seek to amend the complaint to add Christopher Johnson, D.O. as a

12  defendant and Corizon as a constitutional defendant, in light of this newly discovered

13  information.  Plaintiffs respectfully request the Court exercise its discretion and grant

14  Plaintiff leave to file their First Amended Complaint.

15      **RESPECTFULLY SUBMITTED**:  February 21, 2018

16                              **ROBBINS & CURTIN, p.l.l.c.**

17

18                          By:   /s/Anne E. Findling
                                  Joel B. Robbins
19                                Anne E. Findling
                                  *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2018, I electronically transmitted the attached document to the Clerk's Office using the Maricopa County Clerk of Superior Court's Online eFiling System for filing and automatic transmittal of the eFiled document to the assigned judge, the Honorable Rosa Mroz, and that a copy of the foregoing has been served by e-service on counsel for all parties, as designated below:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
E: rebecca.stanton@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

By: ___/s/Kimberly M. Gonzalez_____
         Kimberly M. Gonzalez

**EXHIBIT 1**

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| vs. | (Wrongful Death) |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona; | **(Jury Trial Requested)** |
| Defendants. | |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Plaintiffs Kenneth Long and Cora Long, for their complaint on behalf of themselves and the estate of Nicholas Long against Defendants State of Arizona and Corizon Health, Inc., allege as follows:

## PARTIES

1.     Plaintiffs Kenneth Long and Cora Long ("Plaintiffs") are residents of the State of Arizona.  They are the natural parents of decedent Nicholas Long.

2.     Decedent Nicholas Long was a resident of the State of Arizona. Although incarcerated with the Arizona Department of Corrections at the time of his death, Mr. Long's residence was in Yavapai County, Arizona prior to his incarceration.  He died on May 25, 2015.

3.     Plaintiff Cora Long is the duly appointed Personal Representative of the Estate of Nicholas Long, deceased, Yavapai Superior Court No. V1300PB201580054.

4.     Defendant State of Arizona is a governmental entity organized under the Constitution of the United States.  Its subdivisions or agencies include the Arizona Department of Corrections (ADC).

5.     Defendant State of Arizona is liable for the acts and omissions of its employees within the scope of their employment, including the Director, officers and other employees of the ADC under the doctrine of *respondeat superior*.

6.     Pursuant to A.R.S. §31-201.01(F), any and all causes of action which may arise out of tort caused by the Director, prison officers, or employees of ADC, run only against the State.

7.     Defendant State of Arizona has a non-delegable duty of care, custody, and control over the inmates within its custody, including the duty to provide medical care for the serious medical needs of the inmates.

8.     Effective March 4, 2013, Defendant Corizon Health, Inc. ("Corizon") contracted with Arizona Department of Corrections to provide full service medical, mental health, and dental care (collectively "healthcare") to the inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma. Plaintiffs are informed and believe that Defendant Corizon was, and is, a for-profit corporation.

9.     Defendant Corizon was, and is, a state actor as that term is used within the jurisprudence of federal civil rights law.

10.   Defendant State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

11.   Defendant State of Arizona requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who present for treatment.

12.   Defendant State of Arizona remains ultimately liable for the acts and omissions of Defendant Corizon in providing healthcare to inmates within the ADC and the Arizona prison system.

13.   Defendant Chris Johnson DO was the medical director for ASPC-Florence Central Unit for approximately two years beginning in approximately June 2014. Defendant Johnson's identity and participation in the constitutional violation asserted herein were discovered on September 9, 2017, when Zoran Vukcevic, M.D. identified Defendant Johnson as a moving force in the treatment decisions made with respect to Nicholas Long.

14.   At the time that Defendant Johnson was made medical director of ASPC-Florence Central Unit, he had been licensed to practice medicine in

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Arizona for less than one month and had no experience as a primary care physician, in correctional medicine, or in the direction of a complex health care delivery system.

15. Defendant Johnson was, and is, a state actor as that term is used within the jurisprudence of federal civil rights law.

## JURISDICTION AND VENUE

16. The amount in controversy exceeds the jurisdictional threshold of the Court.

17. A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on November 20, 2015. More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

18. This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

19. Plaintiffs hereby amend their complaint to add claims arising under 42 U.S.C. § 1983, Civil action for deprivation of rights. This Court has general jurisdiction over the claims asserted.

## FACTUAL BACKGROUND

### State of Arizona / Department of Corrections

20. The Arizona Department of Corrections promulgates department orders that govern an inmate's access to constitutionally mandated health care.

21. Upon information and belief, the contract between the State of Arizona and Corizon requires that Corizon comply with ADC's department orders.

22. Corizon's responsibility to inmates extends to ensuring "all efforts are taken to maintain the inmate's life while on the prison complex." Inmates

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

retain the right to refuse treatment, but if the inmate's decision is life-threatening, Corizon must follow Department Order § 1101.11 (1.2.1), which initiates the chain of command to ensure that the inmate is mentally competent and makes a knowing, fully informed decision, including seeking court authority for treatment.

23. ADC policy requires notification to the Facility Health Administrator (FHA), the ADC Contract Monitor, and the Warden. A significant incident report must be completed, and the Department's General Counsel must be contacted. Contact with General Counsel initiates the involvement of the Office of the Attorney General in petition for court mandated treatment.

24. Corizon's responsibility to inmates extends to inmates that ADC and/or Corizon consider to be on a "hunger strike." ADC policy requires that "hunger strikes" be reported through the chain of command including reporting to the Attorney General to seek court orders for treatment.

25. Even if an inmate refuses needed medical treatment, Corizon's responsibility extends to ensuring "that every possible avenue is explored to encourage cooperation by inmates in completion of their own care."

26. ADC policy also requires Corizon to initiate a multi-disciplinary panel in the event that there is a life-threatening failure of treatment.

*Parsons v. Ryan*

27. On or about March 22, 2012, a prisoner civil rights complaint was filed in the United States District Court, District of Arizona, alleging systemic policies and practices with the Arizona Department of Corrections that resulted in the denial of the constitutional rights of inmates with ADC. Defendant Corizon is also a defendant in the *Parsons v. Ryan* case.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

28. Plaintiffs are informed and believe that Defendant Corizon was, and is, subject to potential civil penalties for non-compliance with certain performance measures related to staffing and referral of inmates for medically indicated care to non-employee ("outside") medical providers, specialists, and hospitals.

29. Plaintiffs are further informed and believe that Defendant Corizon was, and is, subject to potential contractual penalties for non-compliance with certain performance measures related to staffing and referral of inmates for medically indicated referrals to non-employee medical providers, specialists, and hospitals.

30. Plaintiffs are informed and believe that the potential for such penalties has created a financial disincentive for Corizon to initiate policy-mandated procedures.

### *Nicholas Long*

31. Nicholas Long was admitted to the Arizona Department of Corrections on March 12, 2014, to serve a sentence for selling six prescription pills to a neighbor to pay his cell phone bill. The maximum end date of his sentence was March 13, 2019.

32. Nicholas was naïve and guileless. His disciplinary tickets in prison were for playing basketball when he was supposed to be working with the grounds crew and refusing to shave.

33. At intake, Nicholas (5'10") was reported to have weighed 153 lbs. He reported a history of Bipolar Disorder (a mood disorder) that had been previously treated with medication. He also reported stomach issues for which he requested Prilosec (omeprazole), a medication commonly used for Gastroesophageal Reflux Disease (GERD). Nicholas was transferred to ASPC-Yuma to serve his sentence.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

34.   On March 28, 2014, Nicholas submitted a Health Needs Request (HNR) to request Prilosec "for his stomach." A progress note of April 3, 2014 documents Nicholas's weight to be 160 lbs. Nicholas was assessed as having GERD and a prescription for Prilosec was ordered.

35.   On June 28, 2014, Nicholas (at the time 180 lbs) was seen by a nurse for a chief complaint of 10/10 abdominal pain, intermittent, for one week. The pain was described as sharp. He was tachycardic. The record does not include referral to an appropriate provider or any GI work-up.

36.   Nicholas's October 7, 2014 HNR for "really bad" stomach cramping, diarrhea, pain, and inability to sleep, and his October 10, 2014 HNR report of "severe pain" resulted in being placed on the "nurse's line" on October 12. Records document bloody stool, inability to urinate, anorexia, diarrhea, weakness, dizziness and vomiting. He described his pain as 9/10 to 10/10. His weight was down 24 pounds since his last assessment. His abdomen was described as tender, hyperactive bowel sounds present, guarding present, with confirmed blood in his stool. The record does not include referral to an appropriate provider or any GI work-up. No CT was done, and no surgical consult was obtained.

37.   His condition deteriorated and on November 6, 2014 he was admitted to Yuma Regional Medical Center for possible acute colitis. He was discharged on November 11, with instructions to continue Levaquin.

38.   Nicholas was transferred to ASPC-Florence on or about November 25, 2014.  He continued to have stomach cramps and diarrhea. He was weak and required supplemental nutrition.

39.   Nicholas's GI symptoms continued. He had trouble eating. His stools were grossly abnormal, with bleeding and diarrhea.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

40. Sometime after his arrival at ASPC-Florence Central Unit, Nicholas Long came under the primary care of Zoran Vukcevic, M.D.

41. On November 26, 2014, Nicholas was admitted to Tempe St. Luke's Hospital. A CT revealed circumferential large bowel mucosal thickening consistent with infectious or inflammatory colitis, likely ulcerative colitis. Nicholas was reported to having signed out against medical advice, apparently because he was unable to eat. There's no record of a mental health consult or contact with Nicholas's family. Protocols for addressing his condition were ignored.

42. Nicholas was readmitted to Tempe St. Luke's Hospital on December 11, 2014, and again on January 23, 2015. Nicholas was released against medical advice.

43. At the time of his discharge back to the prison, Nicholas was described as extremely weak and cachectic, with increasing weight loss. He was refusing to eat. The attending physician from Tempe St. Luke's personally called and spoke with the medical director, now identified as Defendant Chris Johnson, D.O.

44. Sometime during this period, someone labeled Nicholas as being on a "hunger strike." The label clearly infected the treatment he was given. Although the records show that he complained that he was unable to eat and that his medication was causing side effects, he was stigmatized and denied appropriate care apparently on someone's assumption that his conduct was willful. Again, the protocols for addressing these issues were disregarded.

45. Policy required that Nicholas Long be seen by a psychiatrist before initiation of the process of obtaining court ordered treatment. Plaintiffs are informed and believe that Defendant Corizon and/or Defendant Johnson

refused a request by primary care physician Vukcevic for an urgent behavioral health consultation.

46. At relevant times, Robert Anderson, D.O. worked for Defendant Corizon at ASPC-Florence as a psychiatrist. As a psychiatrist, Dr. Anderson's responsibility was primarily mental health and not providing medical care.

47. On February 2, 2015, Dr. Anderson saw Nicholas Long emergently for a capacity evaluation at the prison. Dr. Anderson had not been informed of the critical nature of Nicholas Long's medical condition. Dr. Anderson was given virtually no information on Nicholas Long before being asked to see him.

48. Dr. Anderson observed a "young man lying in bed . . . extremely lean, in a condition that visually for me said this man is in peril of perhaps perishing if medical services aren't provided very quickly." Nicholas Long was unable to communicate in any meaningful way.

49. A capacity evaluation requires "that the individual [be] able to be verbal, responsive, clear, aware of their environment, responsive, nonpsychotic." Dr. Anderson saw "an individual who could provide nothing [to] do a competent capacity evaluation."

50. From available laboratory reports, based on his experience in family practice, Dr. Anderson concluded that Nicholas Long was a risk of dying if he did not receive emergent medical care.

51. Dr. Anderson assessed that Nicholas Long was suffering from delirium due to malnutrition and dehydration. Dr. Anderson was shocked and disturbed by Nicholas Long's condition.

52. From November 26, 2014 to February 2, 2015, Nicholas Long's medical and physical condition deteriorated as he became malnourished and cachectic. Although he reported that the medications he was being given were

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ineffective and, in fact, making him worse, providers failed to provide available alternative treatment.

53. Nicholas was ultimately admitted to Mountain Vista Medical Center after becoming unresponsive from starvation and dehydration. Abdominal surgery revealed severe adhesions and perforations. He had subtotal colectomy, placement of ileostomy, enterorrhaphy and lysis of adhesions.

54. Complications ultimately led to Nicholas's death on May 25, 2015.

<u>**CLAIMS FOR RELIEF**</u>

**Count One**

**NEGLIGENCE**

**(Defendant State of Arizona)**

55. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

56. The State of Arizona has a non-delegable duty of care, custody, and control of inmates within the state prison system. This non-delegable duty includes providing appropriate medical care for serious medical needs.

57. The State of Arizona also has a duty to ensure, through appropriate monitoring, that reasonable and necessary medical care is being provided by contracted and subcontracted medical providers duly licensed and acting within the scope of those licenses according to the community standard of care to inmates within the ADC and the Arizona state prison system is delivered.

58. The State of Arizona breached its duty to Plaintiffs' decedent by failing to provide appropriate medical care for his serious medical needs.

59. The State of Arizona further breached its duty to Plaintiffs' decedent by failing to adequately monitor the contracted medical services being provided to Plaintiffs' decedent and others.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

60. As a result of these breaches, Plaintiffs' decedent failed to receive competent medical care for his serious medical needs resulting in his death.

61. By virtue of the non-delegable duty set forth above, Defendant State of Arizona is vicariously liable for the medical negligence of Defendant Corizon Health, Inc. as set forth in Count Two of Plaintiffs' Complaint.

## Count Two

### NEGLIGENCE
### (Defendant Corizon Health, Inc.)

62. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

63. Defendant Corizon has a duty to provide reasonable healthcare in accordance with the community standard of care by appropriately licensed medical personnel acting within the scope of their respective licenses.

64. Defendant Corizon breached that duty by failing to provide necessary medical care to Plaintiffs' decedent within the community standard of care.

65. Defendant Corizon and its employees and agents failed to properly recognize, assess, diagnose or treat Plaintiffs' decedent's serious medical condition resulting in his death.

66. Defendant Corizon and its employees and agents failed to exercise that degree of care that a reasonable provider would exercise under the same or similar circumstances.

67. Defendant Corizon created policies and procedures that resulted in its employees failing to practice within the scope of their respective licenses.

68. Defendant Corizon's negligence includes:

    a. Failing to properly assess Plaintiffs' decedent after he made his medical needs known;

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

b. Failing to establish proper policy, procedures, custom and practice for identifying inmates who require a higher level of care than can be provided at the prison complex;

c. Failing to provide appropriate personnel and to train that personnel in the recognition of conditions requiring a higher level of medical care than can be provided at the prison complex;

d. Failing to properly assess Plaintiffs' decedent when his medical condition had obviously deteriorated;

e. Failing to investigate Plaintiffs' decedent's declining medical condition and waiting until his condition was life-threatening before taking action;

f. Failing to ascertain the source of Plaintiffs' decedent's complaints;

g. Failing to act on objective signs of an increasingly serious medical condition until it was too late for effective treatment;

h. Failing to provide adequate nutrition and hydration.

69. Ordinary care required Defendant Corizon to refer Plaintiffs' decedent to a qualified and properly equipped medical professional who could conduct an adequate and proper medical examination, properly and competently diagnose Mr. Long's medical condition, and provide for competent and adequate treatment.

70. As a result of the breach of Defendant Corizon's duties to Plaintiffs' decedent as more fully set forth above, Defendant Corizon caused Plaintiffs' decedent to be denied timely, appropriate and competent medical care resulting in his death.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**Count Three**

**WRONGFUL DEATH**

**(All Defendants)**

71.   Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

72.   Pursuant to A.R.S. § 12-611, et seq., Plaintiffs hereby assert a claim for damages for the wrongful death of Nicholas Long based on the wrongful acts and negligent conduct set forth in Counts One and Two of this complaint.

73.   As a result of the wrongful acts of Defendants as set forth above, Plaintiffs suffered damages including loss of love, companionship, and support.

**Count Four**

**42 U.S.C. § 1983**

**(Federal Civil Rights – Defendant Corizon)**

74.   Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

75.   The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment.

76.   The Fourteenth Amendment protects familial and associational relationships from interference without due process of law.

77.   As set forth herein, Nicholas Long presented with a serious medical need. Specifically, he was suffering from chronic and acute malnutrition, chronic and acute mental illness, and chronic and acute ulcerative colitis.

78.   Defendant Corizon knew that Nicholas Long presented with a serious medical need and knew that failure to treat that serious medical need could result in further significant injury (including death) and unnecessary and wanton infliction of pain.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

79. Defendant Corizon knew that Nicholas Long likely required treatment with a biologic substance, which would be much more costly than the treatment provided by Defendant Corizon.

80. Defendant Corizon's response to Nicholas Long's serious medical need demonstrated deliberate indifference.

81. Defendant Corizon purposefully acted and/or failed to respond to Nicholas Long's medical need resulting in needless pre-death pain and suffering.

82. Upon information and belief, Defendant Corizon's decision not to follow ADC's policies, as it was required to do, was the product of a conscious choice motivated by financial considerations.

83. The nature and extent of Defendant Corizon's indifference to Nicholas Long's serious medical condition was revealed on September 6, 2017, when primary care provider Vukcevic, who characterized himself as a "whistle blower", testified that he attempted to, but "failed to let's say blow whistle enough or know enough to save [Nicholas Long's] life."

84. Dr. Vukcevic testified that specialist care / outside care was required including parenteral feeding, noting that correctional medicine cannot feed people intravenously.

85. Dr. Vukcevic testified that he attempted to initiate the process for court ordered treatment but was blocked by Defendant Corizon from doing so.

86. Dr. Anderson testified that staffing at ASPC-Florence made it "impossible" to deliver required psychiatric services. Resources for mental health were limited or not available to meet the mental health needs of patients such Nicholas Long.

87. The severity of Nicholas Long's medical and mental health conditions were documented in his medical record.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

88.　As a direct result of the deliberate indifference of Defendant Corizon, Nicholas Long suffered further injury and suffering, and the unnecessary and wanton infliction of pain, including pre-death pain and suffering.

89.　As a further direct result of the deliberate indifference of Defendant Corizon, Nicholas Long died.

90.　As a further and direct result of the deliberate indifference of Defendant Corizon, Plaintiffs Cora Long and Kenneth Long experienced grief and suffering as set forth herein.

91.　The conduct of Corizon as described herein was shocking and disturbing to its own providers.

## Count Five

### 42 U.S.C. § 1983

### (Federal Civil Rights – Defendants Johnson)

92.　Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

93.　On or about November 24, 2014, Nicholas Long was transferred from ASPC-Yuma to ASPC-Florence Central Unit.

94.　Defendant Johnson was the site medical director for ASPC-Florence Central Unit.

95.　Defendant Johnson was responsible for clinical supervision of the medical providers at ASPC-Florence.

96.　Defendant Johnson knew that Nicholas Long was transferred to ASPC-Florence Central Unit with a diagnosis of colitis and diarrhea with bleeding. Defendant Johnson further knew that Nicholas Long had lost substantial weight, including six pounds in the four days preceding his transfer.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

97.   Defendant Johnson knew that Nicholas Long was sent out to the hospital and returned to the prison against medical orders. Defendant Johnson knew that Nicholas Long was refusing treatment and that his health was deteriorating. Defendant Johnson knew as early as January 6, 2015, that Dr. Vukcevic was specifically concerned that Nicholas Long needed a psychiatric evaluation.

98.   Defendant Johnson further knew that Nicholas Long's medical condition had so deteriorated that he required court ordered treatment.

99.   The severity of Nicholas Long's medical and mental health conditions were documented in his medical record.

100.   As a direct result of the deliberate indifference of Defendant Johnson, Nicholas Long suffered further injury and suffering, and the unnecessary and wanton infliction of pain, including pre-death pain and suffering.

101.   As a further direct result of the deliberate indifference of Defendant Johnson, Nicholas Long died.

102.   As a further and direct result of the deliberate indifference of Defendant Johnson, Plaintiffs Cora Long and Kenneth Long experienced grief and suffering as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.   For special damages;

B.   For lost wages, income, and other economic losses;

C.   For general damages for the predeath pain and suffering experienced by Nicholas Long;

D.   For other general damages, including but not limited to pain and suffering, loss of enjoyment of life and other emotional trauma;

E.    For exemplary damages to the extent permitted by law;

F.    For taxable costs and pre- and post-judgment interest to the extent permitted by law;

G.    Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED:  February 21, 2018

**ROBBINS & CURTIN, p.l.l.c.**


By:   /s/Anne E. Findling
        Joel B. Robbins
        Anne E. Findling
        *Attorneys for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on February 21, 2018, I electronically transmitted

3  the attached document to the Clerk's Office using the Maricopa County Clerk

4  of Superior Court's Online eFiling System for filing and automatic transmittal

5  of the eFiled document to the assigned judge, the Honorable Rosa Mroz, and

6  that a copy of the foregoing has been served by e-service on counsel for all

7  parties, as designated below:

8

Anthony J. Fernandez

9

Vincent J. Montell

QUINTAIROS, PREIETO, WOOD & BOYER, P.A.

10

2390 E. Camelback Road, Suite 440

Phoenix, Arizona 85016

11

E: afernandez@qpwblaw.com

12

E: vmontell@qpwblaw.com

E: rebecca.stanton@qpwblaw.com

13

*Attorneys for Defendants, State of Arizona & Corizon*

14

15

Krista Carman

CARMAN LAW FIRM

16

246 S. Cortez Street

Prescott, AZ 86303

17

E: kcarman@carmanlf.com

*Co-Counsel for Plaintiffs*

18

19

20

By:   /s/Kimberly M. Gonzalez

Kimberly M. Gonzalez

21

22

23

24

25

26

27

28

EXHIBIT 2

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
~~Warnock, MacKinlay & Carman, PLLC~~
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
~~Telephone: (928) 445-8056~~
~~Facsimile: (928) 445-8046~~
~~kcarman@lawwmc.com~~
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707  ◆  Fax: (602) 265-0267

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| vs. | (Wrongful Death) |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona,~~,~~; | **(Jury Trial Requested)** |

Defendants.

Plaintiffs Kenneth Long and Cora Long, for their complaint on behalf of themselves and the estate of Nicholas Long against Defendants State of Arizona and Corizon Health, Inc., allege as follows:

## PARTIES

1.    Plaintiffs Kenneth Long and Cora Long ("Plaintiffs") are residents of the State of Arizona.  They are the natural parents of decedent Nicholas Long.

2.    Decedent Nicholas Long was a resident of the State of Arizona. Although incarcerated with the Arizona Department of Corrections at the time of his death, Mr. Long's residence was in Yavapai County, Arizona prior to his incarceration.  He died on May 25, 2015.

3.    Plaintiff Cora Long is the duly appointed Personal Representative of the Estate of Nicholas Long, deceased, Yavapai Superior Court No. V1300PB201580054.

~~3.~~4.    Defendant State of Arizona is a governmental entity organized under the Constitution of the United States.  Its subdivisions or agencies include the Arizona Department of Corrections (ADC).

~~4.~~5.    Defendant State of Arizona is liable for the acts and omissions of its employees within the scope of their employment, including the Director, officers and other employees of the ADC under the doctrine of *respondeat superior*.

~~5.~~6.    Pursuant to A.R.S. §31-201.01(F), any and all causes of action which may arise out of tort caused by the Director, prison officers, or employees of ADC, run only against the State.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

6.7.  Defendant State of Arizona has a non-delegable duty of care, custody, and control over the inmates within its custody, including the duty to provide medical care for the serious medical needs of the inmates.

8.  Effective March 4, 2013, Defendant Corizon Health, Inc. ("Corizon") contracted with Arizona Department of Corrections to provide full service medical, mental health, and dental care (collectively "healthcare"") to the inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma. Plaintiffs are informed and believe that Defendant Corizon was, and is, a for-profit corporation.

7.9.  Defendant Corizon was, and is, a state actor as that term is used within the jurisprudence of federal civil rights law.

8.10.  Defendant State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

9.11.  Defendant State of Arizona requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who present for treatment.

10.12.  Defendant State of Arizona remains ultimately liable for the acts and omissions of Defendant Corizon in providing healthcare to inmates within the ADC and the Arizona prison system.

13.  Defendant Chris Johnson DO was the medical director for ASPC-Florence Central Unit for approximately two years beginning in approximately June 2014. Defendant Johnson's identity and participation in the constitutional violation asserted herein were discovered on September 9, 2017, when Zoran Vukcevic, M.D. identified Defendant Johnson as a moving force in the treatment decisions made with respect to Nicholas Long.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

14.  At the time that Defendant Johnson was made medical director of ASPC-Florence Central Unit, he had been licensed to practice medicine in Arizona for less than one month and had no experience as a primary care physician, in correctional medicine, or in the direction of a complex health care delivery system.

15.  Defendant Johnson was, and is, a state actor as that term is used within the jurisprudence of federal civil rights law.

## JURISDICTION AND VENUE

11.16.    The amount in controversy exceeds the jurisdictional threshold of the Court.

12.17.    A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on November 20, 2015.  More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

13.18.    This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

19.  Plaintiffs hereby amend their complaint to add claims arising under 42 U.S.C. § 1983, Civil action for deprivation of rights. This Court has general jurisdiction over the claims asserted.

## FACTUAL BACKGROUND

*State of Arizona / Department of Corrections*

20.  The Arizona Department of Corrections promulgates department orders that govern an inmate's access to constitutionally mandated health care.

21.  Upon information and belief, the contract between the State of Arizona and Corizon requires that Corizon comply with ADC's department orders.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

22. Corizon's responsibility to inmates extends to ensuring "all efforts are taken to maintain the inmate's life while on the prison complex." Inmates retain the right to refuse treatment, but if the inmate's decision is life-threatening, Corizon must follow Department Order § 1101.11 (1.2.1), which initiates the chain of command to ensure that the inmate is mentally competent and makes a knowing, fully informed decision, including seeking court authority for treatment.

23. ADC policy requires notification to the Facility Health Administrator (FHA), the ADC Contract Monitor, and the Warden. A significant incident report must be completed, and the Department's General Counsel must be contacted. Contact with General Counsel initiates the involvement of the Office of the Attorney General in petition for court mandated treatment.

24. Corizon's responsibility to inmates extends to inmates that ADC and/or Corizon consider to be on a "hunger strike." ADC policy requires that "hunger strikes" be reported through the chain of command including reporting to the Attorney General to seek court orders for treatment.

25. Even if an inmate refuses needed medical treatment, Corizon's responsibility extends to ensuring "that every possible avenue is explored to encourage cooperation by inmates in completion of their own care."

26. ADC policy also requires Corizon to initiate a multi-disciplinary panel in the event that there is a life-threatening failure of treatment.

### *Parsons v. Ryan*

27. On or about March 22, 2012, a prisoner civil rights complaint was filed in the United States District Court, District of Arizona, alleging systemic policies and practices with the Arizona Department of Corrections that resulted in the denial of the constitutional rights of inmates with ADC. Defendant Corizon is also a defendant in the *Parsons v. Ryan* case.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

28.   Plaintiffs are informed and believe that Defendant Corizon was, and is, subject to potential civil penalties for non-compliance with certain performance measures related to staffing and referral of inmates for medically indicated care to non-employee ("outside") medical providers, specialists, and hospitals.

29.   Plaintiffs are further informed and believe that Defendant Corizon was, and is, subject to potential contractual penalties for non-compliance with certain performance measures related to staffing and referral of inmates for medically indicated referrals to non-employee medical providers, specialists, and hospitals.

30.   Plaintiffs are informed and believe that the potential for such penalties has created a financial disincentive for Corizon to initiate policy-mandated procedures.

### Nicholas Long

14.31.   Nicholas Long was admitted to the Arizona Department of Corrections on March 12, 2014, to serve a sentence for selling six prescription pills to a neighbor to pay his cell phone bill. The maximum end date of his sentence was March 13, 2019.

15.32.   Nicholas was naïve and guileless. His disciplinary tickets in prison were for playing basketball when he was supposed to be working with the grounds crew and refusing to shave.

16.33.   At intake, Nicholas (5'10") was reported to have weighed 153 lbs. He reported a history of Bipolar Disorder (a mood disorder) that had been previously treated with medication. He also reported stomach issues for which he requested Prilosec (omeprazole), a medication commonly used for Gastroesophageal Reflux Disease (GERD). Nicholas was transferred to ASPC-Yuma to serve his sentence.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

~~17.~~34.     On March 28, 2014, Nicholas submitted a Health Needs Request (HNR) to request Prilosec "for his stomach." A progress note of April 3, 2014 documents Nicholas's weight to be 160 lbs. Nicholas was assessed as having GERD and a prescription for Prilosec was ordered.

~~18.~~35.     On June 28, 2014, Nicholas (at the time 180 lbs) was seen by a nurse for a chief complaint of 10/10 abdominal pain, intermittent, for one week. The pain was described as sharp. He was tachycardic. The record does not include referral to an appropriate provider or any GI work-up.

~~19.~~36.     Nicholas's October 7, 2014 HNR for "really bad" stomach cramping, diarrhea, pain, and inability to sleep, and his October 10, 2014 HNR report of "severe pain" resulted in being placed on the "nurse's line" on October 12. Records document bloody stool, inability to urinate, anorexia, diarrhea, weakness, dizziness and vomiting. He described his pain as 9/10 to 10/10. His weight was down 24 pounds since his last assessment. His abdomen was described as tender, hyperactive bowel sounds present, guarding present, with confirmed blood in his stool. The record does not include referral to an appropriate provider or any GI work-up. No CT was done, and no surgical consult was obtained.

37.   His condition deteriorated and on November 6, 2014 he was admitted to Yuma Regional Medical Center for possible acute colitis. He was discharged on November 11, with instructions to continue Levaquin.

~~20.~~38.     Nicholas was transferred to ASPC-Florence. on or about November 25, 2014.  He continued to have stomach cramps and diarrhea. He was weak and required supplemental nutrition.

~~21.~~39.     Nicholas's GI symptoms continued. He had trouble eating. His stools were grossly abnormal, with bleeding and diarrhea.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

40.   Sometime after his arrival at ASPC-Florence Central Unit, Nicholas Long came under the primary care of Zoran Vukcevic, M.D.

22.41.   On November 26, 2014, Nicholas was admitted to Tempe St. Luke's Hospital. A CT revealed circumferential large bowel mucosal thickening consistent with infectious or inflammatory colitis, likely ulcerative colitis. Nicholas was reported to having signed out against medical advice, apparently because he was unable to eat. There's no record of a mental health consult or contact with Nicholas's family.  Protocols for addressing his condition were ignored.

42.   Nicholas was readmitted to Tempe St. Luke's Hospital on December 11, 2014, and again on January 23, 2015. Nicholas was released against medical advice.

43.   At the time of his discharge back to the prison, Nicholas was described as extremely weak and cachectic, with increasing weight loss. He was refusing to eat. The attending physician from Tempe St. Luke's personally called and spoke with the medical director, now identified as Defendant Chris Johnson, D.O.

23.44.   Sometime during this period, someone labeled Nicholas as being on a "hunger strike." The label clearly infected the treatment he was given. Although the records show that he complained that he was unable to eat and that his medication was causing side effects, he was stigmatized and denied appropriate care apparently on someone's assumption that his conduct was willful. Again, the protocols for addressing these issues were disregarded.

24.   It wasn't until late January that mental health became involved and it wasn't until Nicholas was critically ill and unable to understand his condition that he saw a psychiatrist. Still the protocols were ignored.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

45.   Policy required that Nicholas Long be seen by a psychiatrist before initiation of the process of obtaining court ordered treatment. Plaintiffs are informed and believe that Defendant Corizon and/or Defendant Johnson refused a request by primary care physician Vukcevic for an urgent behavioral health consultation.

46.   At relevant times, Robert Anderson, D.O. worked for Defendant Corizon at ASPC-Florence as a psychiatrist. As a psychiatrist, Dr. Anderson's responsibility was primarily mental health and not providing medical care.

47.   On February 2, 2015, Dr. Anderson saw Nicholas Long emergently for a capacity evaluation at the prison. Dr. Anderson had not been informed of the critical nature of Nicholas Long's medical condition. Dr. Anderson was given virtually no information on Nicholas Long before being asked to see him.

48.   Dr. Anderson observed a "young man lying in bed . . . extremely lean, in a condition that visually for me said this man is in peril of perhaps perishing if medical services aren't provided very quickly." Nicholas Long was unable to communicate in any meaningful way.

49.   A capacity evaluation requires "that the individual [be] able to be verbal, responsive, clear, aware of their environment, responsive, nonpsychotic." Dr. Anderson saw "an individual who could provide nothing [to] do a competent capacity evaluation."

50.   From available laboratory reports, based on his experience in family practice, Dr. Anderson concluded that Nicholas Long was a risk of dying if he did not receive emergent medical care.

51.   Dr. Anderson assessed that Nicholas Long was suffering from delirium due to malnutrition and dehydration. Dr. Anderson was shocked and disturbed by Nicholas Long's condition.

52. From November 26, 2014 to February 2, 2015, Nicholas Long's medical and physical condition deteriorated as he became malnourished and cachectic. Although he reported that the medications he was being given were ineffective and, in fact, making him worse, providers failed to provide available alternative treatment.

25.53. Nicholas was ultimately admitted to Mountain Vista Medical Center after becoming unresponsive from starvation and dehydration. Abdominal surgery revealed severe adhesions and perforations. He had subtotal colectomy, placement of ileostomy, enterorrhaphy and lysis of adhesions.

26.54. Complications ultimately led to Nicholas's death on May 25, 2015.

## CLAIMS FOR RELIEF

### Count One

### NEGLIGENCE

### (Defendant State of Arizona)

27.55. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

28.56. The State of Arizona has a non-delegable duty of care, custody, and control of inmates within the state prison system. This non-delegable duty includes providing appropriate medical care for serious medical needs.

29.57. The State of Arizona also has a duty to ensure, through appropriate monitoring, that reasonable and necessary medical care is being provided by contracted and subcontracted medical providers duly licensed and acting within the scope of those licenses according to the community standard of care to inmates within the ADC and the Arizona state prison system is delivered.

30.58. The State of Arizona breached its duty to Plaintiffs' decedent by failing to provide appropriate medical care for his serious medical needs.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

31.59.    The State of Arizona further breached its duty to Plaintiffs' decedent by failing to adequately monitor the contracted medical services being provided to Plaintiffs' decedent and others.

32.60.    As a result of these breaches, Plaintiffs' decedent failed to receive competent medical care for his serious medical needs resulting in his death.

33.61.    By virtue of the non-delegable duty set forth above, Defendant State of Arizona is vicariously liable for the medical negligence of Defendant Corizon Health, Inc. as set forth in Count Two of Plaintiffs' Complaint.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**Count Two**

**NEGLIGENCE**
**(Defendant Corizon Health, Inc.)**

~~34.~~62.    Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

~~35.~~63.    Defendant Corizon has a duty to provide reasonable healthcare in accordance with the community standard of care by appropriately licensed medical personnel acting within the scope of their respective licenses.

~~36.~~64.    Defendant Corizon breached that duty by failing to provide necessary medical care to Plaintiffs' decedent within the community standard of care.

~~37.~~65.    Defendant Corizon and its employees and agents failed to properly recognize, assess, diagnose or treat Plaintiffs' decedent's serious medical condition resulting in his death.

~~38.~~66.    Defendant Corizon and its employees and agents failed to exercise that degree of care that a reasonable provider would exercise under the same or similar circumstances.

~~39.~~67.    Defendant Corizon created policies and procedures that resulted in its employees failing to practice within the scope of their respective licenses.

~~40.~~68.    Defendant Corizon's negligence includes:

    a.    Failing to properly assess Plaintiffs' decedent after he made his medical needs known;

    b.    Failing to establish proper policy, procedures, custom and practice for identifying inmates who require a higher level of care than can be provided at the prison complex;

    c.    Failing to provide appropriate personnel and to train that personnel in the recognition of conditions requiring a higher

1  level of medical care than can be provided at the prison

2  complex;

3  d.  Failing to properly assess Plaintiffs' decedent when his medical

4  condition had obviously deteriorated;

5  e.  Failing to investigate Plaintiffs' decedent's declining medical

6  condition and waiting until his condition was life-threatening

7  before taking action;

8  f.  Failing to ascertain the source of Plaintiffs' decedent's

9  complaints;

10  g.  Failing to act on objective signs of an increasingly serious

11  medical condition until it was too late for effective treatment.;

12  h.  Failing to provide adequate nutrition and hydration.

13  41.69.  Ordinary care required Defendant Corizon to refer Plaintiffs'

14  decedent to a qualified and properly equipped medical professional who could

15  conduct an adequate and proper medical examination, properly and

16  competently diagnose Mr. Long's medical condition, and provide for competent

17  and adequate treatment.

18  42.70.  As a result of the breach of Defendant Corizon's duties to

19  Plaintiffs' decedent as more fully set forth above, Defendant Corizon caused

20  Plaintiffs' decedent to be denied timely, appropriate and competent medical care

21  resulting in his death.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**Count Three**

**WRONGFUL DEATH**

**(All Defendants)**

71. - Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

43.72.  Pursuant to A.R.S. § 12-611, et seq., Plaintiffs hereby assert a claim for damages for the wrongful death of Nicholas Long based on the wrongful acts and negligent conduct set forth in Counts One and Two of this complaint.

44.73.  As a result of the wrongful acts of Defendants as set forth above, Plaintiffs suffered damages including loss of love, companionship, and support.

**Count Four**

**42 U.S.C. § 1983**

**(Federal Civil Rights – Defendant Corizon)**

74.  Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

75.  The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment.

76.  The Fourteenth Amendment protects familial and associational relationships from interference without due process of law.

77.  As set forth herein, Nicholas Long presented with a serious medical need. Specifically, he was suffering from chronic and acute malnutrition, chronic and acute mental illness, and chronic and acute ulcerative colitis.

78.  Defendant Corizon knew that Nicholas Long presented with a serious medical need and knew that failure to treat that serious medical need could result in further significant injury (including death) and unnecessary and wanton infliction of pain.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

79. Defendant Corizon knew that Nicholas Long likely required treatment with a biologic substance, which would be much more costly than the treatment provided by Defendant Corizon.

80. Defendant Corizon's response to Nicholas Long's serious medical need demonstrated deliberate indifference.

81. Defendant Corizon purposefully acted and/or failed to respond to Nicholas Long's medical need resulting in needless pre-death pain and suffering.

82. Upon information and belief, Defendant Corizon's decision not to follow ADC's policies, as it was required to do, was the product of a conscious choice motivated by financial considerations.

83. The nature and extent of Defendant Corizon's indifference to Nicholas Long's serious medical condition was revealed on September 6, 2017, when primary care provider Vukcevic, who characterized himself as a "whistle blower", testified that he attempted to, but "failed to let's say blow whistle enough or know enough to save [Nicholas Long's] life."

84. Dr. Vukcevic testified that specialist care / outside care was required including parenteral feeding, noting that correctional medicine cannot feed people intravenously.

85. Dr. Vukcevic testified that he attempted to initiate the process for court ordered treatment but was blocked by Defendant Corizon from doing so.

86. Dr. Anderson testified that staffing at ASPC-Florence made it "impossible" to deliver required psychiatric services. Resources for mental health were limited or not available to meet the mental health needs of patients such Nicholas Long.

87. The severity of Nicholas Long's medical and mental health conditions were documented in his medical record.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

88. As a direct result of the deliberate indifference of Defendant Corizon, Nicholas Long suffered further injury and suffering, and the unnecessary and wanton infliction of pain, including pre-death pain and suffering.

89. As a further direct result of the deliberate indifference of Defendant Corizon, Nicholas Long died.

90. As a further and direct result of the deliberate indifference of Defendant Corizon, Plaintiffs Cora Long and Kenneth Long experienced grief and suffering as set forth herein.

91. The conduct of Corizon as described herein was shocking and disturbing to its own providers.

## Count Five

## 42 U.S.C. § 1983

## (Federal Civil Rights – Defendants Johnson)

92. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

93. On or about November 24, 2014, Nicholas Long was transferred from ASPC-Yuma to ASPC-Florence Central Unit.

94. Defendant Johnson was the site medical director for ASPC-Florence Central Unit.

95. Defendant Johnson was responsible for clinical supervision of the medical providers at ASPC-Florence.

96. Defendant Johnson knew that Nicholas Long was transferred to ASPC-Florence Central Unit with a diagnosis of colitis and diarrhea with bleeding. Defendant Johnson further knew that Nicholas Long had lost substantial weight, including six pounds in the four days preceding his transfer.

97. Defendant Johnson knew that Nicholas Long was sent out to the hospital and returned to the prison against medical orders. Defendant Johnson

knew that Nicholas Long was refusing treatment and that his health was deteriorating. Defendant Johnson knew as early as January 6, 2015, that Dr. Vukcevic was specifically concerned that Nicholas Long needed a psychiatric evaluation.

98. Defendant Johnson further knew that Nicholas Long's medical condition had so deteriorated that he required court ordered treatment.

99. The severity of Nicholas Long's medical and mental health conditions were documented in his medical record.

100. As a direct result of the deliberate indifference of Defendant Johnson, Nicholas Long suffered further injury and suffering, and the unnecessary and wanton infliction of pain, including pre-death pain and suffering.

101. As a further direct result of the deliberate indifference of Defendant Johnson, Nicholas Long died.

102. As a further and direct result of the deliberate indifference of Defendant Johnson, Plaintiffs Cora Long and Kenneth Long experienced grief and suffering as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For special damages;

B.    For lost wages, income, and other economic losses;

C.    For general damages for the predeath pain and suffering experienced by Nicholas Long;

D.    For other general damages, including but not limited to pain and suffering, loss of enjoyment of life and other emotional trauma;

~~D~~E.    For exemplary damages to the extent permitted by law;

~~E~~F.    For taxable costs and pre- and post-judgment interest to the extent

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

permitted by law;

~~F~~G. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: February 21, 2018

**ROBBINS & CURTIN, p.l.l.c.**


By: ⸺/s/Anne E. Findling

Joel B. Robbins
Anne E. Findling
*Attorneys for Plaintiffs*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on February 21, 2018, I electronically transmitted

3 the attached document to the Clerk's Office using the Maricopa County Clerk of

4 Superior Court's Online eFiling System for filing and automatic transmittal of

5 the eFiled document to the assigned judge, the Honorable Rosa Mroz, and that

6 a copy of the foregoing has been served by e-service on counsel for all parties, as

7 designated below:

8                         Anthony J. Fernandez
                          Vincent J. Montell
9        QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
10            2390 E. Camelback Road, Suite 440
                  Phoenix, Arizona 85016
11               E: afernandez@qpwblaw.com
12                E: vmontell@qpwblaw.com
                E: rebecca.stanton@qpwblaw.com
13       *Attorneys for Defendants, State of Arizona & Corizon*

14
                          Krista Carman
15                   CARMAN LAW FIRM
16                   246 S. Cortez Street
                    Prescott, AZ 86303
17               E: kcarman@carmanlf.com
18                *Co-Counsel for Plaintiffs*

19

20 By:    /s/Kimberly M. Gonzalez
             Kimberly M. Gonzalez
21

22

23

24

25

26

27

28

**EXHIBIT 3**



Official reprint from UpToDate®
www.uptodate.com ©2018 UpToDate, Inc. and/or its affiliates. All Rights Reserved.



The content on the UpToDate website is not intended nor recommended as a substitute for medical advice, diagnosis, or treatment. Always seek the advice of your own physician or other qualified health care professional regarding any medical questions or conditions. The use of UpToDate content is governed by the UpToDate Terms of Use. ©2018 UpToDate, Inc. All rights reserved.

Patient education: Ulcerative colitis (Beyond the Basics)

Authors: Mark A Peppercorn, MD, Sunanda V Kane, MD, MSPH
Section Editor: J Thomas Lamont, MD
Deputy Editor: Kristen M Robson, MD, MBA, FACG

All topics are updated as new evidence becomes available and our peer review process is complete.
Literature review current through: Jan 2018. | This topic last updated: Aug 10, 2016.

ULCERATIVE COLITIS OVERVIEW

Ulcerative colitis (UC) is a disease in which the lining of the colon (the large intestine) becomes inflamed and develops sores (ulcers), leading to bleeding and diarrhea. The inflammation almost always affects the rectum and lower part of the colon, but it can affect the entire colon (figure 1).

Although ulcerative colitis cannot be cured, it can usually be controlled. Most people with ulcerative colitis are able to live active and productive lives. Controlling the disease usually means taking medications and seeing a healthcare provider on a regular basis.

This article discusses the causes, symptoms, and treatment of ulcerative colitis. More detailed information about ulcerative colitis is available by subscription. (See "Clinical manifestations, diagnosis, and prognosis of ulcerative colitis in adults" and "Management of severe ulcerative colitis in adults".)

ULCERATIVE COLITIS CAUSES

Ulcerative colitis is part of a group of conditions called inflammatory bowel diseases (IBD). Crohn disease is another inflammatory bowel disease, although it can affect the entire digestive tract (mouth to anus) (figure 2). Inflammatory bowel disease is NOT the same as irritable bowel syndrome (IBS). (See "Patient education: Crohn disease (Beyond the Basics)" and "Patient education: Irritable bowel syndrome (Beyond the Basics)".)

The cause of ulcerative colitis is not known. People who develop ulcerative colitis are thought to have an increased risk of the condition, which is passed down from family members. When a person with this inherited risk is exposed to a trigger (an illness or something in the environment), the immune system is activated. The immune system recognizes the lining of the colon as foreign and attacks it, leading to inflammation. This inflammation causes the lining of the colon to develop ulcers and bleed.

Genetics — Ulcerative colitis tends to run in families, suggesting that genetics have a role in this disease. About 10 to 25 percent of people with ulcerative colitis have a first-degree relative (either a sibling or parent) with inflammatory bowel disease (either ulcerative colitis or Crohn disease).

Environment — Several environmental factors, such as infections, are thought to trigger ulcerative colitis in people who have a genetic susceptibility. In addition, ulcerative colitis can present after smoking cessation. However, no single factor has been proven to be the trigger.

ULCERATIVE COLITIS SYMPTOMS

The symptoms of ulcerative colitis can be mild, moderate, or severe, and can fluctuate over time.

Bowel symptoms — The most common symptoms of mild ulcerative colitis include:

- Intermittent rectal bleeding

- Mucus discharge from the rectum

- Mild diarrhea (defined as fewer than four stools per day)

- Mild, crampy abdominal pain

- Straining with bowel movements

- Bouts of constipation

In people with moderate to severe disease, the following symptoms can develop:

- Frequent, loose bloody stools (up to 10 or more per day)

- Low blood count (anemia)

- Abdominal pain, which can be severe

- Fever

- Weight loss

Non-bowel symptoms — For poorly understood reasons, people with ulcerative colitis can develop inflammation outside of the colon. Inflammation often affects large joints (hips, knees), causing swelling and pain, as well as the eyes, the skin, and, less commonly, the lungs.

These symptoms usually occur when ulcerative colitis symptoms are active (during a flare). However, inflammation can develop even when symptoms are quiet (in remission).

ULCERATIVE COLITIS DIAGNOSIS

Ulcerative colitis is usually diagnosed based upon your symptoms, a physical examination, and laboratory tests. (See "Clinical manifestations, diagnosis, and prognosis of ulcerative colitis in adults".)

You will likely need a procedure that allows your doctor to look inside your colon, such as sigmoidoscopy or colonoscopy. These tests allow your doctor to take tissue samples from the colon, which can confirm ulcerative colitis and rule out other conditions that have similar symptoms, including Crohn disease, diverticulitis, and certain infections. (See "Patient education: Colonoscopy (Beyond the Basics)" and "Patient education: Flexible sigmoidoscopy (Beyond the Basics)".)

ULCERATIVE COLITIS TREATMENT

The two main goals of treatment for ulcerative colitis are to:

- End symptoms (achieve remission)

- Prevent symptoms from coming back (maintain remission)

For most people, ulcerative colitis has a frustrating pattern of flares and remissions. However, about 15 percent of people who have an initial attack will remain in remission without medications, possibly for the rest of their life. (See "Management of severe ulcerative colitis in adults".)

Diet and ulcerative colitis — A well-balanced, nutritious diet can help maintain health and a normal body weight. However, many people can identify foods that worsen symptoms, and it is reasonable to avoid these foods. Table 1 lists foods and beverages that worsen symptoms in some people (table 1). If you restrict your diet for any reason, you should take a daily multivitamin. A folic acid supplement is also recommended.

Pain medications that contain nonsteroidal antiinflammatory drugs (NSAIDS), such as ibuprofen (Advil, Motrin) and naproxen (Aleve), are not usually recommended if you have ulcerative colitis. These medications can worsen symptoms. Acetaminophen (Tylenol) should not cause a problem.

Lactose intolerance — Lactose intolerance can occur in people with ulcerative colitis. It occurs if you are not able to digest the sugar (lactose) contained in milk products. Symptoms of lactose intolerance may include diarrhea, cramps, or gas. The symptoms of lactose intolerance can be minimized by avoiding dairy products (table 2).

Treatments for mild symptoms — If your symptoms include rectal pain, rectal bleeding, and mild diarrhea, your treatment will include medications that you apply to the rectum. This may include an enema, suppository, or foam. Rectal medications include 5-ASA (aminosalicylic acid) or glucocorticoids (also called steroids), which work by reducing inflammation in the rectum and colon. (See "Patient education: Sulfasalazine and the 5-aminosalicylates (Beyond the Basics)".)

Oral medications may be recommended if your symptoms do not improve completely with the rectal treatments. (See "Sulfasalazine and 5-aminosalicylates in the treatment of inflammatory bowel disease".)

These treatments improve symptoms in most people after about three weeks. Up to 90 percent of people will have a remission with this treatment, and up to 70 percent of people will stay in remission. Continuous, lifelong treatment with a 5-ASA medication is usually recommended to maintain remission, although it is often possible to taper the dose of medication.

Treatment for moderate to severe symptoms — If your symptoms are moderate to severe, or a larger area of your colon is affected, you will probably be given an oral 5-ASA medication. This is sometimes given along with a rectal treatment.

If your symptoms are severe, you may need a glucocorticoid (also called steroid) for a short period of time. Glucocorticoids can be given rectally, in a foam or suppository, or as a pill. The pill is generally preferred for treating severe symptoms. When your symptoms quiet, you will probably stop the oral steroid pill, but you will continue to take one of the oral 5-ASA drugs. (See "Patient education: Sulfasalazine and the 5-aminosalicylates (Beyond the Basics)".)

When taken by mouth, steroids are very effective but may cause a number of bothersome side effects. The most common side effects include an increased appetite, weight gain, acne, fluid retention, trembling, mood swings, and difficulty sleeping. Because of the risk of these and other side effects, most people are tapered off of steroids as soon as possible.

If symptoms do not improve — Some people do not respond, or respond incompletely, to the treatments described above. These people are said to have refractory ulcerative colitis. This includes people who depend

upon steroids to control their symptoms. (See "Approach to adults with steroid-refractory and steroid-dependent ulcerative colitis".)

   Medications — People with refractory ulcerative colitis are usually treated first with medications that suppress the immune system. The most commonly used drugs are 6-mercaptopurine and azathioprine. (See "Azathioprine and 6-mercaptopurine in inflammatory bowel disease".)

● 6-mercaptopurine and azathioprine – Azathioprine and 6-mercaptopurine lessen symptoms in 60 to 70 percent of people and help to maintain remission and decrease the need for steroids. It may take three to six months to see the greatest benefit.

   If treatment with 6-mercaptopurine and azathioprine is not effective, you may be given a choice between trying another medication, such as cyclosporine or infliximab, and having surgery to remove your colon. (See 'Ulcerative colitis surgery' below.)

● Cyclosporine – Cyclosporine is a powerful drug that was designed to prevent rejection after organ transplantation. It can be a very effective treatment to induce remission in people with refractory ulcerative colitis, although it cannot be used long-term (to maintain remission) due to potentially toxic side effects. Once symptoms are under control, other treatments can be slowly substituted.

● Infliximab, adalimumab, golimumab, and vedolizumab – Infliximab (Remicade) and adalimumab (Humira) are powerful medications that have been used to treat Crohn disease and rheumatoid arthritis, and are sometimes used to treat refractory ulcerative colitis. They can be used to induce remission and, long-term, to maintain remission.

   Infliximab, adalimumab, golimumab, and vedolizumab work differently than other treatments for UC. They are in a class of medications known as biologic response modifiers, which work by interfering with pathways involved in inflammation.

   Infliximab, adalimumab, golimumab, and vedolizumab may be used alone or in combination with other treatments. Because of the cost and the potential risk of side effects, biologic response agents are generally reserved for people with severe ulcerative colitis who have not responded to steroids, who prefer to avoid surgical removal of the colon, and who cannot take cyclosporine.

ULCERATIVE COLITIS SURGERY

People who cannot tolerate the constant battle with their disease sometimes choose to have their colon surgically removed. There are several surgical procedures that may be recommended to treat ulcerative colitis. It is important to discuss all of the benefits and risks of surgery with a doctor, and also to have realistic expectations of the results. (See "Surgical management of ulcerative colitis".)

The procedures can be divided into two groups:

● Those that preserve your ability to control bowel movements

● Those that require you to wear a bag to collect bowel movements

Removal of colon with permanent ileostomy — During this procedure, the surgeon removes your colon, rectum, and anus; this is called proctocolectomy. The surgeon then attaches the ileum, or lower end of the small intestine, to an opening (ostomy) on the lower right side of the abdomen near the waistline. Bodily waste now exits your body through the ostomy, rather than through your anus. You will wear a plastic bag on the outside of the ostomy to catch the bowel movements, and you will empty the bag as needed.

One variation of this surgery involves creating a sac or pouch inside the lower abdomen to collect stool. Waste empties into this internal pouch. A small, leakproof opening is created in your abdomen so that you can insert a tube to drain the pouch.

Removal of colon and reattachment of anus/rectum — This procedure is one of the most common surgeries used to treat ulcerative colitis. During the procedure, the surgeon removes the large bowel and all or most of the rectum, but saves the anal sphincter or lower part of the rectum. The surgeon then creates a tubular pouch out of the end of the small intestine and sews it to the anal canal.

This surgery allows you to have bowel movements through the anus, and you will not need a permanent ileostomy. However, in most cases, you will require a temporary ileostomy while the new rectum heals. When the new rectum is healed, the bowel is connected to the anal sphincter.

There is a risk of fecal leakage after this procedure, particularly at night. There is also a risk of recurrent ulcerative colitis in the end portion of the rectum.

COLORECTAL CANCER AND ULCERATIVE COLITIS

People with ulcerative colitis have an increased risk of colorectal cancer. Your risk of colorectal cancer is related to the length of time since you were diagnosed and how much of your colon is affected. In general, people who have had the disease for a longer time and those with larger areas of disease have a greater risk than those with a more recent diagnosis or smaller areas of disease.

Colorectal cancer usually develops from precancerous changes in the colon, which grow slowly and can be detected with a screening test, such as colonoscopy. (See "Patient education: Colon and rectal cancer screening (Beyond the Basics)".)

In general, colonoscopy is recommended 8 to 12 years after your symptoms appear. If this colonoscopy is normal, it is usually repeated once per year. (See "Surveillance and management of dysplasia in patients with inflammatory bowel disease".)

PREGNANCY AND ULCERATIVE COLITIS

A separate article discusses pregnancy and UC. (See "Patient education: Inflammatory bowel disease and pregnancy (Beyond the Basics)".)

WHERE TO GET MORE INFORMATION

Your healthcare provider is the best source of information for questions and concerns related to your medical problem.

This article will be updated as needed on our web site (www.uptodate.com/patients). Related topics for patients, as well as selected articles written for healthcare professionals, are also available. Some of the most relevant are listed below

Patient level information — UpToDate offers two types of patient education materials.

   The Basics — The Basics patient education pieces answer the four or five key questions a patient might have about a given condition. These articles are best for patients who want a general overview and who prefer short, easy-to-read materials.

Patient education: Ulcerative colitis in adults (The Basics)
Patient education: Colon and rectal cancer screening (The Basics)
Patient education: Colostomy care (The Basics)

Patient education: Colectomy (The Basics)
Patient education: Pyoderma gangrenosum (The Basics)
Patient education: Erythema nodosum (The Basics)
Patient education: Ileostomy care (The Basics)
Patient education: Ulcerative colitis in children (The Basics)

Beyond the Basics — Beyond the Basics patient education pieces are longer, more sophisticated, and more detailed. These articles are best for patients who want in-depth information and are comfortable with some medical jargon.

Patient education: Crohn disease (Beyond the Basics)
Patient education: Irritable bowel syndrome (Beyond the Basics)
Patient education: Colonoscopy (Beyond the Basics)
Patient education: Flexible sigmoidoscopy (Beyond the Basics)
Patient education: Sulfasalazine and the 5-aminosalicylates (Beyond the Basics)
Patient education: Colon and rectal cancer screening (Beyond the Basics)
Patient education: Inflammatory bowel disease and pregnancy (Beyond the Basics)

Professional level information — Professional level articles are designed to keep doctors and other health professionals up-to-date on the latest medical findings. These articles are thorough, long, and complex, and they contain multiple references to the research on which they are based. Professional level articles are best for people who are comfortable with a lot of medical terminology and who want to read the same materials their doctors are reading.

Anti-tumor necrosis factor therapy in ulcerative colitis
Antibiotics for treatment of inflammatory bowel diseases
Clinical manifestations and diagnosis of arthritis associated with inflammatory bowel disease and other gastrointestinal diseases
Azathioprine and 6-mercaptopurine in inflammatory bowel disease
Clinical manifestations, diagnosis, and prognosis of ulcerative colitis in adults
Primary sclerosing cholangitis: Inflammatory bowel disease and colorectal cancer
Surveillance and management of dysplasia in patients with inflammatory bowel disease
Definition, epidemiology, and risk factors in inflammatory bowel disease
Endoscopic diagnosis of inflammatory bowel disease
Fertility, pregnancy, and nursing in inflammatory bowel disease
Genetic factors in inflammatory bowel disease
Hepatobiliary manifestations of inflammatory bowel disease
Management of mild to moderate ulcerative colitis in adults
Management of severe ulcerative colitis in adults
Sulfasalazine and 5-aminosalicylates in the treatment of inflammatory bowel disease
Surgical management of ulcerative colitis
Toxic megacolon
Management of mild to moderate ulcerative colitis in children and adolescents
Management of severe or refractory ulcerative colitis in children and adolescents
Approach to adults with steroid-refractory and steroid-dependent ulcerative colitis

The following organizations also provide reliable health information:

- National Library of Medicine

    (www.nlm.nih.gov/medlineplus/healthtopics.html)

- National Institute of Diabetes and Digestive and Kidney Diseases

  ([www.niddk.nih.gov/](www.niddk.nih.gov/))

- The American Society of Colon and Rectal Surgeons

  ([www.fascrs.org](www.fascrs.org))

- The American Gastroenterological Association

  ([www.gastro.org](www.gastro.org))

- The Crohn's and Colitis Foundation of America

  ([www.ccfa.org](www.ccfa.org))

[1-4]

## REFERENCES

1. Kornbluth A, Sachar DB. Ulcerative colitis practice guidelines in adults. American College of Gastroenterology, Practice Parameters Committee. Am J Gastroenterol 1997; 92:204.

2. Connell WR, Kamm MA, Dickson M, et al. Long-term neoplasia risk after azathioprine treatment in inflammatory bowel disease. Lancet 1994; 343:1249.

3. Schroeder KW, Tremaine WJ, Ilstrup DM. Coated oral 5-aminosalicylic acid therapy for mildly to moderately active ulcerative colitis. A randomized study. N Engl J Med 1987; 317:1625.

4. Cohen RD, Woseth DM, Thisted RA, Hanauer SB. A meta-analysis and overview of the literature on treatment options for left-sided ulcerative colitis and ulcerative proctitis. Am J Gastroenterol 2000; 95:1263.

Topic 1991 Version 18.0

# GRAPHICS

## Diagram of the colon and rectum



This figure shows the different parts of the colon (also known as the large intestine), the rectum, and the anus.

Graphic 58531 Version 7.0

## Digestive system



This drawing shows the organs in the body that process food. Together these organs are called "the digestive system," or "digestive tract." As food travels through this system, the body absorbs nutrients and water.

Graphic 66110 Version 4.0

# Foods and beverages that may worsen gastrointestinal symptoms

| |
|---|
| Milk, milk-containing products, and lactose-free milk products, including ice cream, cream cheese, cheese, cottage cheese, yogurt, pudding, whipped cream, cream, cheesecake, chocolate, pastries, crackers, pretzels, cookies, crackers, cakes, and pies |
| Caffeine-containing products, including coffee, tea, and sodas |
| Alcohol products |
| Fruits and fruit juices |
| Spices, seasonings, and spicy marinades |
| Diet beverages, diet foods, diet candies, diet gum, sugar-free products |
| Fried foods, fatty foods, and fast foods |
| Condiments including ketchup, mustard, mayonnaise, and relish |
| Whole-grain or multigrain breads: sourdough breads, bagels, and yeast-containing products |
| Salads, particularly added components including bacon bits, croutons, onions, and peppers |
| Salad dressings that contain mayonnaise, cheese, and spices |
| Vegetables including cabbage, broccoli, and cauliflower |
| Legumes: beans, lentils, chili |
| Red meats including steak, hamburger, sausage, bacon, and prime rib |
| Gravies, spaghetti sauce, soups, stews, and stuffing |
| Popcorn, peanuts, corn |
| Artificial colorings, flavorings, and sweeteners |
| Foods and beverages containing sorbitol, fructose, or high-fructose corn syrup |

The foods and drinks listed above may worsen gastrointestinal symptoms (diarrhea, cramps, abdominal pain, nausea, gas, bloating, heartburn, etc.) in some patients with both irritable bowel syndrome and inflammatory bowel disease. These symptoms can begin as soon as 5 to 15 minutes after eating or as many as 12 to 48 hours later.

*Data from: MacDermott, RP. Treatment of irritable bowel syndrome in outpatients with inflammatory bowel disease using a food and beverage intolerance, food and beverage avoidance diet. Inflamm Bowel Dis 2007; 13:91.*

Graphic 79547 Version 2.0

## Lactose content of different foods

| Product | Lactose content (grams) |
| --- | --- |
| Milk (1 cup) | |
|     Whole, 2 percent, 1 percent, skim | 9 to 14 |
|     Buttermilk | 9 to 12 |
|     Evaporated milk | 24 to 28 |
|     Sweetened condensed milk | 31 to 50 |
|     Lactaid milk (lactose-reduced) | 3 |
|     Goat's milk | 11 to 12 |
|     Acidophilus, skim | 11 |
| Yogurt, low fat, 1 cup | 4 to 17 |
| Cheese, 1 ounce | |
|     Cottage cheese (1/2 cup) | 0.7 to 4 |
|     Cheddar (sharp) | 0.4 to 0.6 |
|     Mozzarella (part skim, low moisture) | 0.08 to 0.9 |
|     American (pasteurized, processed) | 0.5 to 4 |
|     Ricotta (1/2 cup) | 0.3 to 6 |
|     Cream cheese | 0.1 to 0.8 |
| Butter (1 pat) | 0.04 to 0.5 |
| Cream (1 tablespoon) | |
|     Light, whipping, sour | 0.4 to 0.6 |
| Ice cream (1/2 cup) | 2 to 6 |
| Ice milk (1/2 cup) | 5 |
| Sherbet (1/2 cup) | 0.6 to 2 |

*Adapted from: Scrimshaw NS, Murray EB. The acceptability of milk and milk products in populations with a high prevalence of lactose intolerance. Am J Clin Nutr 1988; 48:1079. Copyright © 1988 American Society for Clinical Nutrition.*

Graphic 55938 Version 5.0

## Contributor Disclosures

 Mark A Peppercorn, MD Nothing to disclose Sunanda V Kane, MD, MSPH Grant/Research/Clinical Trial Support: UCB [IBD (Certolizumab)]. Consultant/Advisory Boards: AbbVie [IBD (Adalimumab)]; 11Health [IBD (Ostomy pouch sensor)]; Janssen [IBD (infliximab, golimumab, ustekinumab)]; Merck [IBD (infliximab biosimilar)]; Spherix Health [IBD (population health)]. Other Financial Interest: ABIM [Gastroenterology]. J Thomas Lamont, MD Nothing to disclose Kristen M Robson, MD, MBA, FACG Nothing to disclose

Contributor disclosures are reviewed for conflicts of interest by the editorial group. When found, these are addressed by vetting through a multi-level review process, and through requirements for references to be provided to support the content. Appropriately referenced content is required of all authors and must conform to UpToDate standards of evidence.

Conflict of interest policy

**EXHIBIT 4**

(Emergency)

Date:
Time:
Initials:

Inmate Name/Nombre *(Last, First M.I.) (Apellido, Nombre, Inicial)*
long, nicholas C

ADC Number/Número de ADC
289178

Date/Fecha
10 - 7-14

Cell/Bed Number/Celda/Número de Cama
6 - E - 7L

Unit/Unidad
la paz

P.O. Box/Apartado Postal
8819

Institution/Facility/Instalación: ASPC
Yuma

You are required to be truthful. Failure to be cooperative and any abuse of the health care system or its staff could cause a delay in delivery of care to you and others, and may result in disciplinary action (Use this form to describe only one problem or issue at one time). [Se le exige diga la verdad. La falta de cooperación y cualquier abuso del sistema del cuidado de la salud o del personal podría retrasar la asistencia de este cuidado para usted y para otros y puede dar lugar a una acción disciplinaria *(Use este formulario para describir un problema a la vez)*]

AREA OF INTEREST*(Check only one block below)*/AREA DE INTERES *(MARQUE UN ESPACIO SOLAMENTE)* ☒ Medical/Médica    Dental    FHA
Pharmacy/Farmacia    Mental Health/Salud Mental    Eyes/Ojos    Other *(specify)*/Otros *(especifique)*
PLEASE PRINT! Describe your medical/dental treatment issue need in the space below. Be clear and specific. NO ADDED PAGES. [¡POR FAVOR, ESCRIBA EN IMPRENTA! Describa su tratamiento o necesidad médica/dental en el espacio de abajo. Describa claramente y sea específico. ¡NO USE MAS HOJAS!]

My Stmoch is Cramping really bad
and I have diaerre and it is hard
to Sleep at Night Please make
The pain in my Stmoch go away
ASAP

Thank you

I understand that, per ARS 31-201.01, I will be charged a $4.00 Health Service fee *(excluding exemptions granted by statute)* for the visit that I am herein requesting. I further understand that by paying this fee I do not have the right to dictate treatment or who provides treatment. [Entiendo que de acuerdo con ARS 31-201.01 se me cobrará una cuota por el servicio médico de $4.00 por la cita que aquí estoy pidiendo *(excluyendo las excepciones otorgadas por la ley)*. Además entiendo que al pagar esta cuota no tengo el derecho a imponer el tratamiento o quien lo proporcione.]

Inmate's Signature/Firma del prisionero    *Nicholas*

REMOVE THE GOLDENROD COPY AND PLACE THE REMAINDER IN THE HEALTH NEEDS REQUEST DROP BOX[SEPARE LA COPIA DE COLOR AMARILLO OBSCURO Y DEJE LAS DEMAS EN EL BUZON PETICION DE NECESIDADES MÉDICAS]

REFERRAL BY MEDICAL STAFF/REFERENCIA MEDICA    Medical/Médica    Dental    Pharmacy/Farmacia    FHA
Mental Health/Salud Mental    Eyes/Ojos    Other/Otros *(specify)* *(especifique)*
Comments/Comentarios

Musclene

Staff Signature Stamp/Firma del empleado    Date/Fecha    Time/Hora
12  8 / 4     150

PLAN OF ACTION/PLAN DE ACCION
Seen on NL

Staff Signature Stamp/Firma del empleado    Date/Fecha    Time/Hora
10 -12 -14     1145

Distribution: White/Blanca - Health Unit/Unidad de Salud, Canary, Pink & Goldenrod - Inmate/Amarillo Canario, Rosa y Amarillo Obscur - Prisonero

This document is a translation from original text written in English. This translation is unofficial and is not binding on this state or a political subdivision of this state. [Este documento es una traducción de texto original escrito en inglés. Esta traducción no es oficial y no compromete a éste estado ni una subdivisión política de este estado.]

1101-10ES

ADOC-Long-02204

**EXHIBIT 5**

# Michael K. Champion, M.D.
*Board Certified, General and Forensic Psychiatry*

January 31, 2018

Anne E. Findling
Robbins & Curtin, p.l.l.c.
301 E. Bethany Home Rd., Suite B100
Phoenix AZ 85012

**Re: Incarceration and Death of Nicholas Long**

Dear Attorney Findling,

I am a Medical Doctor, Board Certified in the practice of both Clinical and Forensic Psychiatry. I have substantial experience working in correctional healthcare including providing direct patient care and serving as an administrator at a statewide and national level. I am familiar with the development and implementation of health and mental health care policies and procedures in the correctional context. I am a Certified Correctional Health Professional, certified by the National Commission on Correctional Healthcare.

At your request, I have reviewed information pertaining to the incarceration and death of Nicholas Long. Specifically, you requested that I review medical and facility records along with relevant policies and procedures in effect at the time of his incarceration in order to form an opinion regarding the following issues:

1. Did Nicholas Long's care and treatment in the Arizona Department of Corrections warrant a multidisciplinary approach?
2. Was there a failure to follow established policies and procedures in delivering Nicholas Long's care and treatment?

Mr. Long was arrested and incarcerated in the Arizona Department of Corrections (ADC) from March 12, 2014 until the time of his death on May 25, 2015. The Maricopa County Office of the Medical Examiner found that Mr. Long died as a result of complications of ulcerative colitis. At the time of his incarceration and death, Corizon provided medical, mental health and psychiatric services within the Arizona Department of Corrections including the Arizona State Prison Complex (ASPC)- Florence.

## Summary Opinion

1. Nicholas Long's care and treatment in the Arizona Department of Corrections did warrant a multidisciplinary approach.
2. There was a failure to follow established policies and procedures in delivering Nicholas Long's care and treatment.

**Sources of Information**

In the preparation of this preliminary report, I reviewed the following sources of information.

1. **Medical Records**
   a. Arizona Department of Corrections
   b. Tempe St. Luke's Hospital
2. **Policies**
   a. **ADC**
      i. Health Services Manual
         1. HSTM Chapter 7, Section 1.6.1: Hunger Strike Clinical Support
         2. HSTM Chapter 7, Section 1.8: Clinical Staffing of Special Problems
      ii. Mental Health Services Technical Manual
      iii. Department Orders
         1. Department Order 807.02: Inmate Suicide Prevention, Precautionary Watches, and Maximum Behavioral Control Restraints- Screening, Assessment, and Classification
         2. Department Order 807.05: Inmate Suicide Prevention, Precautionary Watches, and Maximum Behavioral Control Restraints - Levels of Observation
         3. Department Order 1101.12: Inmate Access to Health Care- Refusal of Treatment
         4. Department Order 1101.13: Inmate Access to Health Care- Inmate Hunger Strikes

   b. **Corizon**
      i. General Health Services Policy and Procedure P-F-02.01: Hunger Strike
      ii. General Health Services Policy and Procedure J-A-01.00: Access to Care
      iii. General Health Services Policy and Procedure J-I-05.00: Informed Consent and the Right to Refuse Treatment

3. **Medical Examiner Reports and Related Documents**
   a. Medical Examiner Report by Christopher Poulos, MD dated 9-16-15
   b. Report of Examination by Rebecca Hsu, MD 11-30-15

4. **Depositions**
   a. Dr. Vukcivec dated 9-6-17
   b. Dr. Johnson dated 12-20-17
   c. Dr. Riaz dated 12-15-17
   d. Dr. Anderson dated 9-8-17

5. Declaration Under Oath of John Osteen, MD dated 6-26-17

**Brief Summary of Incarceration in the Arizona Department of Corrections**

During his incarceration in ADC, Mr. Long received medical services related to treatment of ulcerative colitis. A history of bipolar disorder was noted on initial intake screening. He was prescribed psychiatric medications for complaints of poor sleep. In April 2014, a psychiatrist prescribed Remeron as a medication for poor sleep for a six-month period.

In November of 2014, Mr. Long was hospitalized for five days at Tempe St. Luke's Hospital in the community, diagnosed with ulcerative colitis (UC), and noted to have experienced a sixty-pound weight loss in six months. He was offered total parenteral nutrition (TPN) but refused treatment and signed out of the hospital against medical advice (AMA). He was hospitalized at Tempe St. Luke's Hospital for a second time in December 2014 for four days. He was offered treatment for UC with steroids and mesalamine but refused and signed out of the hospital against medical advice (AMA). When Mr. Long returned to the Florence facility, he intermittently refused offers to treat him with anti-inflammatory medication. In early January 2015, a nurse documented a conversation in which Mr. Long explained he did not want to receive tube feeding even if it led to his death. He explained that his grandfather had died related to having a feeding tube, which led him to be concerned about receiving this intervention. He was noted to be refusing treatment for UC and eating less. On January 19, 2015, a nurse documented her impression that he was "faking weakness" and was demonstrating "attention seeking behavior."

He was hospitalized at Tempe St. Luke's Hospital for the third time on January 23, 2015 for two days. During the hospitalization, Dr. Vasiq noted that Mr. Long had "extreme cachexia with severe protein-calorie malnutrition." Mr. Long was offered treatment including, intravenous antibiotics and steroids, a peripherally inserted central catheter (PICC line) placement, and TPN. Mr. Long refused treatment and requested to leave the hospital. In his discharge summary, Dr. Vasiq indicated that he contacted the "prison medical director" (not named) to inquire if ADC had obtained a court order to hold him in the hospital and administer feeding. Dr. Vasiq was informed that a court order had not been obtained. Mr. Long signed out of the hospital against medical advice.

Upon returning to the Florence facility, Mr. Long was immediately placed on a continuous suicide watch due to "self-harming behavior". Over the next nine days the watch was changed to an every ten minute suicide watch and then an every thirty minute mental health watch. During this period, mental health staff documented that patient education was provided and included the "hunger strike protocol explained" and later described him as being seen due to being on a "CSW/Hunger Strike watch in the health unit." On January 27, 2015, he was seen briefly by Dr. Riaz, an out of state psychiatrist, via tele-video and prescribed Remeron for a complaint of poor sleep. On January 30, 2015, a nurse conducting infirmary rounds documented that Mr. Long "displays a negative attitude" and was "showing signs of failure to thrive."

On February 2, 2015, Dr. Anderson, from the ASPC-Florence facility psychiatry staff, attempted to perform a decision-making capacity assessment but found him "semi-conscious" and unable to participate in an evaluation. Dr. Anderson's impression was that Mr. Long was suffering from delirium due to malnutrition and dehydration. Mr. Long was sent to the Florence Hospital where he was intubated and treated in the intensive care unit.

He did not return to an ADC facility and was treated in a number of community medical facilities until the time of his death on 5-25-15.

### Relevant Policies (excerpts)

#### Arizona Department of Corrections

### HSTM Chapter 7, Section 1.6.1: Hunger Strike Clinical Support
- A hunger strike exists when an inmate communicates to staff that he or she is on a hunger strike, and/or has been observed by staff to be refraining from caloric intake for a period in excess of 72 hours.
- A "Clinical Staffing" should be convened to assist in ascertaining the alleged purpose of the hunger strike.
- When, after reasonable efforts have been exhausted (or in an emergency preventing such reasonable efforts) a medical necessity for immediate treatment of a life-threatening situation exists, the health care professional may inform the Facility Health Administrator (FHA) that a court order compelling treatment should be sought.
- Forced medical treatment requires an order from a Court.

### HSTM Chapter 7, Section 1.8: Clinical Staffing of Special Problems
- Purpose: To provide a mechanism and forum to ensure a cooperative effort between the facilities administration and treating clinicians in responding to a specific inmate's health needs especially in situations of treatment refusals.
- Responsibility: It is the responsibility of the health services providers to work with the operations and security staff to jointly ensure that every possible avenue is explored to encourage cooperation by inmates in completion of their own care. This policy is provided to enable communication to and with the inmate-patient.
- The provider must have an ability to access other professional comments and recommendations regarding the inmate's care. To access this support, the provider of record may request a Clinical Staffing by a written request to the FHA.
- Membership: the medical provider of record, FHA, Correctional Registered Nurse Supervisor II, Psychologist or Psych. Associate II (if appropriate the psychiatrist will participate), Unit Deputy Warden, and others as deemed appropriate.
- The inmate participates in the meeting and asked to provide their concerns.
- The inmate shall be called back, and the consensus statement arrived at for resolution of any issues and/or improved treatment(s) will be provided to the inmate. A statement of understanding or misunderstanding (refusal) shall be included in the minutes of meeting as well as a S.O.A.P. entry.

### Department Order 807.02: Inmate Suicide Prevention, Precautionary Watches, and Maximum Behavioral Control Restraints - Screening, Assessment, and Classification
- Outlines screening procedures and placement on a watch.

**Department Order 807.05: Inmate Suicide Prevention, Precautionary Watches, and Maximum Behavioral Control Restraints - Levels of Observation**
- Outlines levels of observation on watches.

**Department Order 1101.12: Inmate Access to Health Care - Refusal of Treatment**
- Warden, Deputy Warden or Administrator is notified when an inmate has refused medical treatment for a condition which is not life threatening.
- When an inmate with a medical condition that is life-threatening refuses medical treatment
    - Explain the consequences of not receiving treatment.
        - If inmate is mentally incompetent, health staff shall request inmate be admitted to a tertiary provider or transferred to ASPC Phoenix, Alhambra B Ward.
    - The Health Services Contractor shall immediately contact the Department's General Counsel to coordinate with the Attorney General's Office to obtain a court order to provide necessary treatment.
        - The Department's General Counsel shall contact the Office of the Attorney General to request a petition of the court for an order mandating the Department to provide necessary treatment to the inmate.
    - Provide medical treatment if a court orders treatment to be provided.
    - Life Threatening is defined as "a medical condition which could, in a physician's opinion, lead to an inmate's death if not treated."

**Department Order 1101.13: Inmate Access to Health Care- Inmate Hunger Strikes**
- Department and Health Services staff shall monitor the health and welfare of an inmate engaged in a hunger strike and shall ensure legal and medical procedures are pursued to preserve the inmate's life.
- When notified an inmate is engaged in a hunger strike, the appropriate Health Services staff shall examine the inmate and conduct an initial evaluation.
    - A psychiatrist or psychologist shall administer a mental health assessment as to the inmate's capacity to make decisions.
        - If inmate is found to not have the capacity to make decisions, legal proceedings shall be initiated to obtain a court order for forced care.
    - If the inmate is determined to have the capacity to make decisions his/her medical status shall be monitored in accordance with the Health Services Technical Manual (HSTM).
        - An interdisciplinary clinical staffing panel as outlined the HSTM shall determine any potential issues and attempt to resolve them.
- The Health Services, through the Legal Services/Discovery Unit, shall notify the Department's General Counsel Office advising of the need to begin preparing a court order for involuntary forced feeding, if necessary, at least 72 hours prior to hospitalization.

Corizon

### General Health Services Policy and Procedure P-F02.01: Hunger Strike
- In cases where refusal for care or sustenance may imminently result in loss of life or limb:
  - o Medical will work in concert with correctional administration if it is determined that a court order is indicated to intervene on behalf of the patient.
  - o An external competency exam will be conducted if recommended by the psychiatrists or the court.

### General Health Services Policy and Procedure J-A-01.00: Access to Care
- The responsible health authority works to resolve identified barriers to health care through communication with appropriate parties.

### General Health Services Policy and Procedure J-I-05.00: Informed Consent and the Right to Refuse Treatment
- A refusal form must be completed.
- The form must be sent to medical and reviewed by a qualified health care professional. If there is a concern about decision-making capacity, an evaluation is done, especially if the refusal is for critical or acute care.


## The Importance of a Multidisciplinary Treatment Approach in the Correctional Context

The correctional health care setting is complex. Inmates have a constitutional right to adequate health care. Medical, psychiatric, and mental health services are provided in a context that is primarily focused on custody, control and safety. This context produces the challenge of addressing inmates' needs while adhering to principles of practice that maintain and support the safety and security of the institution. Success in this endeavor requires clear, open communication and collaboration between all disciplines.

Many staff from a variety of disciplines are involved in addressing the needs of inmates. Clinical disciplines include: physicians (general practitioners and psychiatrists), medical assistants, nurses, nursing assistants, psychologists, psychological associates, and social workers. Care and treatment is delivered in general population and infirmary settings where non-clinical staff interact with inmates on a daily basis. Security personnel include correctional officers, case managers, classification counselors, and unit managers. Programs personnel include chaplains, educational instructors, and recreational staff.

Health care in a correctional context can be challenging for reasons other than balancing the individual's needs with the facility's needs. The inmate population tends to have a high prevalence of both physical and mental disorders that often occur together. There is also a high prevalence of maladaptive personality traits in the inmate population. These traits can contribute to complex clinical presentations that may be infused with conflict with staff, treatment refusals, and a break down in the treatment alliance between inmate and clinician.

All of this occurs in a stressful environment for both staff and inmates. Staff must be vigilant for potential negative reactions to inmates' behavior that can contribute to a break down in the treatment relationship.

A multidisciplinary team approach to providing care and treatment is essential in addressing the needs of inmates with complex presentations while supporting staff to maximize successful outcomes. This approach facilitates good working relationships between clinical and security staff and encourages collaborative problem solving. Advantages include encouraging the inmate to participate in treatment planning in a meaningful manner, providing a mechanism to review treatment decisions, and ensuring that all relevant factors are considered before making a treatment or management decision. In addition, the team can consider the inmate's psychological stability, interpersonal style, and coping skills before implementing recommendations.

Foundational elements of adequate correctional health care include proper screening, assessment, treatment, and follow up care. All of these elements need to be delivered in a coordinated manner with collaboration and communication between disciplines. Policies and procedures are developed and established to support these efforts. In the corrections institutional context, standards of care for individual disciplines exist within a scaffolding of policies and procedures that support them. While a clinical or security staff provides services in their individual capacity, care custody and treatment unfolds in an interrelated team context. In a typical correctional facility, administrative staff including the facility health administrator, medical director, and mental health director along with the warden and deputy warden are responsible to ensure that relevant policies and procedures are operationalized, and appropriate staff are available to implement them.

## Findings and Opinions

My assessment and the following opinions are derived from a review of the information available to me at this time and with the assumption that the information provided represents a reasonably complete database and is a reasonable representation of the facts in this matter. Please note that the opinions below may not be exhaustive. All opinions provided are based on review of the materials, my own training and experience, and are held to a reasonable degree of medical certainty.

### 1. Nicholas Long's Care and Treatment Warranted a Multidisciplinary Approach

#### Nicholas Long's Presentation was Complex and Complicated

Clinical staff in ADC noted that Mr. Long had a history of bipolar disorder. He was diagnosed with severe ulcerative colitis (UC); anxiety and depression are common in patients with UC. He intermittently declined offers of medical treatment including several episodes of signing out of a hospital AMA. The hospital attending discussed obtaining a court order for treatment and administration of nutrition over objection with the ASPC-Florence facility medical director. Mr. Long informed a nurse that he would rather die than receive tube feeding due to a fear related to his grandfather's death. He lost a significant amount of weight and became extremely cachectic. He was placed on an extended suicide watch for what was interpreted as self-harming behavior. Some of the mental health staff appeared to

have the impression that he was on a hunger strike watch and had explained the hunger strike protocol to him. The treatment relationship with clinicians displayed signs of breaking down. Nursing staff formed the impression that he was "faking weakness", demonstrated "attention seeking behavior", and "displays a negative attitude."

### Benefits of a Multidisciplinary Approach

In the care of Mr. Long, a multidisciplinary team approach would have provided the opportunity to:

1. Involve mental health and psychiatry earlier in the process of his physical decline.
2. Identify both the medical and psychiatric components of his presentation along with their interaction and impact on his presentation.
3. Assesses the source of his behavior which included intermittently declining offers of recommended treatment and nutrition.
4. Identify and address psychological and emotional factors in his decision making including anxiety and fear related to his family history of death associated with tube feeding.
5. Involve Mr. Long in the treatment team process and develop an effective strategy to engage him in a collaborative manner in treatment planning.
6. Encourage consistency in treatment engagement and attempts to develop a positive treatment alliance.
7. Clearly and consistently identify the purpose of enhanced levels of observation/watches and develop consensus amongst team members about related procedures.
8. Assess, identify, and address clinical and security staff's potential negative reactions to and frustration with his behavior/decisions and counter the possibility of staff disengaging from appropriate care.
9. Identify and address relevant medical-legal issues including decision making capacity and court orders for treatment and nutrition over objection, early in the process.
10. Develop a coordinated approach to treatment refusals in the hospital context that could include a proactive court order and requesting that the hospital attending obtain a psychiatric consult to assess decision making capacity prior to allowing him to sign out AMA.


## 2. Failure to Follow Established Policies and Procedures

The Arizona Department of Corrections and Corizon had policies that established procedures for treatment refusals.

The ADC HSTM Chapter 7, Section 1.8: Clinical Staffing of Special Problems policy provides a mechanism and forum *to ensure a cooperative effort* between the facilities administration and treating clinicians in responding to a specific inmate's health needs *especially in situations of treatment refusals*. The procedure involves invoking a multidisciplinary team approach that includes participation of the medical provider, nurse supervisor, psychologist, psychiatrist, Facility Health Administrator, Deputy Warden, and inmate-patient. This policy is designed to utilize a multidisciplinary team approach to address treatment refusals and is warranted in complex and complicated cases like Mr. Long's care.

There were multiple opportunities to invoke a multidisciplinary approach to the care of Mr. Long within the Florence facility and in the community hospital setting.

**There was a failure to follow and implement the Clinical Staffing of Special Problems policy in Mr. Long's care during the period he was incarcerated in ADC.**

The ADC Department Order 1102.12: Inmate Access to Health Care- Refusal of Treatment policy provides procedures for addressing refusal of treatment for a life-threatening medical condition. When a condition is life-threatening, the Health Services Contractor shall immediately contact the Department's General Counsel to coordinate with the Attorney General's Office to obtain a court order to provide necessary treatment. Life Threatening is defined as "a medical condition which could, in a physician's opinion, lead to an inmate's death if not treated."

**There was a failure to follow and implement the Inmate Access to Health Care-Refusal of Treatment policy in Mr. Long's care during the period he was incarcerated in ADC.**

The record indicates that some of the clinical staff believed Mr. Long was on a hunger strike. Mental health staff documented that he was on a hunger strike watch and had explained the hunger strike protocol to him. If staff indeed believed he was on a hunger strike, the following policies were applicable:

ADC HSTM Chapter 7, Section 1.6.1: Hunger Strike Clinical Support indicates that a "Clinical Staffing" should be convened to assist in ascertaining the alleged purpose of the hunger strike.

A Clinical Staffing was not convened.

Department Order 1101.13: Inmate Access to Health Care-Inmate Hunger Strikes indicates that a psychiatrist or psychologist shall conduct a decision-making capacity assessment and the Department's General Counsel shall be notified to begin preparing a petition for a court order for providing nutrition over objection.

As indicated above, this is a preliminary report. If additional information becomes available, I reserve the right to amend or supplement this report as necessary.

Sincerely,

*Michael Champion*

Michael K. Champion, M.D.
January 31, 2018

**EXHIBIT 6**



Robbins
& Curtin
PLLC

301 E. Bethany Home Rd.
Suite B-100
Phoenix, AZ 85012

602/285-0100 phone
602/265-0267 fax
www.robbinsandcurtin.com

October 24, 2016

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016

  **RE:**  **Wrongful Death of Nicholas Cameron Lee Long**
     **Date of Loss: May 25, 2015**

Dear Counsel:

  We are serving our responses to the first round of discovery in this case.  We will supplement our discovery responses upon receipt of the following un-redacted documents:

- Arizona Department of Corrections policies and procedures, including department orders, directors instructions, informational memoranda, etc. relating to medical care, including refusal of care and "hunger strike";

- Corizon policies and procedures, including refusal of care and "hunger strike" policies and procedures, nursing encounter tools, protocols, standing orders, etc.; and

- Contract documents between the State of Arizona and Corizon.

  We have coordinated the dates for the depositions of Kenneth and Cora Long.  I am also requesting that you provide dates for Rule 30(b)(6) depositions.  The areas for inquiry are:

1. The correctional health and mental health services provided to Nicholas, including assessments, diagnoses, and treatments.

2. The terms, scope of services, financial considerations, and contract compliance for the contract between Corizon Health, Inc. and the State of Arizona, Arizona

Department of Corrections (for the contract in place at the time of Nicholas Long's death).

3.    The utilization review or evaluation with respect to Nicholas Long.

4.    The referral of Nicholas Long to off-site providers, specifically with respect to continuity of care.

5.    The morbidity/mortality review of Nicholas Long's death, as well as any reviews conducted pursuant to any policy related to procedures to be followed in the event of an inmate death.

6.    Application and results of Corizon Health, Inc.'s "Sentinel Event Policy" as a result of Nicholas Long's death.

7.    Contract monitoring for the contract between State of Arizona and Corizon Health, Inc., for medical and mental health care.

8.    Corizon Health, Inc.'s health professionals' observations, assessments, or diagnostic impressions regarding Nicholas Long, to include any an impressions/observations of exaggerated and/or malingering symptoms.

9.    The coordination/continuity of medical services relating to the care and treatment of Nicholas Long.

10.    The application of the Arizona Department of Corrections policies and procedures to the care provided to Nicholas Long.

11.    The application of Corizon's policies and procedures to the care provided to Nicholas Long.

We will be sending out a notice of deposition, but I wanted to give you a heads up so that you could begin your identification of witnesses.

I understand that in the past Corizon has asserted that its policies and procedures, nursing encounter tools, protocols, standing orders, and reviews are propriety or otherwise

confidential.   Without waiving our right to later challenge the confidentiality of these items, we are willing to enter into a protective order with respect to any such materials.

Very truly yours,

**Robbins & Curtin, p.l.l.c.**

Anne E. Findling

AEF:kg
Enclosures
cc:    Krista Carman

**EXHIBIT 7**



301 E. Bethany Home Rd.
Suite B-100
Phoenix, AZ 85012

**Robbins**
**& Curtin**
PLLC

602/285-0100 phone
602/265-0267 fax
www.robbinsandcurtin.com

January 24, 2017

Anthony J. Fernandez
Vincent J. Montell
Rebecca E. Stanton
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016

> **RE:** **Wrongful Death of Nicholas Cameron Lee Long**
> **Date of Loss:  May 25, 2015**

Dear Counsel:

We would like to begin conducting depositions in this matter.  To that end, enclosed please find deposition notices pursuant to Rule 30(b)(6) to each organizational defendant.  For each Notice, I have noticed a specific date for the depositions.  However, once you have determined who the appropriate individuals for the depositions will be, please let me know their availability (and yours), and we can reschedule the depositions accordingly.

I would also like to take the depositions of the following individuals:

1.    Elijah Jordan, M.D.;
2.    Robert A. Anderson, D.O.;
3.    Koran Vuvcevic, M.D.; and
4.    Director of Nursing for ASPC-Florence Central Unit.

The following dates are available on Anne Findling's calendar:

February:      20, 21, 22, 23, 24, 27, 28
March:          1, 2, 3

Please circle **ALL** dates that you are available and return to my office by either fax or e-mail.  Please advise as to your availability (and that of these individuals).  Please get back to me within **ten (10) days.**  If I do not hear back, I will assume that you are available and will send out notices.

I would presume that it will not be necessary to subpoena these individuals.  If this is incorrect, please notify our office immediately.

Additionally, I would like to request the electronic medical record in native form, together with the metadata.  Please let me know if you require a formal Request for Production.

Thank you for your courtesy and cooperation in this regard.  Please do not hesitate to contact me with any questions or concerns.

Very truly yours,

**Robbins & Curtin, p.l.l.c.**

Anne E. Findling

AEF:kg
cc:    Krista Carman

**EXHIBIT 8**

RECEIVED
FEB 13 2017
ROBBINS & CURTIN



QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
ATTORNEYS AT LAW

WWW.QPWBLAW.COM

2390 East Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605 ♦ Facsimile: (602) 954-5606

February 8, 2017

**VIA U.S. AND**
**ELECTRONIC MAIL**
Anne Findling
ROBBINS & CURTIN
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
anne@robbinsandcurtin.com

    **Re:    Long v. Corizon**

Dear Anne:

    We are in receipt of your letter dated January 24, 2017 requesting a Rule 30(b)(6) deposition, and the depositions of several individual providers. Defendants' position remains that they are entitled to preliminary standard of care expert affidavit(s) per A.R.S. §§ 12-2603/2604 before providing staff or corporate representatives for deposition.

    The medical record clearly documents staff's interactions with Mr. Long, and identifies staff members by name. Furthermore, Defendants have disclosed a list of each staff member (including respective designations) who provided care to Mr. Long during his incarceration. This information is sufficient for Plaintiff to determine which experts are required to opine on the alleged breaches in the standard of care.

    Assuming that Defendants are provided the statutorily-required affidavits, we can proceed with scheduling the requested depositions. Kindly advise when these affidavits will be provided so we can then discuss a range of dates for depositions. If the affidavits are not forthcoming, let us know as soon as possible so we can commence motion practice.

    Next, we are looking into your request for the electronic medical record and metadata. We will advise in due course.

Miami | Tampa | Jacksonville | Orlando | Ft. Lauderdale | Tallahassee | Ft. Myers | Louisville | Lexington | West Palm Beach
Chicago | Pensacola | Phoenix | Panama City | U.S Virgin Islands | Los Angeles | Dallas | Michigan | Atlanta

As always, if there is anything you wish to discuss, please feel free to call me. Thank you.

Very truly yours,

Anthony J. Fernandez
For the Firm

AJF/res



Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
*Attorneys for Defendants*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG,<br><br>       Plaintiff,<br><br>   v.<br><br>STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona,<br><br>       Defendants. | Case No. CV2016-007692<br><br>**DEFENDANTS' EXPEDITED RULE 37 MOTION TO COMPEL DISCLOSURE AND FOR SANCTIONS, INCLUDING: IMMEDIATE STAY OF THE LITIGATION; STRIKING PLAINTIFFS' EXPERT DR. O'STEEN; AND PERMITTING TESTIMONY TO BE TAKEN OF DR. O'STEEN REGARDING HIS IMPROPER CONTACTS**<br><br>**(EXPEDITED CONSIDERATION AND ORAL ARGUMENT REQUESTED)**<br><br>**(COURT REPORTER REQUESTED)**<br><br>(Assigned to the Honorable Rosa Mroz) |

Defendants State of Arizona and Corizon Health, Inc. (collectively "Defendants" herein), by and through undersigned counsel, respectfully submit this Motion to Compel Disclosure and for Sanctions pursuant to Arizona Rules of Civil Procedure 37(c). Plaintiffs failed to disclose improper *ex parte* communications with Defendants' former employees initiated by Plaintiffs' expert John O'Steen, M.D., in violation of Ariz. R. Civ. P. 26.1.

Moreover the communications themselves were improper under *Lang v. Superior Court*, and the Arizona Rules of Professional Conduct ER 4.2, ER 5.3 and ER 8.4.

Defendants, on an expedited basis, move for the following sanctions under Rule 37 (c): (1) that John O'Steen, M.D. be enjoined from engaging in any further *ex parte* communications with Defendants' current or former employees; (2) that John O'Steen, M.D. be stricken as an expert, including any of his opinions disclosed to date; (3) that Defendants be permitted discovery, including the deposition of Dr. O'Steen and immediate production of his entire file, into the issue of Dr. O'Steen's communications with *Lang*-protected employees and the impact these conversations have had on the litigation; (4) for monetary sanctions including Defendants' reasonable expenses and attorney's fees, related to the discovery and litigation of this issue; (5) for any further sanctions that, depending on the outcome of the discovery, may be proper up to and including dismissal of this action or a judgment in favor of Defendants; and (6) for a stay of all other litigation pending the resolution of this issue, including protection from deposition for the *Lang* employees requested by Plaintiffs.

Given the upcoming deadlines in this matter, Defendants request expedited consideration of this motion.

## I.  **Background:**

Plaintiffs' Complaint, filed May 18, 2016, alleges medical negligence/wrongful death related to the death of Plaintiffs' son, Nicholas Long, while he was incarcerated within the Arizona Department of Corrections ("ADOC"). *See* Plaintiffs' Complaint. Defendant Corizon is a contracted provider of medical services within ADOC. Mr. Long suffered from ulcerative colitis, and received care and treatment from numerous Corizon employees over the course of his illness. Plaintiffs allege that Corizon, by and through the actions of its employees, was negligent in the provision of medical care to Mr. Long, causing his death. *See* Complaint at ¶¶ 35 – 42. Plaintiffs also allege operational negligence against Corizon, including understaffing and insufficient training. *Id* at ¶ 40.  Defendants

answered the Complaint on September 1, 2016 and discovery commenced. Defendants have denied all allegations.

On June 26, 2017, Plaintiffs disclosed expert John O'Steen, M.D. in support of their claim. *See* Declaration Under Oath of John O'Steen, M.D., dated June 26, 2017, attached as **Exhibit A**. On February 8, 2018, Plaintiffs provided additional disclosure concerning Dr. O'Steen's opinions. *See* Plaintiffs' 15th Supplemental Disclosure Statement, dated February 8, 2018, relevant portions attached as **Exhibit B**. Dr. O'Steen's *curriculum vitae* indicates that he works at Central Arizona Detention Center, in Florence, Arizona. *See* John O'Steen, M.D *curriculum vitae*, attached as **Exhibit C**. Dr. O'Steen supports Plaintiffs' allegation that Corizon staff breached the standard of care with respect to Nicholas Long's treatment, causing his death.[1] *See* Exhibits A and B.

On October 24, 2016, the parties exchanged Initial Disclosure Statements. Defendants disclosed the names of more than 80 current/former Corizon employees (including nurses, nursing assistants and advanced practitioners of varying levels) who provided care and treatment to Nicholas Long. *See* Defendants' Initial Disclosure Statement, dated October 24, 2016, relevant portion attached as **Exhibit E**.

Since the commencement of discovery on September 1, 2016, Plaintiff has conducted exactly four depositions. *See* Plaintiffs' Notices of Deposition of Drs. Johnson, Vukcevic, Riaz and Anderson, attached as **Exhibit F**. Each deposition has been of a Corizon physician, specifically, Chris Johnson, DO, Zoran Vukcevic, MD, Jawad Riaz, MD, and Robert Anderson, MD.

On January 8, 2018, Plaintiffs requested the depositions of Darcee Bishop, RN (registered nurse) and Jakelin Valladares, CNA (certified nursing assistant) – **coincidentally (or not) the two staff improperly contacted by Plaintiffs' expert**. *See* email from Plaintiffs' counsels' paralegal Kimberly Gonzalez to defense counsel, attached

---

[1] On February 8, 2018, Plaintiffs also disclosed the expert opinion of Lori Milus, RN. Ms. Milus supports Plaintiffs' claim that Corizon nursing staff fell below the standard of care in treating Mr. Long. *See* Declaration of Lori Milus, RN, attached as **Exhibit D**.

as **Exhibit G;** *see also* Defendants' Good Faith Consultation Certificate by counsel Rebecca Stanton, attached as **Exhibit H.** **To date, other than RN Bishop and CNA Valladares, Plaintiff has not requested the deposition of any other Corizon staff who cared for Nicholas Long**. RN Bishop's deposition was arranged and noticed for February 21, 2018, but was cancelled following a meet and confer conducted by counsel herein. *See* Notice of Deposition of Darcee Bishop, RN, attached as **Exhibit I**; *see also* Exhibit H*; see also* email string between Plaintiffs' counsel and defense counsel dated February 16, 2018, attached as **Exhibit J**. At the time of the meet and confer, CNA Valladares' deposition had not yet been formally noticed. RN Bishop and CNA Valladares were employees of Corizon during the relevant time and both provided care and treatment for Mr. Long. *See* the Affidavit of Darcee Bishop, RN, attached as **Exhibit K**; and *see* the Affidavit of Jakelin Valladares, attached as **Exhibit L**.

Following their respective terms of employment with Corizon, both RN Bishop and CNA Valladares became employed at Central Arizona Detention Center. *See* Exhibits K and L, respectively. While at Central Arizona Detention Center, each avers that she was approached by Dr. O'Steen, Plaintiff's expert, and questioned about Mr. Long. *Id, respectively*. Each avers that she told Dr. O'Steen that she recalled Mr. Long. *Id, respectively*. CNA Valladares additionally avers that she provided information to Dr. O'Steen about Mr. Long's care and treatment, in response to his questioning. *See* Exhibit L. She further avers that Dr. O'Steen asked her questions about Corizon's operations, including staffing, which she answered. *Id*. Undersigned defense counsel only discovered these contacts when they spoke with each witness in the past several weeks to prepare them for their depositions. *See* Exhibit H.

At no time have Plaintiffs disclosed that Dr. O'Steen interviewed RN Bishop and/or CNA Valladares with respect to the allegations pertinent to this case. At no time have Defendants consented to *ex parte* contact of their current or former employees.

On February 16, 2018, Defendants conducted a meet and confer with Plaintiffs' counsel about the afore-mentioned issues. *See* Exhibits H and J. Plaintiffs' counsel sent a

letter to Defendants' counsel on February 19, 2018. *See* Letter from Plaintiffs' counsel to Defense Counsel, dated February 19, 2018, attached as **Exhibit M.** Plaintiffs' counsel does not deny that the *ex parte* communications took place. *Id.* There also has been no explanation for the lack of disclosure of the *ex parte* communications. *Id.* Plaintiffs' counsel further disclosed in the letter and for the first time, that Dr. O'Steen is a former colleague of former Corizon employee Zoran Vukcevic, MD.[2] *Id.*

The deadline to propound discovery in this matter is April 11, 2018, with discovery to be completed on June 19, 2018. *See* Scheduling Order dated December 6, 2017. Defense expert disclosure is due by March 9, 2018. *Id.* Thus, expedited consideration of the instant motion is warranted.

## II. <u>Legal Argument</u>

### i. **Plaintiff's expert Dr. O'Steen engaged in prohibited and unethical *ex parte* communications with Defendants' former employees concerning the subject-matter of this lawsuit.**

It is well-settled Arizona law that *ex parte* contact with the former employee of an opposing party, concerning the subject matter of the litigation, is prohibited. *Lang v. Superior Court, In & For Cty. of Maricopa*, 170 Ariz. 602, 826 P.2d 1228 (Ct. App. 1992). Arizona Rule of Professional Conduct ER 4.2 prohibits *ex parte* communications "about the subject of the representation" with a represented party, and *Lang* explicitly applies the prohibition to former employees, where the acts or omissions of the former employee can be imputed to the former employer for purposes of civil liability. "The prohibition is intended to (1) prevent unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people, (2) preserve the integrity of the attorney-client

---

[2] Dr. O'Steen alleges that Dr. Vukcevic fell below the standard of care in treating Mr. Long. *See* Exhibits A and B. According to Plaintiffs' counsels' February 19, 2018 letter (Exhibit M), "any opinions that Dr. O'Steen holds about Dr. Vukcevic's care of Nicholas Long are **predominately** as a result of records reviewed." The letter further refers to "**Dr. O'Steen's observations** about the poor quality of Dr. Vukcevic's practices." To date, Plaintiff has disclosed <u>nothing</u> with respect to the additional information or "observations" by Dr. O'Steen on which he bases his opinions of Dr. Vukcevic. Dr. Vukcevic was deposed on September 6, 2017. *See* Notice of Deposition of Dr. Vukcevic, at Exhibit F. For the reasons stated in this motion, Defendants are entitled to investigate the extent of the information or "observations" utilized by Plaintiff with respect to Dr. Vukcevic that were not disclosed to defense counsel.

relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement." *Lang*, 170 Ariz. at 604 (Ct. App. 1992).

It would be nonsensical to prohibit *Lang* communications by counsel and simultaneously permit counsel to allow their experts to undertake the prohibited task. Arizona Rule of Professional Conduct ER 5.3 directly addresses this issue:

> With respect to a nonlawyer … retained by or associated with a lawyer:
>
> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
>
> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
>
> > (1)    the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
> >
> > (2)    the lawyer … has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Moreover, Arizona Rule of Professional Conduct ER 8.4(a) provides that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

A case out of the Eighth Circuit is instructive on this point. In *Midwest Motor Sports v. Arctic Sales, Inc.,* 347 F.3d 693, (8th Cir. 2003), a snowmobile dealership franchisee was suing the franchisor for wrongful termination. Counsel for the franchisor hired a private investigator to pose as a customer visiting the plaintiff's showroom. *Id.* The investigator secretly recorded conversations with the plaintiff's low-level employees. *Id.* The court found that counsel intended to elicit specific admissions "that the attorneys [knew] would be advised against by the employer's counsel" and, as a sanction for violating ER 4.2, excluded the evidence. *Id* at 698.

Dr. O'Steen, in his capacity as an expert retained by Plaintiffs, engaged in *ex parte* communications with Defendants' former employees RN Bishop and CNA Valladares. These conversations were clearly of the type contemplated and prohibited by *Lang*. RN Bishop and CNA Valladares are members of Defendants' nursing staff who provided care and treatment to Mr. Long. Acts or omissions by either with respect to Mr. Long would impute liability on Corizon, regardless of the fact that neither is currently employed by Corizon. Both RN Bishop and CNA Valladares aver that Dr. O'Steen asked each of them questions specifically about Mr. Long. CNA Valladares avers that she provided information to Dr. O'Steen about Mr. Long's care and treatment, and further avers that Dr. O'Steen asked her questions about Corizon's operations, including staffing, which also form a basis for the liability allegations in Plaintiffs' Complaint. The information gained by Dr. O'Steen during these communications is directly pertinent to the liability analysis, and was gained from *Lang*-protected employees without the benefit of counsel. The fact that Dr. O'Steen is "not a lawyer" as Plaintiffs' counsel points out in her letter does not make these *ex parte* contacts permissible. In fact, under ERs 5.3 and 8.4, Plaintiffs' counsel is under an ongoing obligation to make reasonable efforts to ensure Dr. O'Steen's conduct is compatible with the ethical rules, and to mitigate or avoid unethical behavior.

**Before** there is any further discovery or disclosure, Defendants should be entitled to fully investigate the extent of the improper contacts, including whether they were made with Plaintiffs' counsels' knowledge and/or direction.

### ii. The improper *ex parte* communications instigated by Plaintiffs' expert Dr. O'Steen were not disclosed to Defendants, in violation of Rule 26.1.

Under Ariz. R. Civ. P. 26.1(a)(4), Plaintiffs have a duty to promptly disclose the name of any person with information relevant to the subject matter of the action, as well as, a fair description of the nature of the information. When Dr. O'Steen interviewed Defendants' employees concerning their personal recollections of the subject matter of the suit, Dr. O'Steen turned himself into a witness with relevant, new information. Plaintiffs were obligated to disclose this information to defense counsel within 30 days of receipt.

Ariz. R. Civ. P. 26.1(d)(2). That information was never disclosed to defense counsel. Instead, Plaintiffs requested the depositions of RN Bishop and CNA Valladares, the two individuals contacted by Dr. O'Steen.[3] Plaintiffs' counsel requested these depositions on January 8, 2018. RN Bishop's deposition was scheduled for February 21, 2018. (Of note, Plaintiffs' counsel sought to arrange these depositions through defense counsel, acknowledging that both witnesses are represented by defense counsel and that direct contact by Plaintiffs' counsel would be inappropriate.) At no time did Plaintiffs' counsel inform Defendants' counsel of the *ex parte* communications between Dr. O'Steen and either of these witnesses. Defense counsel discovered the contact through happenstance, during preparation of these witnesses for deposition, and cancelled the deposition of RN Bishop five days before it was set to occur.

### iii. Conclusion - Plaintiffs' failure to Disclose Dr. O'Steen's *ex parte* communications with Defendants' former employees is sanctionable.

When a party fails to timely disclose information of a witness as required under Rule 26.1, that party may not, unless such failure is harmless, use that information or witness at trial. Ariz. R. Civ. P. 37(c)(1). The failing party may be subject to further sanctions including but not limited to imposing payment of reasonable costs and attorneys' fees, imposing a stay in litigation, and/or dismissal of the action. Ariz. R. Civ. P. 37(c)(3). Where a party has failed to disclose unfavorable information, the Court is further justified in imposing serious sanctions up to and including dismissal of the action in whole or in part. Ariz. R. Civ. P. 37(d)(1).

Dr. O'Steen's improper *ex parte* communications with Defendants' employees, and Plaintiffs' failure to disclose that contact, have irreparably tainted this case. Dr. O'Steen should be enjoined from any further communications with *Lang*-protected employees, and

---

[3] The <u>only</u> nursing staff sought for deposition by Plaintiffs' counsel are CNA Valladares and RN Bishop, the same two individuals interviewed by Dr. O'Steen. To date, Plaintiffs have deposed only four (4) of the more than eighty (80) Corizon employees who cared for Mr. Long. It strains the reasonable realms of belief to think that these two witnesses were randomly chosen. In any event, the testimony of Dr. O'Steen (as well as his expert file) should help clarify when the conversations took place and any following communication, if any, with Plaintiffs' counsel.

stricken as an expert. The information he gained, *ex parte*, in violation of *Lang* is a bell that cannot be unrung, and has to be assumed to have been a foundational basis of his opinion, and perhaps further elements of Plaintiff's case. Defendants should be permitted to conduct necessary discovery into the extent of these communications, and, if Plaintiffs' counsel contests knowledge of the *ex parte* communications, into Plaintiffs' counsels' potential involvement in soliciting and/or acting upon them. During this time, a stay in all other aspects of the litigation is appropriate. Defendants further reserve the right to move for additional sanctions up to and including dismissal of the case. Defendants are entitled to monetary sanctions including the payment of reasonable expenses and attorneys' fees related to the filing of this motion, and any related subsequent discovery or litigation, necessitated by Plaintiffs' failure to disclose.

Defendants request expedited consideration of the request for a stay in the litigation, considering the March 9, 2018 defense expert disclosure deadline and the June 19, 2018 discovery completion deadline.

**RESPECTFULLY SUBMITTED** this 20th day of February, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By: /s/ Anthony Fernandez
Anthony J. Fernandez
Rebecca E. Stanton
*Attorneys for Defendants*

**ORIGINAL** efiled via AZ TurboCourt
on this 20th day of February, 2018 with:

**The Clerk of the Court**

The Honorable Rosa Mroz
**MARICOPA COUNTY SUPERIOR COURT**
East Court Building - 414
101 Jefferson
Phoenix, AZ  85003-2243

9

1    **COPIES** mailed this same day to:

2    Joel B. Robbins
     Anne E. Findling
3    **ROBBINS & CURTIN, PLLC**
     301 E. Bethany Home Road, Suite B100
4    Phoenix, AZ  85012-0001
     *Attorneys for Plaintiffs*
5
     Krista Carman
6    **CARMAN LAW FIRM**
     246 S. Cortez Street
7    Prescott, AZ 86303
     *Attorneys for Plaintiffs*
8

9    By  /s/ Nelly Preca

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
Warnock, MacKinlay & Carman, PLLC
246 S. Cortez Street
Prescott, AZ 86303
Telephone: (928) 445-8056
Facsimile: (928) 445-8046
kcarman@lawwmc.com

*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **DECLARATION UNDER OATH OF JOHN O'STEEN, M.D.** |
| vs. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona; | |
| Defendants. | |

John O'Steen, M.D., makes the following declaration under oath:

1.     I am a physician licensed to practice medicine in Arizona. I graduated from medical school from the University of Michigan Medical School.  I attended residency training in psychiatry from the University of New Mexico School of Medicine Affiliated Hospitals and at the Maricopa Medical Center in Phoenix, Arizona.

2.     I am currently practicing as a primary care provider in a general practice with incarcerated adults at the Central Arizona Florence Correctional Complex.

3.     During the year immediately preceding the death of Nicholas Long, I devoted a majority of my professional time to the active clinical practice of general medicine in a correctional setting as a general practitioner.

4.     I have been provided the following materials for review.

    a.  Corizon Medical Records;

    b.  Yuma Regional Hospital Records;

    c.  Tempe St. Luke's Hospital;

    d.  Florence Anthem Hospital;

    e.  Mountain Vista Hospital;

    f.  Promise Hospital;

    g.  Banner Desert Hospital

    h.  ADC technical manuals

    i.  Corizon policies and procedures

5.     A summary of the factual basis for my preliminary opinion is as follows:

    a.     Mr. Long was a 21 year old Caucasian male who was, at the time of admission to ADOC, reported to be in good health except for a history of a significant learning disorder and a previous diagnosis of

Page 2 of 8

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Bipolar Disorder. While incarcerated at the Yuma Complex, Mr. Long began to complain of abdominal pain, cramping, frequent diarrhea and fevers along with marked weight loss of over 20 pounds. His initial weight at Yuma Complex was 160 pounds. He was initially seen in the health unit at Yuma Complex and when the prescribed interventions did not seem to benefit Mr. Long he was referred to Yuma Regional Medical Center for admission on 11/06/2014.

b. While at Yuma Regional Medical Center, Mr. Long was diagnosed with chronic diarrhea and possible acute infectious colitis with treatment provided with antibiotics. Of interest, is that his lactoferrin level returned high which is a marker of inflammatory bowel disease(IBD), his CT scan was consistent with IBD, stool cultures were negative for bacterial pathogens and a Nutritionist who was consulted proposed the diagnosis of IBD based on the patient's presentation and lab values.

c. Mr. Long, after his hospital release, reported to Yuma Complex Medical on 11/13/2014 complaining of persistent severe abdominal cramps and diarrhea despite the treatment provided at hospital and pleaded with the nurse to send him back to the hospital where he could receive additional needed care. This was not done and subsequently he was transferred to Florence Complex Central Unit Housing Unit 10.

d. On 11/26/2014 direct admission to Tempe St. Luke's Hospital was arranged by the Infirmary attending physician Dr. Zoran Vukcevic. PA Asztalos working under the supervision of Dr. Vasiq performed his admitting history and physical exam and noted that Mr. Long had been complaining of cramping abdominal pain and bloody

diarrhea for about six months. He was febrile to 102.7 degrees, with a pulse of 120 and appeared very thin and in moderate distress due to pain. Another CT scan was done which again was suggestive of infectious or inflammatory colitis.

e.     The patient was then seen by Dr. Florin Gaidici, a Gastroenterologist, who subsequently performed a colonoscopy which revealed diffuse mucosal inflammation consistent with UC. The procedure was "aborted" due to a fear of perforating the colon and a diagnosis of severe ulcerative colitis was made and confirmed by biopsy. Oral prednisone, oral and topical (rectal) mesalamine was ordered by Dr. Gaidici. When the patient was offered total parenteral nutrition and NPO (nothing by mouth) to "rest the bowel" he refused further treatment and agreed to return to Florence Complex and take the medication offered by Dr.Gaidici.  Of great interest is that Dr. Gaidici did theorize that due to the severity of his UC he might require biological agents or 6 Mercaptopurine or lmuran for more aggressive treatment.

f.     At this point it should be noted that the severity of UC is often graded base on the Montreal Classification System which includes the following criteria for diagnosis of severe disease:

1). Frequent loose bloody stools greater than six a day

2). Severe cramps

3). Systemic Toxicity which is indicated by fever greater than 37.5 degrees, tachycardia greater than 90 beats per minute, anemia less than a hemoglobin of 10.5 and elevated sedimentation rate.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

g.      Mr. Long clearly met all of these criteria for a diagnosis of severe disease.   The next consideration would be what the appropriate treatment for severe disease is.

h.      Mr. Long was discharged on 11/30/2014 and returned to Florence Complex Infirmary/HU 10. The Corizon records suggest that Mr. Long was not started on Prednisone until on or about 12/08/2014 a week or more after his hospital release and he was provided with no mesalamine at that time.   He was never provided with mesalamine topical (rectal) therapy as advised by Dr. Gaidici. The reasons for this are not clear. Also he was ordered anti-diarrheal and opioid medications despite this being contraindicated and was prescribed omeprazole which when given with mesalamine, which is designed to dissolve in the colon, can cause immediate release of the mesalamine in the stomach and small intestines reducing its efficacy and promoting side effects.

i.      Mr. Long was again returned to Tempe St. Luke's on 12/11/2014 due to continued severe abdominal cramps, worsening anemia and worsening nutrition. He was initially given IV steroids along with mesalamine and then released back to prison because he still did not wish NPO status.

j.      After returning to Florence Complex on 12/14/2014, Mr. Long was provided with tapering doses of prednisone but only over a three week period and tapering is recommended over a six to eight week treatment period with the tapering to be halted if a flair occurs. Oral mesalamine was offered on or about 12/29/2014 without topical therapy provided.

k.      Despite this intervention, Mr. Long's condition continued to deteriorate and ultimately he began to refuse the mesalamine because it

Page 5 of 8

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax:   (602) 265-0267

made him nauseated and seemed to worsen his abdominal pain. Rather than reassessing his condition, proposing new treatments including more aggressive and costly ones that might be better tolerated and more effective, referring him for urgent Gastroenterology Consultation for another opinion or seeking urgent psychiatric consultation, Mr. Long seems to have been told to take the treatment or leave it since no other options were going to be considered.

l.      Throughout his stay in the infirmary/HU10 he continued to demonstrate marked and severe weight loss and quite obviously was very anorectic due to the severity of his disease and his starvation state. Rather than appreciating how anorectic he was and taking appropriate steps to intervene, he was alleged to be on a hunger strike and therefore his skeletal condition was attributed to his own aberrant behavior rather that the health services division accepting any responsibility for his deteriorating condition due to inadequate health care.

m.      UpToDate, a reliable source of medical information, points out that depression is commonly associated with Ulcerative Colitis and early psychiatric consultation is very important. This would be even more important in a young man with a learning disability and a history of Bipolar Disorder. This should have been requested at St. Luke's as well as at the Complex level but was not done until 02/02/2015 when Dr. Anderson, a psychiatrist, first saw Mr. Long. This was on the same day that he was found in extremis, unresponsive and required emergency intubation and admission to Mountain Vista Medical Center.

n.      The psychiatrist noted the emaciation and severe weight loss and pointed out that his labs were, "suggestive of a man whose life is in critical danger if supportive medical services are not applied within the

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

near future." Dr. Anderson diagnosed him with delirium and dehydration with possible underlying depression. Mr. Long was felt to be incapable of making sound judgments about his medical care.

      o.    On 02/02/2015, Mr. Long was transported by ambulance in an unresponsive state to Florence Anthem Hospital where he was intubated and then transferred to Mountain Vista Hospital for definitive care.

      p.    At Mountain Vista Hospital he was found to have free intraabdominal air suggestive of a perforated viscus on imaging studies. Mr. Long presented to Mountain Vista with a number of decubitus ulcers which did not seem to have been addressed at Florence Complex.

      q.    Mr. Long was then returned to Promise Hospital where he seemed to do fairly well until on or about 05/24/2015 when he began to complain of respiratory distress. Studies were done and he was offered breathing treatments. The following day he sustained a respiratory arrest, and intubation both at Promise Hospital and Banner Desert proved futile due to, in part, at least extensive scaring from his previous tracheostomy and he was pronounced dead.

6.    It is in my opinion, extremely inappropriate for a previously healthy young man to waste away from 160 pounds to 104 pounds over the course of two and a half months with severe symptomology and to be seen by the attending physician on only two or three occasions at the most. At my facility it is mandatory that all Infirmary inmates be seen daily by a licensed independent practitioner. Further, it cannot absolve the attending physician of any responsibility for Mr. Long's deteriorating health at Florence Complex by periodically sending the patient out to the hospital without insuring that

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

his condition is being properly treated at the Complex Level which was never done.

7.  Dr. Vukcevic bore the responsibility of insuring that this individual was receiving adequate care and he clearly did not fulfill that responsibility.  He should have been well informed on the current medical literature concerning the appropriate treatment of severe ulcerative colitis and not merely have relied on subspecialty consultation which in this case was lacking.

8.  Based on my review of Mr. Long's records, it is my opinion, to a reasonable degree of medical certainty, that the medical care provided to Mr. Long by Corizon did not meet the minimum standard of care and, as a result, he died from a treatable medical condition.

Subject to the penalty of perjury, I attest that this declaration is true and accurate to the best of my knowledge.

DATED: _06/26/2017_____

_John O Steen MD_____
JOHN O'STEEN, M.D.

EXHIBIT B

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1  right to supplement Dr. Solny's affidavit and to provide any additional

2  preliminary declarations after Defendants have disclosed un-redacted records,

3  the contract documents between Defendant State of Arizona and Defendant

4  Corizon, the policies and procedures of Defendant State of Arizona, the policies

5  and procedures of Defendant Corizon, and the results of contract monitoring

6  by Defendants' representatives.

7  **As of the time of this disclosure, the depositions of several key**

8  **Corizon employees have not been taken. These depositions, including**

9  **the facilities healthcare administrator, medical director, regional**

10  **employees, and others are necessary for Plaintiff's experts to finalize**

11  **their opinions. Plaintiff, therefore, reserves the right to supplement**

12  **and amend the following expert disclosures as discovery continues.**

13  ~~Plaintiffs anticipate that they may retain experts in the following areas:~~

14  ~~correctional practices; correctional medicine; medical care; mental health care;~~

15  ~~internal medicine and/or gastroenterology; psychiatry and/or psychology;~~

16  ~~nursing; pathology; forensic pathology; surgery and/or GI surgery; economic~~

17  ~~damages; long-term acute care.~~

18           1. Michael Champion, MD
              1253 S. Beretaine Street, Suite 3121
19           Honolulu, HI 96814-1822

20

21  Dr. Champion is an expert in the delivery of mental health care in

22  correctional settings, including systems for delivery of constitutionally

23  required care in prison. His qualifications to render an opinion are set forth in

24  his CV attached as Exhibit "56."    He is expected to testify consistent with

    his report attached as Exhibit "57."

25           2. John T. O'Steen, MD
              1155 N. Pinal Parkway Drive
26           Florence, AZ  85232

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

The Declaration under Oath of John O'Steen, M.D., dated June 26, 2017, is attached and incorporated. (Exhibit 33).

Dr. O'Steen will testify that he is familiar with the applicable standard of care and is otherwise qualified to render the opinions set forth below.

Dr. O'Steen has been provided with the following documents:

- ADOC Health Services Records;
- Corizon Medical Records;
- Yuma Regional Medical Records;
- Tempe St. Luke's Medical Records;
- Florence Hospital Records;
- Mountain Vista Records;
- Promise Hospital;
- Banner Desert Medical Records;
- Maricopa County Autopsy Report;
- Hsu, Rebecca, MD – Private Autopsy Report;
- ADOC Health Services Technical Manual (013219 - 13802);
- Corizon General Health Services P&P (013803-13856);
- Correctional Health Care P&P (013567 - 13916);
- Plaintiff's Second Supplemental Disclosure Statement;
- Deposition Transcript of Zoran Vukcevic, MD;
- Deposition Transcript of Robert A. Anderson, DO;
- Deposition Transcript of Jawad Riaz, MD;
- Deposition Transcript of Christopher Johnson, MD.

Dr. O'Steen will testify that the care given to Nicholas Long by Corizon Health, and specifically Zoran Vukcevic, M.D., was below the standard of care for a primary care provider practicing in a general practice with incarcerated adults. Dr. O'Steen will further testify that the breaches of the standard of care as set forth in his opinions were a cause of Nicholas Long's death, and that, but for the breaches in the standard of care, Mr. Long would not have died. Dr. O'Steen holds his opinions to a reasonable degree of medical probability.

A brief summary follows. Nicholas Long was admitted to the Arizona Department of Corrections on March 12, 2014. At intake, Nicholas (5'10") was

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

reported to weigh 153 pounds. On March 17, 2014, his weight was recorded to be 160 lbs. At intake, Mr. Long reported a history of Bipolar Disorder that had been previously treated with medication. He also reported stomach issues for which he requested Prilosec (omeprazole).

On June 28, 2014, Mr. Long was seen by a nurse for a chief complaint of 10/10 abdominal pain, intermittent, for one week. The pain was described as sharp.

On October 7, 2014, he submitted a HNR for "really bad" stomach cramping, diarrhea, pain, and inability to sleep.

On October 10, 2014, Mr. Long submitted an HNR with a report of "severe pain" resulting in being placed on the "nurse's line" on October 12, 2014.

Records document bloody stool, inability to urinate, anorexia, diarrhea, weakness, dizziness and vomiting. He described his pain as 9/10 to 10/10. His weight was down 24 pounds since his last assessment. His abdomen was described as tender, hyperactive bowel sounds present, guarding present, with confirmed blood in his stool.

On November 6, 2014 Mr. Long was admitted to Yuma Regional Medical Center for severe colitis, leukocytosis and fever. On November 7, 2014, he was evaluated to be at nutritional risk. Mr. Long was treated with IV antibiotics and fluids. Stool cultures were negative, and his symptoms were reported as resolved after three days. Mr. Long was discharged on November 10, 2014 with diagnoses of unspecified noninfectious gastroenteritis and colitis, dehydration, leukocytosis, and fever, with instructions to continue Levaquin.

Two weeks later, Mr. Long was transferred from ASPC-Yuma to ASPC-Florence. He was admitted to the Infirmary under the care of Zoran Vukcevic,

M.D. On admission, he was febrile (T 101.3), tachycardic (P 137), and weighed 115 lbs.

On November 26, 2014, Mr. Long was admitted to Tempe St. Luke's Hospital for severe protein malnutrition, fever, and severe abdominal pain with bloody stool. A CT revealed circumferential large bowel mucosal thickening consistent with infectious or inflammatory colitis, likely ulcerative colitis.

Gastroenterologist Florin Gaidici performed a partial colonoscopy. He stopped the colonoscopy after he discovered severe disease, with a diagnosis of active chronic colitis with ulceration. Dr. Gaidici noted that Mr. Long would "very likely" require a biologic substance due to the severity of his disease but did not feel that he would need surgery with total colectomy.

Mr. Long left Tempe St. Luke's against medical advice. He returned to ADC on November 30, 2014 and was readmitted to the Infirmary.

On December 9, 2014, Mr. Long submitted an HNR for medical care:

> I would like to see the doctor for a check-up and about my med's as soon as possible please.
>
> Thank you.

On December 10, 2014, Mr. Long's medications were changed to Prilosec, Phenergan, and Zantac. His prescription for steroids was discontinued.

On December 12, 2014, Mr. Long was readmitted to Tempe St. Luke's. The admitting assessment was lower GI bleeding related to chronic ulcerative colitis. Discharge instructions included continued medication with mesalamine.

Mr. Long again returned to ASPC-Florence Central Unit Infirmary under Dr. Vukcevic's care. Medication was changed from mesalamine to

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Balsalazide. On December 15, 2014, Flagyl was added to Mr. Long's medications. Mr. Long poorly tolerated the balsalazide, reporting that it made him nauseous.

On December 29, 2014, Mr. Long was tachycardic and refusing the balsalazide.

By January 6, 2015, Mr. Long was reporting poor tolerance to mesalamine. As a result, he was receiving no medication for ulcerative colitis. He continued to be tachycardic and febrile.

From January 7 to January 21, 2015, Mr. Long lost another four pounds and weighed just 109 lbs. Throughout this period, he remained weak, cachectic, and tachycardic without significant medical intervention. A nutritional consult was ordered, but there is no indication that one was completed.

On January 23, 2015, Mr. Long was again transferred to Tempe St. Luke's. On admission Dr. Vasiq noted Nicholas' condition and reported that he called the prison medical director to see if there were court orders to treat. He records that he was told there were no court orders for treatment.

Dr. Nadim Zyadeh saw Nicholas for a GI consult at Tempe St. Luke's. Mr. Long was severely malnourished. His labs were abnormal and Dr. Zyadeh assessed him as having:

> 1. Acute abdomen with severe leukocytosis, likely secondary to severe ulcerative colitis flare-up; however, toxic megacolon has to be excluded.
>
> 2. Ulcerative colitis.
>
> 3. Severe protein-calorie malnutrition.

Mr. Long was again returned to the prison infirmary.

On January 27, 2015, Dr. Jawad Riaz, consulted by telemedicine. The note charts that Mr. Long was in general population and being seen for a routine follow-up exam. Dr. Riaz ordered mirtazpine. Mr. Long was to return to clinic in three months or as needed.

On February 2, 2015, Mr. Long was referred to psychiatrist Robert Anderson, D.O. for a capacity evaluation. Mr. Long was not able to meaningfully participate in then evaluation and was, in fact, emaciated and cachectic with "labs suggestive of a man whose life is in critical danger if supportive medical services are not applied, within the near future." Dr. Anderson concluded that it was "highly questionable" that Mr. Long was even "able to cognitively process information present to him."

Mr. Long was later found to have perforated his colon, likely prior to his transfer to Mountain Vista Medical Center. Mr. Long's perforation in the infirmary resulted in sepsis and went unrecognized while under Dr. Vukcevic's care.

Mr. Long was ultimately admitted to Mountain Vista Medical Center after becoming unresponsive from starvation and dehydration on February 3, 2015. Abdominal surgery revealed severe adhesions and perforations. He had subtotal colectomy and placement of ileostomy.

Mr. Long underwent further procedures at Mountain Vista with gastrostomy tube placement, abdominal lavage, vacuum assisted wound closure, and porcine graft closure of the abdominal wall. Postoperative course was complicated by failure to be weaned from ventilator requiring tracheostomy on February 21, 2015, and by the growth of vancomycin-resistant enterococci in his urine. Mr. Long was eventually discharged to Promise Hospital for continued care on February 24, 2015.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

On May 25, 2015, Mr. Long arrived via EMS to Banner Desert Medical Center from Promise Hospital at approximately 9:27 a.m. He was pronounced dead on May 25, 2015 at 10:10 a.m.

The standard of care for a primary care physician practicing in a general practice in a correctional setting requires the primary care physician to advocate for his patient and to pursue all avenues to save his patient's life. The physician must appreciate and understand when a patient such as Mr. Long is dying and to do whatever is necessary to preserve his life. Dr. Vukcevic failed to function as an advocate for Nicholas Long. Dr. Vukcevic failed to pursue available avenues for treatment. Dr. Vukcevic needed to understand that Mr. Long was dying and serve as his advocate.

As a result of Dr. Vukcevic's failures to meet basic standards of care, Nicholas Long was never provided with adequate medical care and the appropriate standard of care for treatment of ulcerative colitis was never met.

Dr. O'Steen will also testify, based on his experience and training, that the position of medical director within correctional healthcare is an important position that requires experience in both supervision and primary care. The medical director is responsible for assuring that the policies and procedures are followed. The medical director is also responsible for being aware of patients with difficult or complex medical conditions.

Based on the records currently available, Dr. O'Steen will testify that that the decision to promote Dr. Johnson to the position of medical director was not reasonable based on Dr. Johnson's lack of experience in medicine and in administration. It was apparent from Dr. Johnson's deposition that Dr. Johnson did not seem to understand the seriousness of Mr. Long's medical condition.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Dr. Johnson did not adequately supervise the care being provided to Mr. Long. Dr. Johnson should have become actively involved in Mr. Long's care as Mr. Long's condition deteriorated and he became critically ill. Dr. Johnson demonstrated a lack of training, a lack of experience, and a lack of attention to Mr. Long's care.

On January 27, 2015, Jawad Riaz, M.D. saw Nicholas Long via telemedicine for what is described as routine scheduled psychiatric follow-up. Dr, Riaz charts that he discussed the case with Dr. Vukcevic. Dr. Riaz Charts that "Provider believes that IM is attempting to harm himself." Neither Dr. Johnson nor Dr. Vukcevic conveyed the urgency of Mr. Long's condition to Dr. Riaz. It appeared that Dr. Riaz, who saw Mr. Long through telemedicine had a perfunctory appointment with Mr. Long. He did not take an adequate history and spent only a limited time with Mr. Long. The result of the contact was only the prescription of Rimeron and a three-month follow-up, which was inadequate under the situation.

Dr. O'Steen will testify that he reviewed Dr. Vukcevic's deposition transcript. He questions Dr. Vukcevic's statement that Dr. Vukcevic was the only doctor for 10,000 inmates. This statement conflicts with Dr. O'Steen's understanding and familiarity with the Florence Complex. He also questions the statement that there were two thousand inmates in the Central Unit.

Dr. O'Steen disagrees with Dr. Vukcevic that Mr. Long was seen by appropriate behavioral health associates. Mr. Long was not seen by a qualified psychiatrist who was able to diagnose and treat major mental disorders such as bipolar disorder until January 27, 2015 and then only through telemedicine. Mr. Long should have been seen by a psychiatrist when he began to waste away and refuse treatment rather than waiting until he was moribund. Although Dr. Vukcevic apparently agrees that Mr. Long should

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

have been seen by a psychiatrist, this was not followed through on in a timely fashion.

At deposition, Dr. Vukcevic questioned Mr. Long's weight. The medical record documents Mr. Long's weight at 160 lbs. The record also documents drastic weight loss. Progressive weight loss is a manifestation of severe untreated ulcerative colitis and is not, as Dr. Vukcevic testified, extra intestinal in nature. Significant weight loss, wasting, and death are not common in appropriately treated ulcerative colitis.

Dr. O'Steen will testify that Dr. Vukcevic should have paid attention to Mr. Long's intolerance to medicine and tried something else that might have worked. Whether the cause of ulcerative colitis is well understood, there are effective treatments.

Dr. O'Steen will further testify that Dr. Vukcevic clearly did not advocate sufficiently for Mr. Long. This is one of the primary responsibilities of primary care physicians. In this case, Dr. Vukcevic should have more forcefully advocated against the decisions of Corizon that led to the provision of inadequate health care for Mr. Long.

When Mr. Long's body mass index dropped to 15, which Dr. Vukcevic admitted was "his most critical phase," Dr. Vukcevic should have intervened more forcefully.

When the Tempe St Luke's Gastroenterologist stated that Mr. Long did not need prednisone any more he was essentially washing his hands of this young man due to Mr. Long's refusal to follow his recommendations during the first Tempe St. Luke's admit. Mr. Long was clearly improperly treated with prednisone after his release from Tempe St. Luke's and proper administration should have been reinforced rather than stating he did not need it anymore. A second opinion was not even scheduled until well after Mr. Long was found

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road. Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

unresponsive requiring emergency transport to the hospital despite Dr. Vukcevic's own admission that he was wasting away and suffering from severe malnutrition.

Dr. Vukcevic should have had frequent and repeated conversations with Mr. Long, documented in the medical record by the attending physician regarding his worsening medical condition. Mr. Long's understanding of the consequences of his actions should not have been delegated to mental health tech's or nurses. Adequate health care requires both delivery of care and adequate notes in the medical record.

Dr. O'Steen agrees with Dr. Vukcevic that Corizon failed Nicholas Long.

3. Meyer N. Solny, MD, FACG, AGAF
   1 East 68th Street
   New York, NY 10065-4918

Dr. Solny is an expert in Gastroenterology. His qualifications to render an opinion are set forth in his CV attached as Exhibit "58." Dr. Solny has been provided with the following documents:

- ADOC Health Services Records;
- Corizon Medical Records;
- Yuma Regional Medical Records;
- Tempe St. Luke's Medical Records;
- Florence Hospital Records;
- Mountain Vista Records;
- Promise Hospital;
- Banner Desert Medical Records;
- Maricopa County Autopsy Report;
- Hsu, Rebecca, MD – Private Autopsy Report;
- Complaint (conformed);
- Plaintiff's Initial Disclosure;
- Deposition Transcript of Zoran Vukcevic, MD;
- Deposition Transcript of Robert A. Anderson, DO;
- Deposition Transcript of Jawad Riaz, MD;
- Deposition Transcript of Christopher Johnson, MD.

# EXHIBIT C

# John T. O'Steen, M.D.

Gnorris11@cox.net• 24421 N. Plum Rd., Florence Arizona•
520-723-6379

## Education

### Residency Program:
07/80 to 06/81

Maricopa County General Hospital
2601 East Roosevelt
Phoenix, Arizona 85008
(602) 267-5011

Psychiatry Resident

National In-service residency exam after
6 months of training:
>   Neurology -- 99th percentile
>   Biological psychiatry – 99th percentile
>   General psychiatry –94th percentile

Robert St. John, M.D., Director
Psychiatric Residency Training Program

### Flexible Internship:
07/79 to 06/80

University of New Mexico Hospital
Albuquerque, New Mexico 87131

Joseph M. Bicknell, M.D., Director
Department of Neurology

### Medical School:
08/75 to 06/79

University of Michigan Medical School
Ann Arbor, Michigan
M.D. Degree granted June 3, 1979
Received honors designation in an extensive two year

neuropsychiatry program with an elective course in advance neuroanatomy and a clinical preceptorship at the National Institutes of Mental Health

National Board Scores Parts I & II greater than the 97th percentile.

**University:**
**07/69 to 05/70**
**07/72 to 08/75**

Arizona State University
Tempe, Arizona
B.S. Degree in Zoology granted August 1975

Graduated Summa Cum Laude, Elected to Phi Beta Kappa in junior year, member of Phi Kappa Phi, Phi Eta Sigma and Beta Beta Beta academic honor societies.

**Military Service:**
**12/65 to 07/69**

United States Navy

Honorable Discharge

Advanced to the rate of First Class Petty Officer in a minimum time period. Fleet wide advancement in rating test scores within the 99th percentile: Received letter of commendation from the Commander in Chief of the Pacific Fleet for meritorious achievement while serving with the 7th Fleet in Viet Nam.

Responsibilities included the maintenance of electronic navigational equipment and internal electronic alarm and communication systems in addition to supervision of junior petty officers.

**Employment:**
**07/03 to Present**

Corrections Corporation of America
Central Arizona Detention Center
1155 North Pinal Parkway
Florence, Arizona 85132
(520) 836-3668

Medical Director of a federal detention center which houses up to 3600 Federal Detainees under the auspices of the United States Marshal's Service and ICE. An average of 2,200 new books per month many of whom are foreign nationals. With a broad range of acute and chronic illnesses including a large number with serious infectious diseases. The facility includes a 14 be infirmary as well as a Dialysis unit and serves as a training center for physician assistant students. Responsibilities include the supervision of up to 7 different mid-level providers each month. During this tenure the morbidity and mortality rates have been Exceedingly low and there have been no malpractice claims.

**11/98 to 04/03**

Arizona Department of Corrections
Florence Complex, Florence, Arizona

Physician Supervisor responsible for providing a broad range of primary care services to an all male prison population of about 3500 inmates along with the supervision of a number of physicians and physician assistants. Responsible for the care of Inmates in a large infirmary as well as a long term care facility.

**09/82 to 06/98:**

Solo general practice. Involved in the diagnoses and management of an extremely broad range of medical, psychiatric and surgical problems with care provided to a largely minority and indigent population. Directly responsible for the management of complex acute medical problems involving treatment in the intensive care unit and sub-acute care unit as well as more common and less acute problems on the general medical wards. In addition comprehensive OB care was provided by myself for this population.

EXHIBIT D

1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com
7
   Krista Carman (021700)
8  **CARMAN LAW FIRM**
9  246 S. Cortez Street
   Prescott, AZ 86303
10 Telephone: (928) 445-8056
   Facsimile: (928) 445-8046
11 kcarman@carmanlf.com
12
13 *Attorneys for Plaintiffs*
14
15      **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
16          **IN AND FOR THE COUNTY OF MARICOPA**
17

18 KENNETH and CORA LONG,
   husband and wife, individually, and          Case No. CV2016-007692
19 as statutory beneficiaries for Nicholas
20 Long, deceased; and on behalf of the
   estate of NICHOLAS LONG,                      **DECLARATION UNDER OATH**
21                                               **OF LORI MILUS, RN, MSN, BC**
22              Plaintiffs,
23      vs.
24
25 STATE OF ARIZONA, a body politic,
   CORIZON HEALTH, INC., an
26 Missouri corporation, doing business
   in the State of Arizona;
27
28              Defendants.

*Sidebar (rotated):* **ROBBINS & CURTIN, P.L.L.C.** 301 East Bethany Home Road, Suite B-100 Phoenix, Arizona 85012 Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Lori Milus, RN, makes the following declaration under oath:

1.     I am a registered nurse licensed in the State of Arizona and am qualified to express the opinions contained in this affidavit. A copy of my CV is attached.

2.     I am familiar with the standard of care for registered nurses in the care of individuals with medical and mental health care needs.

3.     I am also familiar with the standard of care for psychiatric nursing with patients who are assessed as non-compliant with medications and/or at risk for self-harm behaviors.

4.     I am currently the corporate director for psychiatric services with Iasis Healthcare. I have extensive experience in supervising registered nurses.

5.     I have reviewed the Corizon medical record for Nicholas Long.

6.     The focus of my opinions is the nursing care, psychiatric nursing care, and supervision of nurses as provided to Nicholas Long by Corizon at ASPC-Florence Central Unit Infirmary ("Infirmary") from November 25, 2014 to February 2, 2015.

7.     Whether the setting is a correctional facility or a setting in the community, the standard of care for nursing requires that the nurse be an advocate for their patient, including taking quality of care concerns up the chain of command, when necessary.

8.     Whether the setting is a correctional facility or a setting in the community, registered nurses must follow the nursing practice act and must practice within the scope of that nurse's license.

9.     An organization providing nursing care should encourage and enable nurses to report problems and advocate for patients. A system that does not have a functioning chain of command and frequent interaction between nursing staff and nursing supervisors and administrators puts patients at risk. Frequent and open communication allows nursing staff to voice care issues without fear of reprisals.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

10.     The standard of care applicable within a correctional facility is the community standard of care. Although the settings may change, the basic standard of care remains the same.

11.     The following statement summarizes the care provided to Nicholas Long during the relevant period and is not intended to be a complete summary of the records. I reserve the right to supplement my opinions as more information becomes available.

12.     The Nursing Admission Tool (11/25/2014) indicates an infirmary admission to ASPC-F Central/U Med. On admission, Mr. Long was identified as a "sub-acute" admission. ADOC-Long-00173. He had cramping pain and was nauseated. His nutrition was identified as very poor. The chart notes an unplanned weight loss of 30 pounds. Comments include "Inmate has colitis and has lost from 11/21/14 122.4 to today which weight is 115."

13.     The infirmary admission includes the following Plan Notes:

> Inmate came from Yuma. Inmate has colitis, diarrhea with bleeding. Inmate needs to be seen by provider [text missing] med renewal and possible more in-depth assessment. Inmate has lost about 6 lbs. in the last 4 days. [Inmate] [text missing] bowel movements approx. every 15-20 minutes. Inmate states that he is unable to keep anything down [text missing] for a supplement. Didn't eat much tonight. Inmate needs additional supplements to diet. Inmate looks like [text missing] and very thin.

ADOC-Long-00180. Provider Review was noted on 12/03/2014 by Vukcevic, Zoran, MD.

14.     Orders on November 26, 2014 included direct admission to Tempe St. Luke's Hospital. Inmate return from hospital stay was documented on November 30, 2014.

15.     The Corizon records for ASPC-F Central/U Med list the following mental health encounters including two encounters from an individual who was designated as a psychiatric nurse (ADOC-Long-00022):

    a.  December 1, 2014, MH-Intake (Roun, Mahlon) (ADOC-Long-01181-01187)

    b.  January 14, 2015, MH-Psychiatric Nurse – Scheduled (Anderson, Jennifer) (ADOC-Long-01188-01192)

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

c. January 25, 2015, MH-Individual Counseling (Roun, Mahlon) (ADOC-Long-01195-01198)

d. January 26, 2015, MH- Individual Counseling (King, Michael S) (ADOC-Long-01200-01203)

e. January 27, 2015, MH-Psychiatrist – Scheduled (Riaz, Jawad) (ADOC-Long-01204-01211)

f. January 28, 2015, MH-Psychiatric Nurse – Scheduled (Anderson, Jennifer) (ADOC-Long-01212-01216)

g. January 29, 2015, MH-Segregation Visit (Roun, Mahlon) (ADOC-Long-01218-01223)

h. January 30, 2015, MH-Segregation Visit (Newman, Nicole M) (ADOC-Long-01224-01229)

i. January 30, 2015, MH-Treatment Plan (Newman, Nicole M) (ADOC-Long-01230-01234)

j. February 1, 2015, MH-Segregation Visit (Roun, Mahlon) (ADOC-Long-01235-01240)

k. February 2, 2015, MH-Segregation Visit (Roun, Mahlon) (ADOC-Long-01241-01246)

l. February 4, 2015, MH-Psychiatrist-Unscheduled (Anderson, Robert) (ADOC-Long-01247-01251)

16.     There is also a S.O.A.P. note (ADOC-Long-01127-01129) by Robert A. Anderson, D.O. dated February 2, 2015.

17.     The medical record also contains Mental Health Disposition – Correction Officer Watch Orders: ADOC-Long 01217, 01193, 01194.

a. January 24, 2015, Mental Health Disposition – Correctional Officer Watch Orders, [signature illegible] RN; reason for watch "self-harm behavior"; notes: "Inmate to be placed on watch for self-harming behavior in HU10." Authorization verbal, Dr. Johnson. Continuous suicide watch, discontinued by King on January 26, 2015.

b. January 26, 2015, Mental Health Disposition – Correctional Officer Watch Orders, [King]; reason for watch [illegible], no notes. 10" SW (Random Checks), Sack Meals Only.

c. January 29, 2015, Mental Health Disposition – Correctional Officer Watch Orders, [signature illegible] Psych Associate; reason for watch – "not eating"; notes: "no options." 30" MHW (Random Checks).

18. The records document a Health Needs Request (HNR) dated 12/9/2014 in which Mr. Long requests to receive a check up and medications "as soon as possible."

19. On December 22, 2014, RN Bishop documented that Mr. Long refused medication (ADC-Long-1745). The reason for refusal was reported:

> those risks and consequences. I also understand, however, that if at any time I change my mind, I may seek treatment again.
> have refused for last 3 days can I get a off a not
> REASON FOR REFUSAL: Meds give's Me Stomach cramps, Fever, No Appetite

20. Additional medication refusals were documented on December 24, 2014 (01746); December 28, 2014 (01747); December 29, 2014 (01748); January 3, 2015 (01748); January 7, 2015 (01750); January 13, 2015 (01751); January 13, 2015 (01752); January 14, 2015 (01753); January 14, 2015 (01754); and January 14, 2015 (01755). Mr. Long consistently reports problems with medications.

21. On January 14, 2015, 3:00 PM, Registered Nurse Anderson documents a health services encounter for "MH Psychiatric Nurse Follow-Up." (ADOC-Long-01188-01192). The subjective note indicates that "Inmate seen per request of Medical." RN Anderson notes that Mr. Long is not taking his medication as prescribed. She notes no side effects present and marks "N" to "Rx effective." She further notes sleep & appetite disturbance, no mood disturbance, and new stressors. The record is not completely clear, but it appears that she noted that Mr. Long was not receiving his medication as ordered.

22. RN Johnson documents:

Inmate not prescribed any psychiatric medications. Inmate reports sleep and appetite issues secondary to medical problem (currently in HU10). Inmate presents as euthymic but ill. Writer was asked to see inmate due to refusal of one of his medical medications. Per inmate it is "making me loose (sic) my appetite even more and I'm underweight." "It's making me sicker, I want to get better."

ROBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

23. RN Johnson documents: hygiene, appearance WNL; no abnormal movements; mood euthymic; alert; eye contact/motor coordination WNL; concentration fair; no hallucinations or delusions; speech & thought process WNL. She documents no self-destructive ideation and no violent ideation. ADOC-Long-01189.

24. RN Johnson's assessment is:

Denies DTO/DTS, AVH. Future oriented, discussed desire to "gain weight and get better" to go home [missing text] polite, appropriate for setting with good eye contact. Appears goal oriented in relation to current illness.

25. RN Johnson's nursing diagnosis is:

*Non-compliance with medical medications RT side effects.*

26. RN Johnson's plan is FU as scheduled or HNR. Patient education is noted as: "Educated Re medication compliance, safety plan, HNR process." ADOC-Long-01191-01192. No treatment plan is evident from the record.

27. The stated purpose of RN Johnson's encounter with Mr. Long was to address "refusal of one of his medical medications." Records document Mr. Long's refusal of mesalamine on:

    a. January 13, 2015 at 3:15 PM ("I/M states medication causes lack of appetite & he is trying to gain weight") (01752);

    b. January 13, 2015 at 9:30 PM ("loss of appetite") (01751);

    c. January 14, 2015 at 8:00 AM ("I/M states medication takes away appetite & I/M is trying to gain weight.") (01753); and

    d. January 14, 2015 at 3:00 PM ("I/M states medication takes away appetite & I/M is trying to gain weight") (01754).

28. Stephanie Oplinger, RN, documented nurse – infirmary rounds on January 14, 2015, 2:10 AM. She charts: "I/M states he's feeling better and has appetite back tonight actually ate dinner. Asked CNA for 'pullups' as [text missing] problem getting to restroom on time due to disease." ADOC-Long-00833-00840. She notes that his abdomen is tender and documents:

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**GI:**

| | | |
|---|---|---|
| Abdomen soft, non-distended, non-tender: | ○ Y | ● N |
| Bowel sounds present in all four quadrants: | ● Y | ○ N |
| Appetite normal: | ○ Y | ● N |
| BM normal: | ○ Y | ● N |
| Comments: I/M has loose stools. Appetite is poor. Ensure given. | | |

29.     Barbara Hansen, RN documented a daily assessment on January 14, 2015, 10:11 AM. Mr. Long was febrile (100.3), tachycardic (137), with respirations of 22, his blood pressure was 120/60. He was "up several times with loose stools." She notes that he was having loose stools and decreased appetite and documents:

**GI:**

| | | |
|---|---|---|
| Abdomen soft, non-distended, non-tender: | ● Y | ○ N |
| Bowel sounds present in all four quadrants: | ● Y | ○ N |
| Appetite normal: | ○ Y | ● N |
| BM normal: | ○ Y | ● N |
| Comments: Having loose stools and decreased appetite. | | |

Mr. Long was reported to be wearing a brief because he "was not always able to make it to the restroom in time." ADOC-Long-00841-00848.

30.     In my opinion, to a reasonable degree of nursing probability, RN Johnson's care of Nicholas Long did not meet the standard of care for psychiatric nursing. Mr. Long required a multi-disciplinary approach to his medical and mental health conditions. A psychiatric nurse, with both medical and psychiatric training and experience, should be the nursing staff member in the best position to understanding the significance of both the medical and mental health symptoms that Mr. Long was exhibiting.

31.     The standard of care for a psychiatric registered nurse under these circumstances required RN Johnson to do more than document an encounter. Given Mr. Long's physical condition, as evidenced by contemporaneous records, the standard of care required that she directly communicate concerns to a provider or elevate the concerns through the chain of command. The psychiatric nurse follow-up note plan of "FU as

Page 7 of 12

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

scheduled" was below the standard of care, especially considering other available options of referring to psychiatry for early FU and/or staffing with psychiatry.

32. On January 28, 2015, 11:35 AM, RN Johnson saw Nicholas Long for a psychiatric nursing scheduled encounter. ADOC-Long-01212 – 01216. Mr. Long was seen "while on a 10 Minute Watch." RN Johnson documented subjective as: "I'm doing pretty good." "I'm eating my lunch." She again noted that he was not taking medication as prescribed; noted no side effects present / Rx not effective; sleep & appetite disturbance, and new stressors."

33. RN Johnson notes:

Inmate prescribed psychiatric medications 1/27/2015. They have not yet arrived per I/M. Inmate states he has "more appetite" than previously. Inmate currently on watch. Inmates states his mood is "good" however, appears slightly dysphoric."

Hygiene, appearance noted to be WNL; mood noted as "other"; concentration is fair; with no self-destructive ideations and no violent ideations. Nursing diagnosis is: "Ineffective coping RT medical condition" unchanged. No psychiatric nurse plan of care is noted in the record.

34. Contemporaneous records include:

a. 01/26/2015 11:00 AM Provider – Infirmary Rounds (ADOC-Long-00997-1000)

Continues to "fail to thrive." Wt. = 104.8; BMI = 15. Appears weak, depressed. Labs (1/21/2015): Alb 1.5; TP 5.0; H/H: 7.4/28.6.

Returned from hospital AMA: refused PICC placement. Afebrile. FS BG (random) this AM 82.

Critically ill. Depressed, refusing treatments.

Psychiatric consult ASAP.

b. 01/26/2015 4:01 PM Provider – Infirmary Rounds (ADOC-Long-01009-01012)

Appears weak, cahectic (sic), tired. Hemodynamically stable. Erythema of the sacral skin (decubitus) reported. Afebrile.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

c. 01/27/2015 3:47 AM Nurse – Infirmary Rounds (ADOC-Long-01013-01020) Stephanie Oplinger, RN.

"I/M asked if I could try to get IV again to get rest of fluids and he wants his Immodium (sic) medication."

[No Vital Signs Noted]

I/M laying in bed. Total care with bedpan.

| Skin/Musculoskeletal: | | |
|---|---|---|
| Skin pink, warm, and dry: | ○ Y | ● N |
| Moves all extremities independently: | ● Y | ○ N |
| Full, spontaneous ROM: | ● Y | ○ N |
| Independent bed mobility, transfers: | ○ Y | ● N |
| Steady gait, ambulates without assistive device: | ○ Y | ● N |
| Absence of joint swelling or tenderness: | ● Y | ○ N |
| Comments: barrier cream on Coccyx. | | |

| Cardiovascular: | | |
|---|---|---|
| Heart rhythm regular: | ○ Y | ● N |
| Brisk capillary refill: | ○ Y | ● N |
| Absence of edema: | ○ Y | ● N |
| Peripheral pulses present by palpation: | ● Y | ○ N |
| Comments: Pulse low, pedal pulses faint, feet have +1 edema | | |

| GI: | | |
|---|---|---|
| Abdomen soft, non-distended, non-tender: | ○ Y | ● N |
| Bowel sounds present in all four quadrants: | ● Y | ○ N |
| Appetite normal: | ○ Y | ● N |
| BM normal: | ○ Y | ● N |
| Comments: abd tender, has diarrhea, I/M does not really feel when he has a BM it is loose diarrhea. | | |

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

| GU: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Urine clear, yellow to amber: | | ⊏ Y | ⊙ N | | | | |
| Voiding without difficulty: | | ⊏ Y | ⊙ N | | | | |
| If dialysis, mark days: | ⊏ M | ⊏ T | ⊏ W | ⊏ Th | ⊏ F | ⊏ Sa | ⊏ Su |
| Comments: no urine output this shift. | | | | | | | |

VS noted. IM still having uncontrolled diarrhea. IV order for 175 ml/hr. NS hand IV blew on 1/25 was able to start 20g in left lower arm ran IV at 125 ml/hr. starting at 2300. Checked every hour IV infusing no S/S of infiltration. IM wants Imodium but refuses Mesalamine order for colitus (sic) states "it hurts my stomach". IM drank 1 ensure. Uses bedpan. Helped I/M use pillow to lift hip off of bed.

d. 01/27/2015 10:25 AM MH – Psychiatrist – Scheduled (ADOC-Long-01204-01211).

Scheduled psychiatric follow-up.

Subjective Notes. Case discussed with Dr. Vukcevic (medical provider) who said that patient has been refusing to eat and [missing text] treatment. Provider believes that IM is attempting to harm himself and informed me that plan is to take IM [missing text] cour-committment (sic) medications.

Current housing: general population; routine follow-up exam; telemedicine

Current symptoms: IM see as per medical referral. He is moved to Florence 3 months ago. Was taking mirtazapine at Yuma for "sleep problems". He denies any complaints. Has diagnosis of bipolar disorder "when younger". Reports having good appetite and eating alright. Denies current mood symptoms. No anxiety or depression is noted. Denies having any thoughts of harming himself or others. He denies any psychosis. He has an IV line. When asked why he is refusing a PIC line. He kept saying "I won't do it" but was unable to give me any reasonable explanation. He seemed very disinterested in talking with this provider and kept saying he is hurting and would want to go back to his cell. He did say that his appetite is good and he is gaining weight.

IM reports poor sleep, denies other symptoms. Agrees to take mirtazapine. Understands risk/benefits of taking medication. Will order mirtazapine. RTC = 3 months or as needed.

Psychiatrist Progress Note: Referral to psychiatrist (routine).

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

35.     In my opinion, the psychiatric nursing care provided to Nicholas Long by RN Anderson on January 28, 2015 fell below the applicable standard of care for a psychiatric nurse. Mr. Long's condition had continued to deteriorate while in the infirmary. Since the last time that RN Anderson had seen Mr. Long, he had been placed on various watches, none of which appeared appropriate to his condition. Although Mr. Long had been seen via telemedicine by a psychiatrist, the standard of care required RN Anderson to continue to advocate for Mr. Long, including elevating concerns about his condition to the on-site provider and up the chain of command.

36.     The nursing records from Nicholas Long's care at ASPC-Florence also show a systemic problem with nurses being unable, or unwilling, to elevate concerns with patient care within an established chain of command. There is no indication in the records that any nursing administrators were involved in the care provided to Nicholas Long. There are numerous medication refusals documented in the file, but no indication that a nursing supervisor ever interceded to assist the nursing staff in advocating for Mr. Long. Concerns that were communicated to the provider remained unaddressed, with nursing staff left to care for a patient who was not receiving appropriate medical care for his serious medical condition.

37.     Registered nurses are trained in basic nutrition, but do not necessarily have the specific training of a registered dietician. In this case, providing for Mr. Long's nutritional needs would be beyond the scope of practice for registered nurse without additional training or education.

38.     Nurses working directly with the patients, especially with patients seen to be difficult patients, can and do become frustrated. The standard of care for registered nursing requires that the nurse put aside those frustrations and provide reasonable and necessary care. It is important that negative views of the patient not influence care provided. If a nurse suspects that a patient is exaggerating or feigning symptoms, the standard of care requires an objective description of behaviors, not subjective statements of the patient's

character or truthfulness. To the extent that certain nurses allowed their personal feelings about Mr. Long to interfere with care provided, the applicable standard of care is not met. Nursing administration must ensure that all nurses are providing appropriate care without the taint of bias or prejudice.

Subject to the penalty of perjury, I attest that this declaration is true and accurate to the best of my knowledge.

DATED: February ___8th___, 2018.

LORI MILUS, RN, MSN, BC

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 • Fax: (602) 265-0267

EXHIBIT E

**B. Defendants**

    i.    State of Arizona
                c/o Vincent J. Montell and Anthony Fernandez
                Quintairos, Prieto, Wood & Boyer, P.A.
                2390 East Camelback Road, Suite 440
                Phoenix, Arizona 85016

The State of Arizona is a Defendant in this matter. It is anticipated the employees, representatives, and/or agents of the State will testify regarding their understanding of the facts and circumstances alleged in Plaintiffs' Complaint and the provision of healthcare services to inmates. It is anticipated that they will testify consistently with any documents produced and/or authored by the state, as well as any depositions, if taken. (Disclosed in Defendants' Initial Disclosure Statement)

    ii.    Corizon Health, Inc.
                c/o Vincent J. Montell and Anthony Fernandez
                Quintairos, Prieto, Wood & Boyer, P.A.
                2390 East Camelback Road, Suite 440
                Phoenix, Arizona 85016

Corizon Health, Inc. is a Defendant in this matter. One or more of its agents, employees and/or records custodians, known or unknown, may have knowledge about the care and treatment of Decedent. It is anticipated that each will testify regarding his/her care and treatment, and any opinions that may have been formulated during his/her examination and the basis for those opinions. It is anticipated that staff will testify consistent with the Corizon medical records, and with any reports, and deposition, if taken. The following is a non-exhaustive list of individuals who provided care and treatment to Decedent:

        a.      Dorene Acuna, RN
        b.      Jessica Aguilera
        c.      Yolanda Alvarez
        d.      Jennifer Anderson
        e.      Robert Anderson, DO
        f.      Julianna Anuma
        g.      Patrick Arnold
        h.      Patsi Aviles
        i.      Karen Barcklay, MD
        j.      B. Barnett, RN
        k.      Darcee Bishop
        l.      Peter Bishop, DO
        m.      Felix Breon
        n.      Christine Brewer, RN
        o.      Ramon Buenanueva, RN
        p.      Jacklyn Busby,
        q.      Gregory Campbell, RN
        r.      Janice Cruz
        s.      Philip Daou
        t.      David Doench, RN
        u.      Alyssa Evans
        v.      Mark Faust, PA-C
        w.      Suzanne Feeley, RN
        x.      Stacey Fenwick
        y.      Monica Flores, RN

| | |
|---|---|
| z. | Amanda Frable, LPN |
| aa. | Cherie Noelle Getts, RN |
| bb. | Andrea Hamilton, CRN |
| cc. | Julie Hampton, BSN |
| dd. | Barbara Hansen, RN |
| ee. | Jason Hoffman, MH Tech |
| ff. | Christopher Johnson, DO |
| gg. | Sarah Johnson |
| hh. | Valerie Jones, RN |
| ii. | Elijah Jordan, MD |
| jj. | Jennifer Kessler, RN |
| kk. | Michael King, Mental Health |
| ll. | Amy Kriser, RN |
| mm. | James Lines, Dentist |
| nn. | Crystal Mamon |
| oo. | Nicole Maranzano, NP |
| pp. | Deborah McGarry, NP |
| qq. | Dr. McQueen |
| rr. | Jennifer Miller, RN |
| ss. | Yelena Miller |
| tt. | Ximena Montes |
| uu. | Maria Mulhern, NP |
| vv. | Nicole Newman, Psych |
| ww. | Eva Olszewski, RN |
| xx. | Stephanie Oplinger, RN |
| yy. | O. Osinloye, NP |
| zz. | Allison Poe |
| aaa. | Matthews Puthuppally, RN |
| bbb. | Kyra Quinones |
| ccc. | R. Rae--, LPN |
| ddd. | Maribel Rangel, LPN |
| eee. | Jawad Riaz, Psychiatrist |
| fff. | Amy Ripley, RN |
| ggg. | Cynthia Ripsin, MD |
| hhh. | Jessica Robertson, RN |
| iii. | Pamela Roos, RN |
| jjj. | Mahlon Roun, Psychology Associate |
| kkk. | Lauri Sanders, RN |
| lll. | Gregory Schumacher, LPN |
| mmm. | Spencer Sego, LPN |
| nnn. | Ben Shaw, Mental Health Director |
| ooo. | Erica Smith, RN |
| ppp. | Tabetha Smith, RN |
| qqq. | Lisa Somerton |
| rrr. | Rebekah Sorter |
| sss. | Daniel B. Starks, RN |
| ttt. | Theresa Starling, RN |
| uuu. | C. Taylor, RN |
| vvv. | Carol Taylor, CAN |
| www. | Etta Thurman, MRL II |
| xxx. | Jakelin Valladares |
| yyy. | Jesus Vasquez, Lead Psych Associate |
| zzz. | Stacy Vineyard, RN |
| aaaa. | Marie Volcy |
| bbbb. | Zoran Vukcevic, MD |

```
cccc.     Carly Walker, RN
dddd.     Margarita Wellman, RN
eeee.     Laurie Wharem, LPN
ffff.     Natoyah Wooten, CNA
```

(Disclosed in Defendants' Initial Disclosure Statement)

**C. Medical Providers**

One or more agents, employees and/or records custodians of the entities and providers listed below, including those listed and those unknown, may have knowledge about the care and treatment of Decedent. It is anticipated that each will testify regarding his/her care, services and treatment and any opinions that may have been formulated during his/her examination and the basis for those opinions. It is anticipated that each will testify consistent with his/her medical records, reports, and deposition, if taken. (Disclosed in Defendants' Initial Disclosure Statement)

    i.    AZ-Tech Radiology
         Casa Grande, Arizona

    ii.    Banner Desert Medical Center
         1400 S. Dobson Rd.
         Mesa, AZ 85202
           a.  Svetlana Reznikova-Steinway, MD
           b.  Robert Thomas, MD

    iii.    Garcia Laboratories
         2195 Spring Arbor Rd.
         Jackson, MI 49203

    iv.    Mountain Vista Medical Center
         1301 S. Crismon Rd.
         Mesa, AZ 85209

    v.    Office of the Medical Examiner
         701 W. Jefferson St.
         Phoenix, AZ 85007
           a.  Christopher K. Poulos, MD, Medical Examiner
           b.  Norman Wade, Laboratory Director

    vi.    Pacific Mobile Diagnostics, Inc.
         615 E. Palo Verde Dr.
         Phoenix, AZ 85012

    vii.    Promise Hospital
         433 E. 6th St.
         Mesa, Arizona 85203
           a.  Muhammad Alam, MD
           b.  Tochukwu Samuel Nwafor, MD

    viii.    Tempe St. Luke's Hospital
         1500 S. Mill Ave.
         Tempe, AZ 85281

EXHIBIT F

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
Telephone: (928) 445-8056
Facsimile: (928) 445-8046
kcarman@carmanlf.com

*Attorneys for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG,

Plaintiffs,

vs.

STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona,

Defendants.

Case No. CV2016-007692

**THIRD AMENDED NOTICE OF DEPOSITION**

**FOR**

**ZORAN VUKCEVIC, M.D.**

(Location)

(Assigned to the Honorable Jo Lynn Gentry)

**YOU ARE HEREBY NOTIFIED** that, pursuant to Rule 26 and 30, Arizona Rules of Civil Procedure, the deposition will be taken upon oral examination of the persons whose names and addresses are stated below at the time and place stated below before an officer authorized by law to administer oaths. If the names are not known, a general description sufficient to identify those persons or the particular classes or groups of which those persons belong is given below:

**PERSON TO BE EXAMINED:**     **Zoran Vukcevic, M.D.**

**DATE & TIME OF DEPOSITION:**     **September 6, 2017 at 4:00 p.m.**
**(Previously: September 7, 2017 at 4:00 p.m.)**

**PLACE OF DEPOSITION:**     **Hampton Inn**
**5290 Utica Ridge Road**
**Davenport, Iowa 52807**
**(Just off Interstate 74 by 53rd Ave)**
**Resv. : Robbins & Curtin**

SERVED BY:__✔__ e-Mailing Only* & Mail; _____ Serving the

ORIGINAL/COPY to:

Anthony J. Fernandez*
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman*
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Arizona Litigation Support*
1 E. Washington Street
Suite 500
Phoenix, Arizona 85004
*Courtesy Copy (via email)*

Heidi Krafka*
Weston Reporting
P.O. Box 393
Bettendorf, Iowa 52722
E: hkrafka@yahoo.com
*Court Reporter*

**RESPECTFULLY SUBMITTED**:  August 8, 2017
                    **ROBBINS & CURTIN, p.l.l.c.**

By:   /s/Anne E. Findling
        Joel B. Robbins
        Anne E. Findling

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
Telephone: (928) 445-8056
Facsimile: (928) 445-8046
kcarman@carmanlf.com

*Attorneys for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **FIFTH AMENDED NOTICE OF DEPOSITION** |
| vs. | **FOR** |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona, | **ROBERT A. ANDERSON, D.O.** *(Time Change Only)* |
| Defendants. | (Assigned to the Honorable Jo Lynn Gentry) |

**YOU ARE HEREBY NOTIFIED** that, pursuant to Rule 26 and 30, Arizona Rules of Civil Procedure, the deposition will be taken upon oral examination of the persons whose names and addresses are stated below at the time and place stated below before an officer authorized by law to administer oaths. If the names are not known, a general description sufficient to identify those persons or the particular classes or groups of which those persons belong is given below:

**PERSON TO BE EXAMINED:**          **Robert A. Anderson, D.O.**

**DATE & TIME OF DEPOSITION:**     **September 8, 2017 at 12:00 p.m.**
                                                              **(previously: September 8, 2017 at 9:00 a.m.)**
                                                              **(previously: September 6, 2017 at 10:00 am)**

**PLACE OF DEPOSITION:**               **Geiger Loria Filus McLucas Reporting, LLC**
                                                              **Olde Liberty Square**
                                                              **4807 Jonestown Road, Suite 243**
                                                              **Harrisburg, PA  17109**
                                                              **(Enter through double glass doors; 2nd floor**

SERVED BY:__✓__ e-Mailing Only* & Mail; _____ Serving the

ORIGINAL/COPY* to:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman*
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Arizona Litigation Support*
1 E. Washington Street
Suite 500
Phoenix, Arizona 85004
*Courtesy Copy (via email)*

Geiger Loria Filus McLucas Reporting, LLC*
Olde Liberty Square
4807 Jonestown Road, Suite 243
Harrisburg, PA 17109
E: scheduling@glfmllc.com
*Court Reporter (via email)*

K-Video
10214 North Tatum Blvd, Suite A 1600
Phoenix, Arizona 85028
E: video@k-video.com
*Video Conference*

**RESPECTFULLY SUBMITTED**: August 21, 2017

**ROBBINS & CURTIN, p.l.l.c.**


By: /s/Anne E. Findling
Joel B. Robbins
Anne E. Findling

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
Telephone: (928) 445-8056
Facsimile: (928) 445-8046
kcarman@carmanlf.com

*Attorneys for Plaintiffs*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **FIRST AMENDED NOTICE OF VIDEOTAPED DEPOSITION** |
| vs. | **FOR** |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona, | **JAWAD RIAZ, M.D.** |
| Defendants. | (Assigned to the Honorable Jo Lynn Gentry) |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**YOU ARE HEREBY NOTIFIED** that, pursuant to Rule 26 and 30, Arizona Rules of Civil Procedure, the videotaped deposition will be taken upon oral examination of the persons whose names and addresses are stated below at the time and place stated below before an officer authorized by law to administer oaths. If the names are not known, a general description sufficient to identify those persons or the particular classes or groups of which those persons belong is given below:

**PERSON TO BE EXAMINED:**          **Jawad Riaz, M.D.**

**DATE & TIME OF DEPOSITION:**      **December 15, 2017 at 4:00 p.m. (Texas Time)**

**PLACE OF DEPOSITION:**            **MBA Reporting Service, Inc.**
                                    **555 Republic Drive, 2ⁿᵈ Floor**
                                    **Plano, Texas 75074-5469**
                                    **(972-231-1801)**

**VIA VIDEO CONFERENCE:**           **Robbins & Curtin, pllc**
                                    **301 E. Bethany Home Road**
                                    **Suite B-100**
                                    **Phoenix, Arizona 85012**

SERVED BY:___✔___ E-mail & U.S Mail; _____ Serving the ORIGINAL/COPY*

to:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Krista Carman*
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs (Via email)*

MBA Reporting Service, Inc.
555 Republic Drive, 2nd Floor
Plano, Texas 75074-5469
E: rmbuie@mbarsi.com
*Court Reporter (via email)*

K-Video
10214 North Tatum Boulevard
Suite A1600
Phoenix, AZ 85028
E: video@k-video.com
*Videographer (via email)*

**RESPECTFULLY SUBMITTED**:  December 11, 2017

**ROBBINS & CURTIN, p.l.l.c.**


By:   /s/Anne E. Findling
        Joel B. Robbins
        Anne E. Findling

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
Telephone: (928) 445-8056
Facsimile: (928) 445-8046
kcarman@carmanlf.com

*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona, <br><br> Defendants. | Case No. CV2016-007692 <br><br> **FIRST AMENDED NOTICE OF DEPOSITION** <br><br> **FOR** <br><br> **CHRISTOPHER T. JOHNSON, M.D.** <br><br> (Assigned to the Honorable Jo Lynn Gentry) |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**YOU ARE HEREBY NOTIFIED** that, pursuant to Rule 26 and 30, Arizona Rules of Civil Procedure, the deposition will be taken upon oral examination of the persons whose names and addresses are stated below at the time and place stated below before an officer authorized by law to administer oaths. If the names are not known, a general description sufficient to identify those persons or the particular classes or groups of which those persons belong is given below:

**PERSON TO BE EXAMINED:** Christopher T. Johnson, M.D.

**DATE & TIME OF DEPOSITION:** December 20, 2017 at 10:00 a.m.
(Previously: November 21, 2017 at 10:00 a.m.)

**PLACE OF DEPOSITION:** Robbins & Curtin, p.l.l.c.
301 E. Bethany Home Road
Suite B-100
Phoenix, Arizona 85012

SERVED BY: __✔__ e-Mailing* Only & Mail; _____ Serving the ORIGINAL/COPY* to:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman*
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

Arizona Litigation Support*
1 E. Washington Street
Suite 500
Phoenix, Arizona 85004
*Courtesy Copy (via email)*

**RESPECTFULLY SUBMITTED**:  November 2, 2017

**ROBBINS & CURTIN, p.l.l.c.**


By:   /s/Anne E. Findling
      Joel B. Robbins
      Anne E. Findling

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

EXHIBIT G

| **From:** | Kim Gonzalez |
| **To:** | Rebecca E. Stanton |
| **Cc:** | Anne Findling; Anthony J. Fernandez |
| **Subject:** | RE: Deposition of Dr. Riaz - Long v. Corizon |
| **Date:** | Monday, January 08, 2018 11:23:23 AM |
| **Importance:** | High |

Hi Rebecca,

We would like to depos Ms. Jakeline Valladores, CAN and Darcee Bishop, RN.

February 1, 2, 5, 6, 9, 12, 13, 14, 15, 16, 19, 20, 21, 22.

Please let me know which dates work for both your office and the witnesses.  If I need to Subpoena either of them, please let me know immediately.  Please get back to me by January 16.

Thank you.

Sincerely,

*Kimberly M. Gonzalez*

Kimberly M. Gonzalez, Paralegal
**ROBBINS & CURTIN, p.l.l.c.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
T: 602-285-0100
F: 602-265-0267
E: Kim@robbinsandcurtin.com
W: www.robbinsandcurtin.com

# EXHIBIT H

Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
*Attorneys for Defendants*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiff, | |
| v. | **DEFENDANTS' GOOD FAITH CONSULTATION CERTIFICATE** |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | (Assigned to the Honorable Rosa Mroz) |
| Defendants. | |

Pursuant to Rules 7.1(h), and 26(g), Ariz. R. Civ. P., Defendants State of Arizona and Corizon Health, Inc. (collectively "Defendants"), by and through undersigned counsel, hereby provide this Good Faith Consultation Certificate in support of their Rule 37 Motion to Compel Disclosure and For Sanctions ("Defendants' Motion"), regarding improper and undisclosed *ex parte* communications made by Plaintiffs' expert John O'Steen, M.D:

- On January 8, 2018, Plaintiffs requested the depositions of Darcee Bishop, RN (registered nurse) and Jakelin Valladares, CNA (certified nursing assistant). *See* Exhibit G to Defendants' Motion.

- RN Bishop and CNA Valladares are former Corizon employees. *See* Exhibits K and L to Defendants' Motion.

- Defense counsel contacted both individuals to arrange deposition dates. A date of February 21, 2018 was chosen for RN Bishop and noticed by Plaintiffs, with Defendants' cooperation. *See* Exhibit I to Defendants' Motion. Around this time, in preparation for the depositions, defense counsel was advised by each witness that Plaintiffs' expert Dr. O'Steen had initiated *ex parte* conversations with each of them concerning the subject matter of this lawsuit. Defense counsel was unaware of any contact between Dr. O'Steen and any current/former Corizon employee until that time.

- Defendants' counsel Rebecca Stanton and Anthony Fernandez conducted a telephone conference with Plaintiffs' counsel Anne Findling on February 16, 2018. Defense counsel informed Plaintiffs' counsel that the deposition of RN Bishop would not be going forward. Defense counsel informed Plaintiffs' counsel that the *ex parte* contact was in violation of *Lang*, and that they intended to file a Motion for Sanctions, moving, among other things, that Dr. O'Steen be stricken as an expert. The content of the telephone conference was partially memorialized in an email string. *See* Exhibit J to Defendants' Motion.

- Plaintiffs' counsel stated that she needed to research the issue, both during the telephone call, and via email. *See* Exhibit J to Defendants' Motion.

- After the telephone conference, on February 16, 2018, Plaintiffs' counsel emailed defense counsel and confirmed that the deposition of RN Bishop would not proceed. *See* Exhibit J to Defendants' Motion.

- On February 19, 2018, Plaintiffs' counsel sent a letter to defense counsel, via email. *See* Exhibit M to Defendants' Motion.

- Plaintiffs' counsel indicated that she was unwilling to withdraw Dr. O'Steen as an expert, and that she would object to Defendants' motion to depose him during a

stay in the litigation, necessitating the instant motion. *See* Exhibit M to Defendants' Motion.


DATED this 20th day of February, 2018.


QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


By /s/ *Rebecca Stanton*
Rebecca E. Stanton
*Attorney for Defendants*

# EXHIBIT I

**RECEIVED**
By Nelly Preca at 2:14 pm, Feb 09, 2018

1  Joel B. Robbins (011065)
2  Anne E. Findling (010871)
   **ROBBINS & CURTIN, P.L.L.C.**
3  301 E. Bethany Home Road, Suite B-100
   Phoenix, Arizona 85012-0001
4  Telephone: (602) 285-0100
5  Facsimile: (602) 265-0267
   joel@robbinsandcurtin.com
6  anne@robbinsandcurtin.com

7
   Krista Carman (021700)
8  **CARMAN LAW FIRM**
9  246 S. Cortez Street
   Prescott, AZ 86303
10 Telephone: (928) 445-8056
   Facsimile: (928) 445-8046
11 kcarman@carmanlf.com

12
13 *Attorneys for Plaintiffs*

14

15        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

16           **IN AND FOR THE COUNTY OF MARICOPA**

17

18 KENNETH and CORA LONG,            Case No. CV2016-007692
   husband and wife, individually, and as
19 statutory beneficiaries for Nicholas
   Long, deceased; and on behalf of the
20 estate of NICHOLAS LONG,          **SECOND AMENDED**

21        Plaintiffs,                **NOTICE OF DEPOSITION**

22                                   **FOR**
   vs.
23                                   **DARCEE BISHOP, RN**

24 STATE OF ARIZONA, a body politic,
   CORIZON HEALTH, INC., an
25 Missouri corporation, doing business
   in the State of Arizona,          (Assigned to the
26                                   Honorable Jo Lynn Gentry)

27        Defendants.

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707  ◆  Fax:  (602) 265-0267

**YOU ARE HEREBY NOTIFIED** that, pursuant to Rule 26 and 30, Arizona Rules of Civil Procedure, the deposition will be taken upon oral examination of the persons whose names and addresses are stated below at the time and place stated below before an officer authorized by law to administer oaths. If the names are not known, a general description sufficient to identify those persons or the particular classes or groups of which those persons belong is given below:

**PERSON TO BE EXAMINED:**          **Darcee Bishop, RN**

**DATE & TIME OF DEPOSITION:**        **February 21, 2018 at 10:00 a.m.**

**PLACE OF DEPOSITION:**          **Herder & Associates, Inc.**
                                              **3100 West Ray Road – Suite 201**
                                              **Chandler, Arizona**
                                              **(Near the 101 & 202)**

SERVED BY:___✔___ e-Mailing Only* & Mail; _____ Serving the ORIGINAL/COPY* to:

Anthony J. Fernandez*
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman*
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Arizona Litigation Support*
1 E. Washington Street
Suite 500
Phoenix, Arizona 85004
*Courtesy Copy (via email)*

**RESPECTFULLY SUBMITTED**:  February 9, 2018

**ROBBINS & CURTIN, p.l.l.c.**


By:    /s/Anne E. Findling
          Joel B. Robbins
          Anne E. Findling

EXHIBIT J

| From: | Anne Findling |
|-------|---------------|
| To: | Anthony J. Fernandez |
| Cc: | Rebecca E. Stanton; Kim Gonzalez |
| Subject: | RE: Long v. Corizon |
| Date: | Friday, February 16, 2018 3:00:54 PM |

I agree with you that the deposition will not go forward. I do need to check out the dates to see when conversations occurred.

Anne

Anne E. Findling
**Robbins & Curtin, p.l.l.c.**
301 E. Bethany Home Rd., Suite B100
Phoenix AZ 85012
(602) 285-0100
fax (602) 265-0267
anne@robbinsandcurtin.com

---

**From:** Anthony J. Fernandez [mailto:afernandez@qpwblaw.com]
**Sent:** Friday, February 16, 2018 2:55 PM
**To:** Anne Findling
**Cc:** Rebecca E. Stanton; Kim Gonzalez
**Subject:** RE: Long v. Corizon

The factual predicate is that Dr. O'Steen instigated separate conversations with both witnesses (Darcee Bishop and Jakeline Valladares) while they shared a workplace/employer (CCA) with Dr. O'Steen. The nature of Dr. O'Steen's inquiry falls squarely within *Lang* - he asked both of them about their care and treatment of Nick Long. We have to assume he used the inappropriately gathered information to form a basis for his opinions.
As mentioned, we are telling Darcee her deposition is off for Wednesday. (We believe she separated from Corizon in mid-2015.)

*Anthony J. Fernandez*

**Quintairos, Prieto, Wood & Boyer, P.A.**
**2390 East Camelback Rd. Suite 440**
**Phoenix, Az. 85016**
**Telephone: 602-954-5605**
**Facsimile: 602-954-5606**

---

**From:** Anne Findling [mailto:anne@robbinsandcurtin.com]
**Sent:** Friday, February 16, 2018 2:42 PM
**To:** Anthony J. Fernandez
**Cc:** Rebecca E. Stanton; Kim Gonzalez
**Subject:** RE: Long v. Corizon

Anthony:

Thank you for your telephone call today. I am researching the issues you raised.

So I can understand the factual predicate, when did Darcee Bishop separate from Corizon? Do you know the date she was hired by Dr. O'Steen's employer?

Thank you for providing this information.

Anne


Anne E. Findling
**Robbins & Curtin, p.l.l.c.**
301 E. Bethany Home Rd., Suite B100
Phoenix AZ 85012
(602) 285-0100
fax (602) 265-0267
anne@robbinsandcurtin.com

---

**From:** Anthony J. Fernandez [mailto:afernandez@qpwblaw.com]
**Sent:** Friday, February 16, 2018 2:12 PM
**To:** Anne Findling; Kim Gonzalez
**Cc:** Rebecca E. Stanton
**Subject:** RE: Long v. Corizon

Anne – Do you have 5-10 minutes on Monday to discuss a discovery issue?  If so, what works best and I will calendar it.
Thank you.


*Anthony J. Fernandez*

**Quintairos, Prieto, Wood & Boyer, P.A.**
**2390 East Camelback Rd. Suite 440**
**Phoenix, Az. 85016**
**Telephone:  602-954-5605**
**Facsimile:  602-954-5606**

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

EXHIBIT K

1  Anthony J. Fernandez (Bar No. 018342)
   Vincent J. Montell (Bar No. 014236)
2  **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
   2390 E. Camelback Road, Suite 440
3  Phoenix, Arizona 85016
   Telephone: (602) 954-5605
4  Facsimile: (602) 954-5606
   afernandez@qpwblaw.com
5  vmontell@qpwblaw.com
   *Attorneys for Defendants*
6

7            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8              **IN AND FOR THE COUNTY OF MARICOPA**

9  KENNETH and CORA LONG, husband          Case No.  CV2016-007692
   and wife, individually, and as statutory
10 beneficiaries for Nicholas Long, deceased;   **DECLARATION OF DARCEE**
   and on behalf of the Estate of NICHOLAS   **BISHOP, RN IN SUPPORT OF**
11 LONG,                                     **DEFENDANTS' MOTION TO**
                                             **STRIKE PLAINTIFF'S EXPERT**
12         Plaintiff,

13         v.
                                             (Assigned to the Honorable Rosa Mroz)
14 STATE OF ARIZONA, a body politic,
   CORIZON HEALTH, INC., an Missouri
15 Corporation, doing business in the State of
   Arizona,
16
           Defendants.
17

18

19         I, Darcee Bishop, RN make the following declaration under penalty of perjury.

20    1. I am over the age of 18 and competent to assert the information set forth in this

21       Declaration.

22    2. I make and base this Declaration upon my personal knowledge.

23    3. I was employed as a Registered Nurse by Corizon from approximately March of 2014

24       to approximately May of 2015, at the Arizona State Prison Complex – Florence.

25    4. In my capacity as a Corizon employee, between approximately December of 2014 and

26       February of 2015, I provided care to Nicholas Long.

27

28

1    5. Following my term of employment with Corizon, I became employed by Corrections
2       Corporation of America, at the Central Arizona Detention Center, also in Florence,
3       Arizona. I am no longer employed there.

4    6. John O'Steen, M.D. worked with me at the Central Arizona Detention Center.

5    7. Jakelin Valladares was also my colleague at Central Arizona Detention Center.

6    8. While I was at work at Central Arizona Detention Center, Dr. O'Steen approached me
7       and asked me if I recalled having Nicholas Long as a patient when I worked for
8       Corizon.

9    9. I told Dr. O'Steen that I did recall Nicholas Long.

10

11       I declare under penalty of perjury that the above statements are true and correct to the
12   best of my knowledge.

13

14       DATED this 14th day of February, 2018.

15

16                                   _____
17                                        Darcee Bishop, RN Declarant

18
19
20
21
22
23
24
25
26
27
28

2

EXHIBIT L

Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
*Attorneys for Defendants*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiff, | **DECLARATION OF JAKELIN VALLADARES, CNA IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT** |
| v. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | (Assigned to the Honorable Rosa Mroz) |
| Defendants. | |

I, Jakelin Valladares, CNA make the following declaration under penalty of perjury.

1. I am over the age of 18 and competent to assert the information set forth in this Declaration.

2. I make and base this Declaration upon my personal knowledge.

3. I was employed as a Certified Nursing Assistant by Corizon from October 6, 2014 to February 19, 2016, at the Arizona State Prison Complex – Florence.

4. In my capacity as a Corizon employee, between December of 2014 and February of 2015, I provided care to Nicholas Long.

5. Following my term of employment with Corizon, I became employed by Corrections Corporation of America, at what is now known as Central Arizona Correctional

1  Complex, Core Civic ("Core Civic") in Florence, Arizona (formerly known as Central
2  Arizona Detention Center).
3  6. John O'Steen, M.D. also works at Core Civic.
4  7. Darcee Bishop was also my colleague at Core Civic. To my knowledge, Ms. Bishop
5     no longer works at Core Civic.
6  8. While at Core Civic, Dr. O'Steen approached me and asked me if I recalled having
7     Nicholas Long as a patient when I worked for Corizon.
8  9. I told Dr. O'Steen that I did recall Nicholas Long.
9  10. Dr. O'Steen asked me additional questions about Mr. Long's care and treatment,
10     including questions regarding the adequacy of his treatment, which I answered.
11  11. Dr. O'Steen also asked me questions about Corizon's operations, including my
12     thoughts regarding Corizon's staffing during Mr. Long's incarceration.
13  12. I answered Dr. O'Steen's questions about Corizon's operations.
14
15     I declare under penalty of perjury that the above statements are true and correct to the
16  best of my knowledge.
17
18     DATED this 20 day of February, 2018.
19
20                                    _____ CNA
21                                    Jakelin Valladares, CNA Declarant
22
23
24
25
26
27
28

2

EXHIBIT M



301 E. Bethany Home Rd.
Suite B-100
Phoenix, AZ 85012

602/285-0100 phone
602/265-0267 fax
www.robbinsandcurtin.com

Robbins
& Curtin
PLLC

February 19, 2018

**VIA EMAIL: aferdandez@qpwblaw.com/Rebecca.stanton@qpwblaw.com & U.S. MAIL**

Anthony J. Fernandez
Rebecca Stanton
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016

> **RE:    Long v. Corizon, No. CV 2016-007692**
> **Date of Loss:  May 25, 2015**

Dear Counsel:

I received your emails of February 16, 2018. You have expressed concern about conversations between our expert, Dr. John O'Steen, and two former employees of Corizon, Darcee Bishop and Jakeline Valladares. **I have not had any communications with any current or former employees of Corizon relative to Nicholas Long's case, except through formal discovery.** Therefore, this letter only deals with that limited issue.

Dr. O'Steen is a provider at the Central Arizona Detention Center. Sometime prior to my first contact with him, he came into contact with several former Corizon employees through his work at CADC. I do not know the names of all such employees. These employees complained about the quality of health care being provided by Corizon and expressed that they felt that their professional licenses could be at risk because of the grossly inadequate care being provided by Corizon. This information was not a surprise to me as I have been following the state of medical care at the Arizona prisons for many years through cases I have handled, media accounts, and public sources such as PACER.

Again sometime prior to my first contact with Dr. O'Steen, former employees of Corizon described to him the case of a young man that Corizon had essentially neglected and left to starve. One of the individuals, whom I believe was Jakeline Valladares, described neglect of that patient's personal care needs. Another individual, whom I believe to be Darcee Bishop,

indicated that the patient had not been compliant with staff. Ms. Bishop may also have expressed frustration with Dr. Vukcevic's involvement with the patient. I assume that Nicholas Long's case was the one described as the particular detail was consistent with my understanding of the facts of this case.

Dr. O'Steen has also worked with Dr. Vukcevic. Any opinions that Dr. O'Steen holds about Dr. Vukcevic's care of Nicholas Long are predominantly as a result of records reviewed. That said, Dr. O'Steen does not hold Dr. Vukcevic in high regard, which, again, isn't much of surprise. The fact that this case confirmed Dr. O'Steen's observations about the poor quality of Dr. Vukcevic's practices does not disqualify him from testifying.

Dr. O'Steen is opining on the physician care of Nicholas Long. If he learned anything about Nicholas Long from either Ms. Valladares or Ms. Bishop regarding nursing care, it would not be relevant to his opinions. We have retained a separate nursing expert who has had no contact with Dr. O'Steen or the witnesses.

I am not willing to withdraw Dr. O'Steen as my expert. He is not a lawyer. I have not sought to have ex parte contacts with either witness and have, instead, sought their testimony through formal discovery. Currently, that discovery has been postponed.

I would object to any attempt to depose Dr. O'Steen regarding his substantive opinions before Corizon's own expert disclosures.

I would, however, request that you provide a complete disclosure from Ms. Bishop of what she communicated to Dr. O'Steen and when those communications occurred so that we can address whatever concerns that Corizon has with regard to her testimony.

Very truly yours,

**Robbins & Curtin, p.l.l.c.**

Anne E. Findling

AEF:kg

cc:     Krista Carman (Via Email)

| From: | TurboCourt Customer Service |
|-------|------------------------------|
| To: | Nelly Preca |
| Subject: | E-Filing Status: Form Set # 2526622 Delivered |
| Date: | Tuesday, February 20, 2018 2:39:42 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2526622 has been DELIVERED to Maricopa County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2526622
Keyword/Matter #: 92015 - AJF - LONG
Delivery Date and Time: Feb 20, 2018 2:39 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Motion to Compel: DEFENDANTS' EXPEDITED RULE 37 MOTION TO COMPEL DISCLOSURE AND FOR SANCTIONS
Exhibit/Attachment (Supporting): EXHIBIT A
Exhibit/Attachment (Supporting): EXHIBIT B
Exhibit/Attachment (Supporting): EXHIBIT C
Exhibit/Attachment (Supporting): EXHIBIT D
Exhibit/Attachment (Supporting): EXHIBIT E
Exhibit/Attachment (Supporting): EXHIBIT F
Exhibit/Attachment (Supporting): EXHIBIT G
Exhibit/Attachment (Supporting): EXHIBIT H
Exhibit/Attachment (Supporting): EXHIBIT I
Exhibit/Attachment (Supporting): EXHIBIT J
Exhibit/Attachment (Supporting): EXHIBIT K
Exhibit/Attachment (Supporting): EXHIBIT L
Exhibit/Attachment (Supporting): EXHIBIT M

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.

Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

| | |
|---|---|
| **From:** | TurboCourt Customer Service |
| **To:** | Nelly Preca |
| **Subject:** | E-Filing Status: Form Set # 2526622 Filed |
| **Date:** | Wednesday, February 21, 2018 3:28:53 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #2526622 has been accepted and ==FILED== at Maricopa County - Superior Court and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2526622
Keyword/Matter #: 92015 - AJF - LONG
Filing date and time: Feb 20, 2018 2:39 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Motion to Compel: DEFENDANTS' EXPEDITED RULE 37 MOTION TO COMPEL DISCLOSURE AND FOR SANCTIONS
Exhibit/Attachment (Supporting): EXHIBIT A
Exhibit/Attachment (Supporting): EXHIBIT B
Exhibit/Attachment (Supporting): EXHIBIT C
Exhibit/Attachment (Supporting): EXHIBIT D
Exhibit/Attachment (Supporting): EXHIBIT E
Exhibit/Attachment (Supporting): EXHIBIT F
Exhibit/Attachment (Supporting): EXHIBIT G
Exhibit/Attachment (Supporting): EXHIBIT H
Exhibit/Attachment (Supporting): EXHIBIT I
Exhibit/Attachment (Supporting): EXHIBIT J
Exhibit/Attachment (Supporting): EXHIBIT K
Exhibit/Attachment (Supporting): EXHIBIT L
Exhibit/Attachment (Supporting): EXHIBIT M

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
*Attorneys for Defendants*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona,<br><br>Defendants. | Case No. CV2016-007692<br><br>**DEFENDANTS' STATEMENT IN SUPPORT OF DEFENDANTS' REQUEST FOR A DISCOVERY HEARING**<br><br>**(EXPEDITED CONSIDERATION AND ORAL ARGUMENT REQUESTED)**<br><br>**(COURT REPORTER REQUESTED)**<br><br>(Assigned to the Honorable Rosa Mroz) |

Defendants State of Arizona and Corizon Health, Inc. (collectively "Defendants" herein), by and through undersigned counsel, respectfully submit this statement in support of Defendants' Request for a Discovery Hearing, pursuant to the procedure outlined in this Court's December 7, 2017 Amended Scheduling Order. This statement is supported by defense counsel's Good Faith Certificate of Meet and Confer, submitted to the Court via email, as well as, the Declarations of Darcee Bishop, RN and Jakelin Valladares, CNA (attached hereto as **Exhibit A**):

/////

/////

/////

Defendants, on an expedited basis, move for a discovery hearing. Defendants have discovered that Plaintiff's standard of care expert, John O'Steen, MD, initiated *ex parte* communications with Defendants' former employees, Darcee Bishop, RN and Jakelin Valladares, CNA. *See* Exhibit A. Dr. O'Steen asked each witness about her recollections of Mr. Long at the time she was employed by Defendant Corizon, and also asked questions about facility operations. These *ex parte* discussions go straight to the heart of the litigation, namely, Plaintiffs' allegations that Corizon and Corizon staff did not meet the standard of care with respect to Mr. Long's medical treatment. Dr. O'Steen's *ex parte* interviews fall squarely into the category of communications prohibited by *Lang v. Superior Court,* 170 Ariz. 602, 826 P.2d 1228 (Ct. App. 1992). Plaintiffs' counsel is prohibited from deputizing an expert to conduct interviews of *Lang*-protected former employees. *See* Arizona Rules of Professional Conduct ER 4.2, ER 5.3 and ER 8.4. The only conceivable way Dr. O'Steen knew about Mr. Long at the time he initiated these conversations was because he had already been retained by Plaintiff.

Plaintiffs' counsel never disclosed the fact that these *ex parte* discussions took place, nor their content. Defense counsel only learned about it in preparing these witnesses for deposition.

To date, Plaintiff has deposed four Corizon employees – each is a <u>doctor</u> who was involved in Decedent's care, or the operations of the facility. Out of the more than seventy-five (75) additional Corizon employees listed in Defendants' Disclosure Statement who cared for Decedent, Plaintiffs' counsel (coincidentally or not) requested the depositions of exactly two (2) - RN Bishop and CNA Valladares. CNA Valladares in particular, is a minor player. Her duties as a nursing assistant included taking vital signs and fetching ice; she was not involved in any decisions regarding Decedent's course of treatment. More than 20 other CNAs charted on Decedent during the relevant time, and none have been asked for their testimony. It appears that Plaintiffs' counsel chose these depositions based on information gained by Dr. O'Steen. Plaintiffs' counsel never disclosed this inappropriately-gathered information to Defendants. Moreover, Defendants should be permitted a stay in the case to engage in discovery, including Dr. O'Steen's deposition, to investigate the contents and impact of the *ex parte* communications, and the extent of Plaintiffs' counsels' involvement.[1] Plaintiffs refuse Defendants' proposed remedy to strike Dr. O'Steen.

---

[1] This week, Plaintiffs also filed a motion to amend complaint to add a 42 U.S.C. §1983 constitutional claim. Defendants should be able to ask Dr. O'Steen if he provided any information which could form a basis for that claim.

1    **RESPECTFULLY SUBMITTED** this 23rd day of February, 2018.

2                                              QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

3

4                                    By: /s/ Anthony Fernandez
                                              Anthony J. Fernandez
5                                              Rebecca E. Stanton
                                              *Attorneys for Defendants*
6

7

8
     **ORIGINAL** emailed
9    on this 23rd day of February, 2018 to:

10   Sandra Nageotte
     Judicial Assistant for the Honorable Rosa Mroz
11   nageottes@superiorcourt.maricopa.gov

12   Joel B. Robbins
     Anne E. Findling
13   **ROBBINS & CURTIN, PLLC**
     301 E. Bethany Home Road, Suite B100
14   Phoenix, AZ  85012-0001
     joel@robbinsandcurtin.com
15   anne@robbinsandcurtin.com
     *Attorneys for Plaintiffs*
16

17   Krista Carman
     **CARMAN LAW FIRM**
18   246 S. Cortez Street
     Prescott, AZ 86303
19   krista@carmanlf.com
     *Attorneys for Plaintiffs*
20

21   By  /s/ Rebecca E. Stanton

22

23

24

25

26

27

28

# EXHIBIT A

1    Anthony J. Fernandez (Bar No. 018342)
     Vincent J. Montell (Bar No. 014236)
2    **QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
     2390 E. Camelback Road, Suite 440
3    Phoenix, Arizona 85016
     Telephone: (602) 954-5605
4    Facsimile: (602) 954-5606
     afernandez@qpwblaw.com
5    vmontell@qpwblaw.com
     *Attorneys for Defendants*

6

7         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

8            **IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| 9   KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| | **DECLARATION OF DARCEE BISHOP, RN IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT** |
| 12         Plaintiff, | |
| 13       v. | (Assigned to the Honorable Rosa Mroz) |
| 14   STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | |
| 16         Defendants. | |

18

19       I, Darcee Bishop, RN make the following declaration under penalty of perjury.

20    1. I am over the age of 18 and competent to assert the information set forth in this
21       Declaration.

22    2. I make and base this Declaration upon my personal knowledge.

23    3. I was employed as a Registered Nurse by Corizon from approximately March of 2014
24       to approximately May of 2015, at the Arizona State Prison Complex – Florence.

25    4. In my capacity as a Corizon employee, between approximately December of 2014 and
26       February of 2015, I provided care to Nicholas Long.

27

28

1  5. Following my term of employment with Corizon, I became employed by Corrections

2    Corporation of America, at the Central Arizona Detention Center, also in Florence,

3    Arizona. I am no longer employed there.

4  6. John O'Steen, M.D. worked with me at the Central Arizona Detention Center.

5  7. Jakelin Valladares was also my colleague at Central Arizona Detention Center.

6  8. While I was at work at Central Arizona Detention Center, Dr. O'Steen approached me

7    and asked me if I recalled having Nicholas Long as a patient when I worked for

8    Corizon.

9  9. I told Dr. O'Steen that I did recall Nicholas Long.

10

11    I declare under penalty of perjury that the above statements are true and correct to the

12  best of my knowledge.

13

14    DATED this 14th day of February, 2018.

15

16                                   

17                       Darcee Bishop, RN Declarant

18

19

20

21

22

23

24

25

26

27

28

2

Anthony J. Fernandez (Bar No. 018342)
Vincent J. Montell (Bar No. 014236)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
vmontell@qpwblaw.com
*Attorneys for Defendants*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona,<br><br>        Defendants. | Case No. CV2016-007692<br><br>**DECLARATION OF JAKELIN VALLADARES, CNA IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT**<br><br>(Assigned to the Honorable Rosa Mroz) |

I, Jakelin Valladares, CNA make the following declaration under penalty of perjury.

1. I am over the age of 18 and competent to assert the information set forth in this Declaration.

2. I make and base this Declaration upon my personal knowledge.

3. I was employed as a Certified Nursing Assistant by Corizon from October 6, 2014 to February 19, 2016, at the Arizona State Prison Complex – Florence.

4. In my capacity as a Corizon employee, between December of 2014 and February of 2015, I provided care to Nicholas Long.

5. Following my term of employment with Corizon, I became employed by Corrections Corporation of America, at what is now known as Central Arizona Correctional

| | |
|---|---|
| 1 | Complex, Core Civic ("Core Civic") in Florence, Arizona (formerly known as Central |
| 2 | Arizona Detention Center). |
| 3 | 6. John O'Steen, M.D. also works at Core Civic. |
| 4 | 7. Darcee Bishop was also my colleague at Core Civic. To my knowledge, Ms. Bishop |
| 5 | no longer works at Core Civic. |
| 6 | 8. While at Core Civic, Dr. O'Steen approached me and asked me if I recalled having |
| 7 | Nicholas Long as a patient when I worked for Corizon. |
| 8 | 9. I told Dr. O'Steen that I did recall Nicholas Long. |
| 9 | 10. Dr. O'Steen asked me additional questions about Mr. Long's care and treatment, |
| 10 | including questions regarding the adequacy of his treatment, which I answered. |
| 11 | 11. Dr. O'Steen also asked me questions about Corizon's operations, including my |
| 12 | thoughts regarding Corizon's staffing during Mr. Long's incarceration. |
| 13 | 12. I answered Dr. O'Steen's questions about Corizon's operations. |
| 14 | |
| 15 | I declare under penalty of perjury that the above statements are true and correct to the |
| 16 | best of my knowledge. |
| 17 | |
| 18 | DATED this 20 day of February, 2018. |
| 19 | |
| 20 | |
| 21 | Jakelin Valladares, CNA Declarant |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

2



Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG,<br><br>      Plaintiffs,<br><br>vs.<br><br>STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona,<br><br>      Defendants. | Case No. CV2016-007692<br><br>**PLAINTIFFS' NOTICE OF CONTROVERTING DEFENDANTS' GOOD FAITH CONSULTATION CERTIFICATE**<br><br>(Assigned to the Honorable Rosa Mroz) |

Plaintiffs controvert Defendants' Good Faith Consultation Certificate filed on February 23, 2018. By this certificate, Plaintiffs are not addressing the substantive issue raised by Defendants.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

1    Plaintiffs disagree that the discovery dispute cannot be resolved and that all avenues

2 have been exhausted necessitating the Rule 37 Motion to Compel Disclosure while

3 plaintiff objected.    Plaintiffs in good faith believe that the issue has not been fully

4 discussed and that the parties may be able to resolve, at least in part, the issues raised.

5    As to the deposition of Dr. O'Steen on his substantive opinions, Plaintiffs do not

6 object to Defendants taking Dr. O'Steen's deposition on this limited issue.  The issue for

7 Plaintiffs is whether Defendants would be allowed multiple depositions on Dr. O'Steen's

8 medical opinions or whether the deposition would be limited to conversations with Ms.

9 Bishop.

10    Plaintiffs also requested that Defendants disclose what Ms. Bishop told Dr.

11 O'Steen, and when, so that the issue could be further evaluated (*See attached*

12 *correspondence dated February 19, 2018*).

13    Finally, Defendants did not ask Plaintiffs to extend expert disclosures; Defendants

14 asked to have Ms. Bishop's deposition vacated which Plaintiffs did. The issue of the

15 disclosure schedule is also amenable to resolution by the parties.

16    For the foregoing reasons, Plaintiffs controvert Defendants Good Faith Consultation

17 Certificate.

18    Plaintiffs' counsel would respectfully request additional time to brief the matter, if

19 the Court intends to consider this matter further.

20    **RESPECTFULLY SUBMITTED**: February 23, 2018

21       **ROBBINS & CURTIN, p.l.l.c.**

22

23    By: _____

24       Joel B. Robbins
         Anne E. Findling
25       *Attorneys for Plaintiffs*

26

27

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

# CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2018, the original document was emailed to the parties, as designated below:

Sandra Nageotte
Judicial Assistant for the Honorable Rosa Mroz
nageottes@superiorcourt.maricopa.gov

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
E: rebecca.stanton@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

By: _____

Page 3 of 3

**ATTACHMENT**



301 E. Bethany Home Rd
Suite B-100
Phoenix, AZ 85012

602/285-0100 phone
602/265-0267 fax
www.robbinsandcurtin.com

February 19, 2018

**VIA EMAIL: aferdandez@qpwblaw.com/Rebecca.stanton@qpwblaw.com & U.S. MAIL**

Anthony J. Fernandez
Rebecca Stanton
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016

> **RE:** **Long v. Corizon, No. CV 2016-007692**
> **Date of Loss: May 25, 2015**

Dear Counsel:

I received your emails of February 16, 2018. You have expressed concern about conversations between our expert, Dr. John O'Steen, and two former employees of Corizon, Darcee Bishop and Jakeline Valladares. **I have not had any communications with any current or former employees of Corizon relative to Nicholas Long's case, except through formal discovery.** Therefore, this letter only deals with that limited issue.

Dr. O'Steen is a provider at the Central Arizona Detention Center. Sometime prior to my first contact with him, he came into contact with several former Corizon employees through his work at CADC. I do not know the names of all such employees. These employees complained about the quality of health care being provided by Corizon and expressed that they felt that their professional licenses could be at risk because of the grossly inadequate care being provided by Corizon. This information was not a surprise to me as I have been following the state of medical care at the Arizona prisons for many years through cases I have handled, media accounts, and public sources such as PACER.

Again sometime prior to my first contact with Dr. O'Steen, former employees of Corizon described to him the case of a young man that Corizon had essentially neglected and left to starve. One of the individuals, whom I believe was Jakeline Valladares, described neglect of that patient's personal care needs. Another individual, whom I believe to be Darcee Bishop,

---

indicated that the patient had not been compliant with staff. Ms. Bishop may also have expressed frustration with Dr. Vukcevic's involvement with the patient. I assume that Nicholas Long's case was the one described as the particular detail was consistent with my understanding of the facts of this case.

Dr. O'Steen has also worked with Dr. Vukcevic. Any opinions that Dr. O'Steen holds about Dr. Vukcevic's care of Nicholas Long are predominantly as a result of records reviewed. That said, Dr. O'Steen does not hold Dr. Vukcevic in high regard, which, again, isn't much of surprise. The fact that this case confirmed Dr. O'Steen's observations about the poor quality of Dr. Vukcevic's practices does not disqualify him from testifying.

Dr. O'Steen is opining on the physician care of Nicholas Long. If he learned anything about Nicholas Long from either Ms. Valladares or Ms. Bishop regarding nursing care, it would not be relevant to his opinions. We have retained a separate nursing expert who has had no contact with Dr. O'Steen or the witnesses.

I am not willing to withdraw Dr. O'Steen as my expert. He is not a lawyer. I have not sought to have ex parte contacts with either witness and have, instead, sought their testimony through formal discovery. Currently, that discovery has been postponed.

I would object to any attempt to depose Dr. O'Steen regarding his substantive opinions before Corizon's own expert disclosures.

I would, however, request that you provide a complete disclosure from Ms. Bishop of what she communicated to Dr. O'Steen and when those communications occurred so that we can address whatever concerns that Corizon has with regard to her testimony.

Very truly yours,

Robbins & Curtin, p.l.l.c.

Anne E. Findling

AEF:kg

cc:    Krista Carman (Via Email)

*Long v. State of Arizona, et al. CV2016-007692* **(Defendants' Statement of Discovery Dispute)**

On March 1, 2018, Defendants' counsels Anthony Fernandez and Rebecca Stanton met with Plaintiffs' counsel Anne Findling (and 2 other individuals from her office) to meet and confer on the issue of *ex parte* conversations which Plaintiffs' expert John O'Steen, MD initiated with Defendants' former employees, Darcee Bishop, RN and Jakelin Valladares, CNA. Dr. O'Steen asked each witness: (1) about her recollections of Mr. Long from the time each witness was employed by Defendant Corizon; and (2) general facility working conditions on issues raised in Plaintiff's Complaint and disclosures. These *ex parte* discussions fall squarely into the category of communications prohibited by *Lang v. Superior Court,*170 Ariz. 602, 826 P.2d 1228 (Ct. App. 1992).

Plaintiffs' counsel never disclosed that these *ex parte* discussions took place, nor their content. Instead, Plaintiffs' counsel noticed the depositions of these two witnesses. Defense counsel only learned about the *ex parte* contacts in late January of 2018 as counsel were preparing these witnesses for deposition.

Plaintiffs' counsel admitted during the meet and confer meeting she was aware that Dr. O'Steen had inside information gained through *ex parte* contacts with Defendants' former employees at the time she retained Dr. O'Steen as an expert (i.e. prior to June 26, 2017). Plaintiffs' counsel also admitted that she chose to depose RN Bishop and CNA Valladares specifically because of the case-specific inside information she had gained (and failed to disclose) from Dr. O'Steen.

The ethics rules prohibit an attorney from gathering information from *Lang*-protected former employees, including without limitation deputizing an expert to conduct interviews of *Lang*-protected former employees. *See* Arizona Rules of Professional Conduct ER 4.2, ER 5.3 and ER 8.4. Further, the failure to disclose the *ex parte* information is subject to serious sanctions up to and including disqualification of counsel and dismissal of the action. Ariz. R. Civ. P. 37(d)(1). (Defense counsel do not take this matter lightly, and have consulted with outside ethics counsel.)

At the meet and confer, the parties agreed to a 120-day stay of the action, with discovery to be conducted during the stay on the limited issue of the *ex parte* communications. **To that end, Defendants requested to depose Plaintiffs' counsel, which Plaintiffs' counsel refused. Defendants also request telephone and email records between Plaintiffs' counsels' offices and Dr. O'Steen, a forensic examination of the communications, and the billing records of Dr. O'Steen. Defendants request the Court grant Defendant this discovery.** These items, including Plaintiffs' counsel's deposition under oath, are necessary to determine the substance, timing and usage of the *ex parte* communications and whether the contacts were made at Plaintiffs' counsel's direction. The testimony may form a basis for a defense motion for sanctions up to and including disqualification of Plaintiffs' current counsels, disqualification of Dr. O'Steen, and dismissal of the action. Other discovery which Defendants may want to conduct includes limited depositions of Dr. O'Steen and depositions conducted by the defense of RN Bishop and CNA Valladares.

**RESPECTFULLY SUBMITTED** this 7th day of March, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.


By: /s/ Anthony Fernandez
      Anthony J. Fernandez
      Rebecca E. Stanton
      *Attorneys for Defendants*

**ORIGINAL** emailed
on this 7th day of March, 2018 to:

Sandra Nageotte
Judicial Assistant for the Honorable Rosa Mroz
nageottes@superiorcourt.maricopa.gov

Joel B. Robbins
Anne E. Findling
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com
*Attorneys for Plaintiffs*

Krista Carman
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
krista@carmanlf.com
*Attorneys for Plaintiffs*


By  /s/  Nelly Preca



Case No. CV2016-007692

Kenneth and Cora Long v. State of Arizona, Corizon Health,
Inc.

# PLAINTIFF'S ONE-PAGE STATEMENT ON DISCOVERY DISPUTE

On March 1, 2018, the parties met and conferred, and agreed to stay the case to allow Corizon to take a limited deposition of Plaintiff's expert, Dr. O'Steen, and to allow Plaintiff to take limited depositions of two former Corizon employees: CNA Jakeline Valladores and RN Darcee Bishop. The parties agreed that Dr. O'Steen would produce his expert file (which he has) and the defense would disclose the timing and substance of the conversations that the defense alleges occurred between Dr. O'Steen and Ms. Valladores and Ms. Bishop (which it has not). In his email to the Court, defense counsel identified an "unresolvable discovery issue or two" that "may arise" as this discovery is conducted. Corizon has not specifically identified the issues.

Plaintiff understands the central issue in this dispute is whether plaintiff's counsel violated *Lang v. Superior Court,* 170 Ariz. 602 (App. 1992). *Lang* authorizes counsel to communicate with former employees that do not fall within three exceptions. One exception is when the acts or omissions of the former employee give rise to the underlying litigation. *Id.* at 608-609. The care provided by CNA Valladores and RN Bishop does not form the basis for liability in this case, and the defense has disclosed no ongoing relationship between either witness and Corizon in connection with the litigation. On that basis alone, the *Lang* prohibition does not apply.

Plaintiff's physician expert has talked to both Valladores and Bishop, and others, about conditions at Corizon. The deficiencies that caused Nicholas's death led several Corizon employees to leave Corizon and seek work with CoreCivic at nearby Central Arizona Detention Center (CADC). Like Corizon, CoreCivic contracts with the government to provide healthcare to inmates. Since July 2003, Dr. John O'Steen has been providing primary care at CADC and works directly with physicians and nurses. It was through those physicians and nurses that Dr. O'Steen first learned about Nicholas Long before being retained as an expert in this case. Former employees complained to him that they left Corizon because of fears that their licenses were at risk. When counsel approached Dr. O'Steen, he was already familiar with the case and had already spoken to Corizon's former employees. Undersigned counsel knew when she retained Dr. O'Steen that he had had those conversations, but the individuals were not identified by name. Counsel later asked which, if any, of the individuals would be willing to testify. Dr. O'Steen responded by identifying Valladores and Bishop and two other former employees. Plaintiff requested the depositions of Valladores and Bishop.

The case law is clear that disqualification of a party's chosen expert and chosen counsel is an extraordinary remedy. *Compare, e.g., Crenshaw v. MONY Life Ins. Co.,* 318 F.Supp. 2d 1015, 1020 (S.D. Cali. 2004) (defense contacts with physician expert who participated in evaluating plaintiff for disability); *Grioli v. Delta Int'l Mach. Corp.,* 395 F.Supp.2d 11, 13 (E.D. N.Y. 2005) (disqualifying former attorney familiar defense strategy, experts, and from offering expert testimony in later, similar lawsuits). *See also Midwest Motor Sports v. Arctic Sales,* 347 F.3d 693 (8th Cir. 2003) (upholding evidentiary sanctions; denying monetary sanctions); *English Feedlot, Inc. v. Norden Laboratories, Inc.* 833 F.Supp. 1498, 1504 –1505 (D.Colo.1993) (lack of confidential information obtained by CPA from plaintiff militated against disqualification as expert); *Green, Tweed of Delaware v. DuPont Dow Elastomers, LLC,* 202 F.R.D. 426 (E.D. Penn 2001) (former employees not precluded from serving as opposing experts).

Defendant has not identified the substance or timing of the conversations to which it objects. Without this information, the Court has an incomplete record on which to rule on the relief Defendant seeks. Although Plaintiff does not concede that *Lang* applies, the parties agreed to a path forward to create the record the Court needs to resolve these issues.

At this point, the agreed upon discovery should be held of the witnesses and Dr. O'Steen. Plaintiff requests that Defendant identify the substance of their allegations as well as the dates previously requested. After the depositions, the parties should present the evidence to the court. This evidence will show that there was no purposeful violation of any rule, the information preceded any involvement by counsel, and these witnesses are not prohibitted under *Lang*.



Joel B. Robbins (011065)
Anne E. Findling (010871)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| vs. | (Wrongful Death) |
| STATE OF ARIZONA, a body politic; CORIZON HEALTH, INC., a Missouri corporation, doing business in the State of Arizona; CHRISTOPHER LEE JOHNSON, D.O., an individual, | **(Jury Trial Requested)** |
| Defendants. | |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

Plaintiffs Kenneth Long and Cora Long, for their complaint on behalf of themselves and the estate of Nicholas Long against Defendants State of Arizona and Corizon Health, Inc., allege as follows:

## PARTIES

1.    Plaintiffs Kenneth Long and Cora Long ("Plaintiffs") are residents of the State of Arizona. They are the natural parents of decedent Nicholas Long.

2.    Decedent Nicholas Long was a resident of the State of Arizona. Although incarcerated with the Arizona Department of Corrections at the time of his death, Mr. Long's residence was in Yavapai County, Arizona prior to his incarceration. He died on May 25, 2015.

3.    Plaintiff Cora Long is the duly appointed Personal Representative of the Estate of Nicholas Long, deceased, Yavapai Superior Court No. V1300PB201580054.

4.    Defendant State of Arizona is a governmental entity organized under the Constitution of the United States. Its subdivisions or agencies include the Arizona Department of Corrections (ADC).

5.    Defendant State of Arizona is liable for the acts and omissions of its employees within the scope of their employment, including the Director, officers and other employees of the ADC under the doctrine of *respondeat superior*.

6.    Pursuant to A.R.S. §31-201.01(F), any and all causes of action which may arise out of tort caused by the Director, prison officers, or employees of ADC, run only against the State.

7.    Defendant State of Arizona has a non-delegable duty of care, custody, and control over the inmates within its custody, including the duty to provide medical care for the serious medical needs of the inmates.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

8.    Effective March 4, 2013, Defendant Corizon Health, Inc. ("Corizon") contracted with Arizona Department of Corrections to provide full service medical, mental health, and dental care (collectively "healthcare") to the inmates housed at ASPC-Douglas, ASPC-Phoenix, ASPC-Eyman, ASPC-Safford, ASPC-Florence, ASPC-Tucson, ASPC-Lewis, ASPC-Winslow, ASPC-Perryville, ASPC-Yuma. Plaintiffs are informed and believe that Defendant Corizon was, and is, a for-profit corporation.

9.    Defendant Corizon was, and is, a state actor as that term is used within the jurisprudence of federal civil rights law.

10.    Defendant State of Arizona retained monitoring responsibility for Defendant Corizon's provision of health care to inmates within the Arizona Department of Corrections prison system.

11.    Defendant State of Arizona requires inmates to be provided opportunities for reasonable and appropriate access to a community standard of health care and appropriate referrals for inmates who present for treatment.

12.    Defendant State of Arizona remains ultimately liable for the acts and omissions of Defendant Corizon in providing healthcare to inmates within the ADC and the Arizona prison system.

13.    Defendant Chris Johnson DO was the medical director for ASPC-Florence Central Unit for approximately two years beginning in approximately June 2014. Defendant Johnson's identity and participation in the constitutional violation asserted herein were discovered on September 9, 2017, when Zoran Vukcevic, M.D. identified Defendant Johnson as a moving force in the treatment decisions made with respect to Nicholas Long.

14.    At the time that Defendant Johnson was made medical director of ASPC-Florence Central Unit, he had been licensed to practice medicine in

Arizona for less than one month and had no experience as a primary care physician, in correctional medicine, or in the direction of a complex health care delivery system.

15. Defendant Johnson was, and is, a state actor as that term is used within the jurisprudence of federal civil rights law.

## JURISDICTION AND VENUE

16. The amount in controversy exceeds the jurisdictional threshold of the Court.

17. A timely notice of claim pursuant to A.R.S. § 12-821.01 was served on Defendant State of Arizona on November 20, 2015. More than sixty (60) days have passed since this Notice of Claim was served upon the Defendant. By operation of statute, the claim is deemed denied.

18. This is an action against the State of Arizona. Venue is proper in the Superior Court in and for Maricopa County.

19. Plaintiffs hereby amend their complaint to add claims arising under 42 U.S.C. § 1983, Civil action for deprivation of rights. This Court has general jurisdiction over the claims asserted.

## FACTUAL BACKGROUND

### State of Arizona / Department of Corrections

20. The Arizona Department of Corrections promulgates department orders that govern an inmate's access to constitutionally mandated health care.

21. Upon information and belief, the contract between the State of Arizona and Corizon requires that Corizon comply with ADC's department orders.

22. Corizon's responsibility to inmates extends to ensuring "all efforts are taken to maintain the inmate's life while on the prison complex." Inmates

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

retain the right to refuse treatment, but if the inmate's decision is life-threatening, Corizon must follow Department Order § 1101.11 (1.2.1), which initiates the chain of command to ensure that the inmate is mentally competent and makes a knowing, fully informed decision, including seeking court authority for treatment.

23.  ADC policy requires notification to the Facility Health Administrator (FHA), the ADC Contract Monitor, and the Warden. A significant incident report must be completed, and the Department's General Counsel must be contacted. Contact with General Counsel initiates the involvement of the Office of the Attorney General in petition for court mandated treatment.

24.  Corizon's responsibility to inmates extends to inmates that ADC and/or Corizon consider to be on a "hunger strike." ADC policy requires that "hunger strikes" be reported through the chain of command including reporting to the Attorney General to seek court orders for treatment.

25.  Even if an inmate refuses needed medical treatment, Corizon's responsibility extends to ensuring "that every possible avenue is explored to encourage cooperation by inmates in completion of their own care."

26.  ADC policy also requires Corizon to initiate a multi-disciplinary panel in the event that there is a life-threatening failure of treatment.

*Parsons v. Ryan*

27.  On or about March 22, 2012, a prisoner civil rights complaint was filed in the United States District Court, District of Arizona, alleging systemic policies and practices with the Arizona Department of Corrections that resulted in the denial of the constitutional rights of inmates with ADC. Defendant Corizon is also a defendant in the *Parsons v. Ryan* case.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

28. Plaintiffs are informed and believe that Defendant Corizon was, and is, subject to potential civil penalties for non-compliance with certain performance measures related to staffing and referral of inmates for medically indicated care to non-employee ("outside") medical providers, specialists, and hospitals.

29. Plaintiffs are further informed and believe that Defendant Corizon was, and is, subject to potential contractual penalties for non-compliance with certain performance measures related to staffing and referral of inmates for medically indicated referrals to non-employee medical providers, specialists, and hospitals.

30. Plaintiffs are informed and believe that the potential for such penalties has created a financial disincentive for Corizon to initiate policy-mandated procedures.

### *Nicholas Long*

31. Nicholas Long was admitted to the Arizona Department of Corrections on March 12, 2014, to serve a sentence for selling six prescription pills to a neighbor to pay his cell phone bill. The maximum end date of his sentence was March 13, 2019.

32. Nicholas was naïve and guileless. His disciplinary tickets in prison were for playing basketball when he was supposed to be working with the grounds crew and refusing to shave.

33. At intake, Nicholas (5'10") was reported to have weighed 153 lbs. He reported a history of Bipolar Disorder (a mood disorder) that had been previously treated with medication. He also reported stomach issues for which he requested Prilosec (omeprazole), a medication commonly used for Gastroesophageal Reflux Disease (GERD). Nicholas was transferred to ASPC-Yuma to serve his sentence.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

34.   On March 28, 2014, Nicholas submitted a Health Needs Request (HNR) to request Prilosec "for his stomach." A progress note of April 3, 2014 documents Nicholas's weight to be 160 lbs. Nicholas was assessed as having GERD and a prescription for Prilosec was ordered.

35.   On June 28, 2014, Nicholas (at the time 180 lbs) was seen by a nurse for a chief complaint of 10/10 abdominal pain, intermittent, for one week. The pain was described as sharp. He was tachycardic. The record does not include referral to an appropriate provider or any GI work-up.

36.   Nicholas's October 7, 2014 HNR for "really bad" stomach cramping, diarrhea, pain, and inability to sleep, and his October 10, 2014 HNR report of "severe pain" resulted in being placed on the "nurse's line" on October 12. Records document bloody stool, inability to urinate, anorexia, diarrhea, weakness, dizziness and vomiting. He described his pain as 9/10 to 10/10. His weight was down 24 pounds since his last assessment. His abdomen was described as tender, hyperactive bowel sounds present, guarding present, with confirmed blood in his stool. The record does not include referral to an appropriate provider or any GI work-up. No CT was done, and no surgical consult was obtained.

37.   His condition deteriorated and on November 6, 2014 he was admitted to Yuma Regional Medical Center for possible acute colitis. He was discharged on November 11, with instructions to continue Levaquin.

38.   Nicholas was transferred to ASPC-Florence on or about November 25, 2014.  He continued to have stomach cramps and diarrhea. He was weak and required supplemental nutrition.

39.   Nicholas's GI symptoms continued. He had trouble eating. His stools were grossly abnormal, with bleeding and diarrhea.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

40. Sometime after his arrival at ASPC-Florence Central Unit, Nicholas Long came under the primary care of Zoran Vukcevic, M.D.

41. On November 26, 2014, Nicholas was admitted to Tempe St. Luke's Hospital. A CT revealed circumferential large bowel mucosal thickening consistent with infectious or inflammatory colitis, likely ulcerative colitis. Nicholas was reported to having signed out against medical advice, apparently because he was unable to eat. There's no record of a mental health consult or contact with Nicholas's family. Protocols for addressing his condition were ignored.

42. Nicholas was readmitted to Tempe St. Luke's Hospital on December 11, 2014, and again on January 23, 2015. Nicholas was released against medical advice.

43. At the time of his discharge back to the prison, Nicholas was described as extremely weak and cachectic, with increasing weight loss. He was refusing to eat. The attending physician from Tempe St. Luke's personally called and spoke with the medical director, now identified as Defendant Chris Johnson, D.O.

44. Sometime during this period, someone labeled Nicholas as being on a "hunger strike." The label clearly infected the treatment he was given. Although the records show that he complained that he was unable to eat and that his medication was causing side effects, he was stigmatized and denied appropriate care apparently on someone's assumption that his conduct was willful. Again, the protocols for addressing these issues were disregarded.

45. Policy required that Nicholas Long be seen by a psychiatrist before initiation of the process of obtaining court ordered treatment. Plaintiffs are informed and believe that Defendant Corizon and/or Defendant Johnson

refused a request by primary care physician Vukcevic for an urgent behavioral health consultation.

46. At relevant times, Robert Anderson, D.O. worked for Defendant Corizon at ASPC-Florence as a psychiatrist. As a psychiatrist, Dr. Anderson's responsibility was primarily mental health and not providing medical care.

47. On February 2, 2015, Dr. Anderson saw Nicholas Long emergently for a capacity evaluation at the prison. Dr. Anderson had not been informed of the critical nature of Nicholas Long's medical condition. Dr. Anderson was given virtually no information on Nicholas Long before being asked to see him.

48. Dr. Anderson observed a "young man lying in bed . . . extremely lean, in a condition that visually for me said this man is in peril of perhaps perishing if medical services aren't provided very quickly." Nicholas Long was unable to communicate in any meaningful way.

49. A capacity evaluation requires "that the individual [be] able to be verbal, responsive, clear, aware of their environment, responsive, nonpsychotic." Dr. Anderson saw "an individual who could provide nothing [to] do a competent capacity evaluation."

50. From available laboratory reports, based on his experience in family practice, Dr. Anderson concluded that Nicholas Long was a risk of dying if he did not receive emergent medical care.

51. Dr. Anderson assessed that Nicholas Long was suffering from delirium due to malnutrition and dehydration. Dr. Anderson was shocked and disturbed by Nicholas Long's condition.

52. From November 26, 2014 to February 2, 2015, Nicholas Long's medical and physical condition deteriorated as he became malnourished and cachectic. Although he reported that the medications he was being given were

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ineffective and, in fact, making him worse, providers failed to provide available alternative treatment.

53. Nicholas was ultimately admitted to Mountain Vista Medical Center after becoming unresponsive from starvation and dehydration. Abdominal surgery revealed severe adhesions and perforations. He had subtotal colectomy, placement of ileostomy, enterorrhaphy and lysis of adhesions.

54. Complications ultimately led to Nicholas's death on May 25, 2015.

## CLAIMS FOR RELIEF

### Count One

### NEGLIGENCE

### (Defendant State of Arizona)

55. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

56. The State of Arizona has a non-delegable duty of care, custody, and control of inmates within the state prison system. This non-delegable duty includes providing appropriate medical care for serious medical needs.

57. The State of Arizona also has a duty to ensure, through appropriate monitoring, that reasonable and necessary medical care is being provided by contracted and subcontracted medical providers duly licensed and acting within the scope of those licenses according to the community standard of care to inmates within the ADC and the Arizona state prison system is delivered.

58. The State of Arizona breached its duty to Plaintiffs' decedent by failing to provide appropriate medical care for his serious medical needs.

59. The State of Arizona further breached its duty to Plaintiffs' decedent by failing to adequately monitor the contracted medical services being provided to Plaintiffs' decedent and others.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

60. As a result of these breaches, Plaintiffs' decedent failed to receive competent medical care for his serious medical needs resulting in his death.

61. By virtue of the non-delegable duty set forth above, Defendant State of Arizona is vicariously liable for the medical negligence of Defendant Corizon Health, Inc. as set forth in Count Two of Plaintiffs' Complaint.

## Count Two

### NEGLIGENCE
### (Defendant Corizon Health, Inc.)

62. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

63. Defendant Corizon has a duty to provide reasonable healthcare in accordance with the community standard of care by appropriately licensed medical personnel acting within the scope of their respective licenses.

64. Defendant Corizon breached that duty by failing to provide necessary medical care to Plaintiffs' decedent within the community standard of care.

65. Defendant Corizon and its employees and agents failed to properly recognize, assess, diagnose or treat Plaintiffs' decedent's serious medical condition resulting in his death.

66. Defendant Corizon and its employees and agents failed to exercise that degree of care that a reasonable provider would exercise under the same or similar circumstances.

67. Defendant Corizon created policies and procedures that resulted in its employees failing to practice within the scope of their respective licenses.

68. Defendant Corizon's negligence includes:

  a. Failing to properly assess Plaintiffs' decedent after he made his medical needs known;

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

b. Failing to establish proper policy, procedures, custom and practice for identifying inmates who require a higher level of care than can be provided at the prison complex;

c. Failing to provide appropriate personnel and to train that personnel in the recognition of conditions requiring a higher level of medical care than can be provided at the prison complex;

d. Failing to properly assess Plaintiffs' decedent when his medical condition had obviously deteriorated;

e. Failing to investigate Plaintiffs' decedent's declining medical condition and waiting until his condition was life-threatening before taking action;

f. Failing to ascertain the source of Plaintiffs' decedent's complaints;

g. Failing to act on objective signs of an increasingly serious medical condition until it was too late for effective treatment;

h. Failing to provide adequate nutrition and hydration.

69. Ordinary care required Defendant Corizon to refer Plaintiffs' decedent to a qualified and properly equipped medical professional who could conduct an adequate and proper medical examination, properly and competently diagnose Mr. Long's medical condition, and provide for competent and adequate treatment.

70. As a result of the breach of Defendant Corizon's duties to Plaintiffs' decedent as more fully set forth above, Defendant Corizon caused Plaintiffs' decedent to be denied timely, appropriate and competent medical care resulting in his death.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

### Count Three

### WRONGFUL DEATH

### (All Defendants)

71.   Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

72.   Pursuant to A.R.S. § 12-611, et seq., Plaintiffs hereby assert a claim for damages for the wrongful death of Nicholas Long based on the wrongful acts and negligent conduct set forth in Counts One and Two of this complaint.

73.   As a result of the wrongful acts of Defendants as set forth above, Plaintiffs suffered damages including loss of love, companionship, and support.

### Count Four

### 42 U.S.C. § 1983

### (Federal Civil Rights – Defendant Corizon)

74.   Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

75.   The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment.

76.   The Fourteenth Amendment protects familial and associational relationships from interference without due process of law.

77.   As set forth herein, Nicholas Long presented with a serious medical need. Specifically, he was suffering from chronic and acute malnutrition, chronic and acute mental illness, and chronic and acute ulcerative colitis.

78.   Defendant Corizon knew that Nicholas Long presented with a serious medical need and knew that failure to treat that serious medical need could result in further significant injury (including death) and unnecessary and wanton infliction of pain.

79. Defendant Corizon knew that Nicholas Long likely required treatment with a biologic substance, which would be much more costly than the treatment provided by Defendant Corizon.

80. Defendant Corizon's response to Nicholas Long's serious medical need demonstrated deliberate indifference.

81. Defendant Corizon purposefully acted and/or failed to respond to Nicholas Long's medical need resulting in needless pre-death pain and suffering.

82. Upon information and belief, Defendant Corizon's decision not to follow ADC's policies, as it was required to do, was the product of a conscious choice motivated by financial considerations.

83. The nature and extent of Defendant Corizon's indifference to Nicholas Long's serious medical condition was revealed on September 6, 2017, when primary care provider Vukcevic, who characterized himself as a "whistle blower", testified that he attempted to, but "failed to let's say blow whistle enough or know enough to save [Nicholas Long's] life."

84. Dr. Vukcevic testified that specialist care / outside care was required including parenteral feeding, noting that correctional medicine cannot feed people intravenously.

85. Dr. Vukcevic testified that he attempted to initiate the process for court ordered treatment but was blocked by Defendant Corizon from doing so.

86. Dr. Anderson testified that staffing at ASPC-Florence made it "impossible" to deliver required psychiatric services. Resources for mental health were limited or not available to meet the mental health needs of patients such Nicholas Long.

87. The severity of Nicholas Long's medical and mental health conditions were documented in his medical record.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

88. As a direct result of the deliberate indifference of Defendant Corizon, Nicholas Long suffered further injury and suffering, and the unnecessary and wanton infliction of pain, including pre-death pain and suffering.

89. As a further direct result of the deliberate indifference of Defendant Corizon, Nicholas Long died.

90. As a further and direct result of the deliberate indifference of Defendant Corizon, Plaintiffs Cora Long and Kenneth Long experienced grief and suffering as set forth herein.

91. The conduct of Corizon as described herein was shocking and disturbing to its own providers.

### Count Five

### 42 U.S.C. § 1983

### (Federal Civil Rights – Defendants Johnson)

92. Plaintiffs re-allege the foregoing paragraphs as if fully set forth herein.

93. On or about November 24, 2014, Nicholas Long was transferred from ASPC-Yuma to ASPC-Florence Central Unit.

94. Defendant Johnson was the site medical director for ASPC-Florence Central Unit.

95. Defendant Johnson was responsible for clinical supervision of the medical providers at ASPC-Florence.

96. Defendant Johnson knew that Nicholas Long was transferred to ASPC-Florence Central Unit with a diagnosis of colitis and diarrhea with bleeding. Defendant Johnson further knew that Nicholas Long had lost substantial weight, including six pounds in the four days preceding his transfer.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

97. Defendant Johnson knew that Nicholas Long was sent out to the hospital and returned to the prison against medical orders. Defendant Johnson knew that Nicholas Long was refusing treatment and that his health was deteriorating. Defendant Johnson knew as early as January 6, 2015, that Dr. Vukcevic was specifically concerned that Nicholas Long needed a psychiatric evaluation.

98. Defendant Johnson further knew that Nicholas Long's medical condition had so deteriorated that he required court ordered treatment.

99. The severity of Nicholas Long's medical and mental health conditions were documented in his medical record.

100. As a direct result of the deliberate indifference of Defendant Johnson, Nicholas Long suffered further injury and suffering, and the unnecessary and wanton infliction of pain, including pre-death pain and suffering.

101. As a further direct result of the deliberate indifference of Defendant Johnson, Nicholas Long died.

102. As a further and direct result of the deliberate indifference of Defendant Johnson, Plaintiffs Cora Long and Kenneth Long experienced grief and suffering as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For special damages;

B.    For lost wages, income, and other economic losses;

C.    For general damages for the predeath pain and suffering experienced by Nicholas Long;

D.    For other general damages, including but not limited to pain and suffering, loss of enjoyment of life and other emotional trauma;

E.    For exemplary damages to the extent permitted by law;

F.    For taxable costs and pre- and post-judgment interest to the extent permitted by law;

G.    Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED:  March 20, 2018

**ROBBINS & CURTIN, p.l.l.c.**


By:    /s/Anne E. Findling
Joel B. Robbins
Anne E. Findling
*Attorneys for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

1

## CERTIFICATE OF SERVICE

2  I hereby certify that on March 20, 2018, I electronically transmitted the

3  attached document to the Clerk's Office using the Maricopa County Clerk of

4  Superior Court's Online eFiling System for filing and automatic transmittal of

5  the eFiled document to the assigned judge, the Honorable Rosa Mroz, and that

6  a copy of the foregoing has been served by e-service on counsel for all parties,

7  as designated below:

8  Anthony J. Fernandez
Rebeca Stanton
9  QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
10  2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
11  E: afernandez@qpwblaw.com
E: rebecca.stanton@qpwblaw.com
12  *Attorneys for Defendants, State of Arizona & Corizon*

13

14  Krista Carman
CARMAN LAW FIRM
15  246 S. Cortez Street
Prescott, AZ 86303
16  E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*
17

18

19  By:   /s/Kimberly M. Gonzalez
20        Kimberly M. Gonzalez

21

22

23

24

25

26

27

28



Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
*Attorneys for Defendants*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiff, | **DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER FOR LEAVE TO AMEND COMPLAINT** |
| v. | |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | (Assigned to the Honorable Rosa Mroz) |
| Defendants. | |

Defendants State of Arizona and Corizon Health, Inc., by and through undersigned counsel, hereby move for reconsideration of this Court's order granting Plaintiff's Motion for Leave to Amend Complaint. Plaintiffs' Motion for Leave to Amend Complaint was filed on February 21, 2018. Defendants' response therefore would have been due on March 12, 2018. *See* Ariz. R. Civ. P. 7.1 and 6. However, on March 8, 2018, the Court ordered a stay of all proceedings other than those concerning a discovery dispute issue (pursuant to the ruling made at the March 1, 2018 discovery teleconference between the parties and the Court). Thus, Defendants did not file a response to Plaintiff's Motion for Leave to Amend. But for this Court's order staying this case, Defendants would have vigorously and timely opposed the motion to amend. Defendants are prejudiced by the granting of the motion to amend without opportunity to respond.

Given the stay, Defendants request reconsideration of the Court's Order granting Plaintiff's Motion for Leave to Amend. Defendants further request that if or when the stay of the litigation is eventually lifted that this Court issue a further order setting forth a briefing schedule.

**RESPECTFULLY SUBMITTED** this 23rd day of March, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By: /s/ Rebecca E. Stanton
Rebecca E. Stanton
Anthony J. Fernandez
*Attorneys for Defendants*

**ORIGINAL** efiled via AZ TurboCourt
on this 23rd day of March, 2018 with:

**The Clerk of the Court**

The Honorable Rosa Mroz
**MARICOPA COUNTY SUPERIOR COURT**
East Court Building - 414
101 Jefferson
Phoenix, AZ 85003-2243

**COPIES** mailed this same day to:

Joel B. Robbins
Anne E. Findling
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ 85012-0001
*Attorneys for Plaintiffs*

Krista Carman
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
*Attorneys for Plaintiffs*

By /s/ Nelly Preca

| From: | CustomerService=turbocourt.com@smtp.turbocourt.com on behalf of TurboCourt Customer Service |
|---|---|
| To: | Nelly Preca |
| Subject: | E-Filing Status: Form Set # 2565539 Delivered |
| Date: | Friday, March 23, 2018 12:55:45 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2565539 has been DELIVERED to Maricopa County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2565539
Keyword/Matter #: 92015 - AJF - LONG
Delivery Date and Time: Mar 23, 2018 12:55 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Motion for Reconsideration: DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER FOR LEAVE TO AMEND COMPLAINT

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!

| From: | CustomerService=turbocourt.com@smtp.turbocourt.com on behalf of TurboCourt Customer Service |
|---|---|
| To: | Nelly Preca |
| Subject: | E-Filing Status: Form Set # 2565539 Filed |
| Date: | Monday, March 26, 2018 1:40:30 PM |

PLEASE DO NOT REPLY TO THIS EMAIL.

Your AZTurboCourt Form Set #2565539 has been accepted and ==FILED== at Maricopa County - Superior Court and is part of the official court record.

Here are your filing details:
Case Number: CV2016-007692
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2565539
Keyword/Matter #: 92015 - AJF - LONG
Filing date and time: Mar 23, 2018 12:55 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Motion for Reconsideration: DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER FOR LEAVE TO AMEND COMPLAINT

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

YOU MUST log back on to http://turbocourt.com/ to view and/or print a copy of your file stamped copy.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.
3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!



Joel B. Robbins (011065)
Anne E. Findling (010871)
Lauren E. Channell (033484)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG,<br><br>          Plaintiffs,<br><br>  vs.<br><br>STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona,<br><br>          Defendants. | Case No. CV2016-007692<br><br>**NOTICE OF APPEARANCE**<br><br>(Assigned to the Honorable Rosa Mroz) |

Notice is hereby given of the appearance of Lauren E. Channell of the firm of Robbins & Curtin, p.l.l.c, as additional counsel for Plaintiffs in the foregoing matter.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

RESPECTFULLY SUBMITTED: April 5, 2018

**ROBBINS & CURTIN, p.l.l.c.**

By:          /s/Lauren E. Channell
          Joel B. Robbins
          Anne E. Findling
          Lauren E. Channell
          *Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2018, I electronically transmitted the attached document to the Clerk's Office using the Maricopa County Clerk of Superior Court's Online eFiling System for filing and automatic transmittal of the eFiled document to the assigned judge, the Honorable Rosa Mroz, and that a copy of the foregoing has been served by e-service on counsel for all parties, as designated below:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
E: rebecca.stanton@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

By:    /s/Kimberly M. Gonzalez



Joel B. Robbins (011065)
Anne E. Findling (010871)
Lauren E. Channell (033484)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiffs, | **NOTICE OF APPEARANCE** |
| vs. | (Assigned to the Honorable Rosa Mroz) |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona, | |
| Defendants. | |

Notice is hereby given of the appearance of Lauren E. Channell of the firm of Robbins & Curtin, p.l.l.c, as additional counsel for Plaintiffs in the foregoing matter.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

RESPECTFULLY SUBMITTED: April 5, 2018

**ROBBINS & CURTIN, p.l.l.c.**

By: /s/Lauren E. Channell

Joel B. Robbins
Anne E. Findling
Lauren E. Channell
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2018, I electronically transmitted the attached document to the Clerk's Office using the Maricopa County Clerk of Superior Court's Online eFiling System for filing and automatic transmittal of the eFiled document to the assigned judge, the Honorable Rosa Mroz, and that a copy of the foregoing has been served by e-service on counsel for all parties, as designated below:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
E: rebecca.stanton@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

By: /s/Kimberly M. Gonzalez

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267



Joel B. Robbins (011065)
Anne E. Findling (010871)
Lauren E. Channell (033484)
**ROBBINS & CURTIN, P.L.L.C.**
301 E. Bethany Home Road, Suite B-100
Phoenix, Arizona 85012-0001
Telephone: (602) 285-0100
Facsimile: (602) 265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com

Krista Carman (021700)
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com

*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the estate of NICHOLAS LONG,<br><br>    Plaintiffs,<br><br>  vs.<br><br>STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri corporation, doing business in the State of Arizona,<br><br>    Defendants. | Case No. CV2016-007692<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER FOR LEAVE TO AMEND COMPLAINT**<br><br>(Assigned to the Honorable Rosa Mroz) |

Plaintiffs respond in opposition to Defendants' motion for reconsideration of the Court's order granting Plaintiffs leave to amend their complaint. Plaintiffs filed their

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ◆ Fax: (602) 265-0267

motion to amend the complaint before the stay went into effect; allowing reconsideration at this time would be unfairly prejudicial to Plaintiffs. Defendants have not shown a meritorious reason for the Court to reverse its decision allowing amendment. And, Defendants are free to assert available defenses in motion practice under Rule 12. Therefore, the motion for reconsideration should be denied.

## ARGUMENT

Plaintiffs filed their motion to amend the complaint on February 21, 2018, before the Court stayed the case to allow Defendants to conduct certain discovery. Following the entry of the Court's March 20, 2018 order granting the amendment, Plaintiffs filed the amended complaint. Pursuant to that same order, Plaintiffs served the complaint on Defendant Johnson on March 28, 2018.

Defendants did not reach out to Plaintiffs before filing their motion for reconsideration, so the parties were unable to discuss an agreed-upon approach to the motion to amend such as a tolling agreement or other remedy that would not prejudice Plaintiffs.

In contrast to the potential prejudice to Plaintiffs, Defendants have suffered no prejudice as a result of the amendment. At Defendants' request, there are no impending deadlines. They have not done expert disclosures. At the time of his deposition, Dr. Johnson was still an employee of Corizon. Dr. Johnson's participation in the decisions related to Nicholas Long's care were not disclosed by Defendants and only became known to Plaintiffs through the deposition of another Corizon provider.

Plaintiffs continue to have disclosure obligations and time continues to run on Plaintiffs' claims. It would not be a great leap to assume that had Plaintiffs waited to amend their complaint that Defendants would be strenuously objecting to the delay.

## CONCLUSION

Defendants have an adequate remedy through Ariz. Civ. P. Rule 12. Because the case has been stayed and defense experts have not been disclosed, Defendants will not

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

suffer prejudice as a result of the amendment. Therefore, the Court should not reconsider its decision to grant the amendment.

RESPECTFULLY SUBMITTED: April 5, 2018

**ROBBINS & CURTIN, p.l.l.c.**

By:     /s/Anne E. Findling
Joel B. Robbins
Anne E. Findling
Lauren E. Channell
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2018, I electronically transmitted the attached document to the Clerk's Office using the Maricopa County Clerk of Superior Court's Online eFiling System for filing and automatic transmittal of the eFiled document to the assigned judge, the Honorable Rosa Mroz, and that a copy of the foregoing has been served by e-service on counsel for all parties, as designated below:

Anthony J. Fernandez
Vincent J. Montell
QUINTAIROS, PREIETO, WOOD & BOYER, P.A.
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
E: afernandez@qpwblaw.com
E: vmontell@qpwblaw.com
E: rebecca.stanton@qpwblaw.com
*Attorneys for Defendants, State of Arizona & Corizon*

Krista Carman
CARMAN LAW FIRM
246 S. Cortez Street
Prescott, AZ 86303
E: kcarman@carmanlf.com
*Co-Counsel for Plaintiffs*

By:    /s/Anne E. Findling

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267



Anthony J. Fernandez (Bar No. 018342)
Rebecca E. Stanton (Bar No. 032291)
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2390 E. Camelback Road, Suite 440
Phoenix, Arizona 85016
Telephone: (602) 954-5605
Facsimile: (602) 954-5606
afernandez@qpwblaw.com
rebecca.stanton@qpwblaw.com
*Attorneys for Defendants*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| KENNETH and CORA LONG, husband and wife, individually, and as statutory beneficiaries for Nicholas Long, deceased; and on behalf of the Estate of NICHOLAS LONG, | Case No. CV2016-007692 |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT** |
| v. | (Assigned to the Honorable Rosa Mroz) |
| STATE OF ARIZONA, a body politic, CORIZON HEALTH, INC., an Missouri Corporation, doing business in the State of Arizona, | **(ORAL ARGUMENT REQUESTED)** |
| Defendants. | **(COURT REPORTER REQUESTED)** |

Defendants State of Arizona and Corizon Health, Inc. ("Corizon"), by and through undersigned counsel, hereby respond in opposition to Plaintiffs' Motion for Leave to Amend Complaint. This matter is currently otherwise stayed in order for Defendants to investigate and brief issues surrounding Plaintiffs' expert's improper contacts with former Corizon employees. Plaintiffs' Proposed Amended Complaint seeks to add federal claims which, if accepted, would permit Defendants to potentially remove the matter to federal court. A removal would, in effect, undo the stay and force the parties to re-litigate the *Lang* issues in federal court. For that reason, the Amendment should not be permitted at this time. Moreover, with respect to the civil rights claim against Chris Johnson, D.O. the claim is time-barred and should not be permitted in any instance.

///

## I. Procedural Background

Plaintiffs' Complaint was originally filed on May 19, 2016 and alleges a state-law medical negligence/wrongful death claim concerning decedent Nicholas Long. Mr. Long died in Arizona Department of Corrections' custody on May 25, 2015. Plaintiffs' Complaint names the State of Arizona and Corizon as the sole defendants. Corizon (the contracted provider of health care services to inmates within the Arizona Department of Corrections), provided care and treatment to Mr. Long until several months prior to his death.

Defendants answered Plaintiffs' Complaint on September 1, 2016 and discovery commenced. The parties exchanged initial disclosure statements on October 24, 2016. At that time, Defendants provided Plaintiffs with the medical records related to Mr. Long's care by Defendants. Plaintiffs' depositions occurred on July 7, 2017. Former Corizon employees Zoran Vukcevic, M.D. (September 6, 2017), Robert Anderson, D.O. (September 8, 2017) and Jawad Riaz, M.D. (December 15, 2017) were deposed. The parties attended private mediation on November 13, 2017, but did not reach a settlement. Current Corizon employee Chris Johnson, D.O. was deposed on December 20, 2017.

On January 31, 2018, defense counsel discovered that Plaintiffs' counsel (through their retained standard of care expert John O'Steen M.D. and his agent Gary Norris) had conducted undisclosed and improper interviews of former Corizon staff about the issues at hand in this lawsuit, including, among other matters at issue, Mr. Long's care and treatment.[1]

On February 16, 2018, Defense counsel notified Plaintiffs' counsel of the discovery of the contacts, and asserted they were improper under *Lang v. Superior Court*. Defense counsel requested discovery into the communications, and requested that Dr. O'Steen be withdrawn. On February 19, 2018, Plaintiffs' counsel notified Defendants that she was

---

[1] These contacts are memorialized in the email exchanges dated June-July, 2017, attached at **Exhibit 1**, obtained by Defendants during the course of the stay concerning the *Lang* issues. In recent letters to the witnesses, Plaintiffs admit the former Corizon employees are *Lang*-protected witnesses. *See* **Exhibit 2**, Plaintiffs' correspondence to Darcee Bishop and Jakelin Valladares.

2

unwilling to withdraw Dr. O'Steen as an expert. On February 20, 2018, Defendants filed a Rule 37 Motion for Sanctions and a Request for a Stay. On February 21, 2018, Plaintiffs filed the instant Motion for Leave to Amend the Complaint to add federal claims.

In addition to the original state-law claim for medical negligence/wrongful death, Plaintiffs' Proposed Amended Complaint adds a federal 42 U.S.C. §1983 deliberate indifference claim against Defendant Corizon. The Proposed Amended Complaint also names Chris Johnson, D.O. as a newly-added Defendant, and asserts a federal 42 U.S.C. §1983 deliberate indifference claim against him.

On March 8, 2018, the Court ordered the case stayed until July 9, 2018, in order to allow Defendants to investigate the applicability of *Lang* with respect to the contacts between Dr. O'Steen and former Corizon employees and file any appropriate motion for sanctions. On March 19, 2018, the Court granted Plaintiffs' Motion for Leave to Amend Complaint, but vacated the order on April 18, 2018 to permit Defendants an opportunity to respond.

The parties currently have four witnesses scheduled for deposition on June 6, 2018 to investigate the *Lang* issues (John O'Steen, M.D., his agent Gary Norris, Jakelin Valladares, and Darcee Bishop).

## II. Law and Argument

### a. Plaintiffs' Proposed Federal Claim Against Chris Johnson, D.O. is Time-Barred

"Statutes of limitations afford substantial rights to prospective defendants, including protection from stale claims and uncertainty about potential unresolved claims." *Flynn v. Campbell,* 243 Ariz. 76, 402 P.3d 434, 439 (2017 (internal quotations omitted). Federal laws contain no specific limitation period for civil rights claims brought under 42 U.S.C. § 1983. *Madden-Tyler v. Maricopa Cty.,* 189 Ariz. 462, 465, 943 P.2d 822, 825 (Ct. App. 1997). Instead, the Supreme Court of the United States has held that the personal injury statute of limitations of the forum state should be applied. 189 Ariz. at 466, 943 P.2d at 826; *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 1949 (1985). In Arizona, the

3

statute of limitations for a personal injury action, and thus a § 1983 deliberate indifference claim, is two years. *Madden-Tyler*, 189 Ariz. at 466, 943 P.2d at 826.

Plaintiffs may not rely on the relation back doctrine contained in Ariz. R. Civ. Pro. 15(c). An amendment adding a new defendant does not relate back to the original date of filing, absent a showing of mistaken identity concerning the party to be added. *See Levinson v. Jarrett ex rel. Cty. of Maricopa*, 207 Ariz. 472, 88 P.3d 186 (Ct. App. 2004). Where a proposed amended complaint seeks to add a claim that would be futile under the statute of limitations, a court may properly deny the amendment. *Tovrea v. Nolan*, 178 Ariz. 485, 490, 875 P.2d 144, 149 (Ct. App. 1993).

Decedent expired on May 25, 2015. The statute of limitations on any potential civil rights claim related to his death expired, at the latest, by May 25, 2017. [2] To date, Dr. Johnson has never been a party to this lawsuit. No "Doe" defendants were named. Dr. Johnson had no notice of the suit until his deposition was taken on December 20, 2017 (well past the expiration of the statute of limitations). Plaintiffs have not alleged any mistake with respect to the failure to name Dr. Johnson within the two-year time period prescribed by the statute of limitations. Plaintiffs claim against Dr. Johnson is time-barred; Plaintiffs should not be permitted to amend the Complaint to add a time-barred claim.[3]

### b. Permitting Plaintiffs' Proposed Federal Claim Against Corizon During the Stay in Litigation Would Prejudice Defendants Against Removal to Federal Court

Plaintiffs' original Complaint alleges only state-law claims of medical negligence/wrongful death. Plaintiffs now seek to amend their Complaint to add federal civil rights claims arising under the Unites States Constitution. The timing of Plaintiffs' filing of the Motion to Amend is suspect – it occurred only <u>after</u> Defendants' counsel alerted Plaintiffs' counsel that they were aware of the potential *Lang* issue. Plaintiffs allege

---

[2] In fact, Dr. Johnson's last contact involving Decedent was several months before Decedent's death. Thus the statute of limitations arguably expired several months <u>before</u> May 25, 2017.
[3] Dr. Johnson has not made an appearance in this matter. Should Dr. Johnson be added as a defendant, Dr. Johnson reserves all rights to raise and brief a statute of limitations defense, or any other applicable defenses.

that the factual basis of their proposed civil rights claim against Corizon is based on information gathered at the depositions of Dr. Vukcevic and Dr. Anderson. Those depositions occurred in early September of 2017, more than five (5) months before the Motion to Amend was filed. *See* Plaintiff's Proposed Amended Complaint, attached at Exhibit 2 to Plaintiffs' Motion for Leave to Amend Complaint, at ¶¶ 74-91. Amendments need not be permitted where, in the discretion of the trial court, there has been "undue delay, dilatory action or undue prejudice." *Owen v. Superior Court of State of Ariz., In & For Maricopa Cty.,* 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982).

If the Proposed Amended Complaint is granted by this Court, Defendants have thirty days to exercise their statutory right to assert federal question jurisdiction and remove the entire action to federal court pursuant to 28 U.S.C.A. §§ 1441 and 1446. Thus, if granted, Defendants will be faced with the prejudicial choice between waiving removal in order to proceed with the discovery into the *Lang* issues ordered by this Court (including the upcoming depositions), and asserting their right to have the federal claims heard in federal court. If the Proposed Amended Complaint is granted and Defendants proceed with removal, Defendants anticipate they will need to re-brief the entire *Lang* issue before the federal court. This would not be a judicially economic course of action. Furthermore, as the Court recognized at the March 8, 2018 hearing, if the Court finds that a *Lang*/ethical violation occurred, Plaintiffs' counsel may face serious sanctions. Those sanctions could include disqualification of counsel. For that reason, the Court ordered a four-month stay in all other matters concerning the litigation while discovery into the *Lang* issue is conducted. Given the potentially serious consequences hinging on the outcome of the *Lang* investigation, Plaintiffs should not be permitted to continue to pursue the case, and skirt the stay, in a different forum. *See Richards v. Holsum Bakery, Inc.,* 2009 WL 3740725, at *1 (D. Ariz. Nov. 5, 2009) (proper course of action is to decide issue of ethical violations of Plaintiff's counsel, and potential sanction of disqualification, prior to resolving motion to remand to state court).

The stay is scheduled to conclude by July 7, 2018. Defendants are to file any Motion for Sanctions by that date. Defendants request that the Court refrain from ruling on the Proposed Motion to Amend until such date as the parties have completed briefing on any potential Motion for Sanctions and the Court has issued a final ruling. This course of action would allow Defendants to remove the matter to federal court, as is their right, without prejudice.

**III. Conclusion**

For the foregoing reasons, Plaintiffs' motion to amend should be denied.

**RESPECTFULLY SUBMITTED** this 8th day of May, 2018.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

By: /s/ Rebecca E. Stanton
Rebecca E. Stanton
Anthony J. Fernandez
*Attorneys for Defendants*

**ORIGINAL** efiled via AZ TurboCourt
on this 8th day of May, 2018 with:

**The Clerk of the Court**

The Honorable Rosa Mroz
**MARICOPA COUNTY SUPERIOR COURT**
East Court Building - 414
101 Jefferson
Phoenix, AZ  85003-2243

**COPIES** mailed this same day to:

Joel B. Robbins
Anne E. Findling
Lauren E. Channell
**ROBBINS & CURTIN, PLLC**
301 E. Bethany Home Road, Suite B100
Phoenix, AZ  85012-0001
*Attorneys for Plaintiffs*

6

Krista Carman
**CARMAN LAW FIRM**
246 S. Cortez Street
Prescott, AZ 86303
*Attorneys for Plaintiffs*


By  /s/ Nelly Preca

EXHIBIT 1

# Re: Confidential

To Kim Gonzalez <kim@robbinsandcurtin.com>

Kim,

Dr. O'Steen said that he will speak to a number of potential witnesses at his place of employment this week to see if they would be willing to testify.  It will be towards the end of the week before he can speak with all of them.

Gary

> On June 21, 2017 at 5:06 PM Kim Gonzalez <kim@robbinsandcurtin.com> wrote:
>
> Hi Gary,
>
> Is Dr. O'steen able to provide names of any witnesses, nurses that may be willing to testify?
>
> Thank you.
>
> Sincerely,
>
> *Kimberly M. Gonzalez*
>
> Kimberly M. Gonzalez, Paralegal
> **ROBBINS & CURTIN, p.l.l.c.**
> 301 E. Bethany Home Road, Suite B-100
> Phoenix, Arizona 85012
> T: 602-285-0100
> F: 602-265-0267
> E: Kim@robbinsandcurtin.com
> W: www.robbinsandcurtin.com

## Kim Gonzalez

| | |
|---|---|
| **From:** | Osteen, John <John.Osteen@corecivic.com> |
| **Sent:** | Monday, July 17, 2017 8:16 AM |
| **To:** | Kim Gonzalez |
| **Cc:** | 'gnorris11@cox.net' |
| **Subject:** | Potential witnessed for Mr. Long's case |

1). Ms. Jakeline Valladores, CAN - Ms. Valladores might be able to provide the most compelling and impassioned testimony. She is the young lady that worked at Florence Complex Central Unit when Mr. Long was there and told me that one of the reasons she resigned her position with Corizon was because of what she perceived to be a lack of proper care for Mr. Long. She pointed out that it was very discouraging for her to come in each morning and have to clean the bloody diarrhea out of Mr. Long's bed sores while also having the watch him deteriorate with "nothing being done." She also noted a lack of proper care with other Inmates including one that was admitted with a bedsore and allowed to deteriorate to the point that his leg had to be amputated.

2). Dr. Stephen Graham who worked at Eyman and Florence complexes from mid-2014 to mid-2016 before resigning his position and joining CoreCivic. He stated to me that he noted a progressive decline in the ability to provide adequate care for the Inmates at both complexes due to what he perceived to be Corizon's interest in controlling costs and maximizing profits. Eventually he became so concerned about his personal medical liability that he felt compelled to resign.

3). Darcee Bishop, RN - Ms Bishop worked at HU8/HU10 when Mr. Long was there and recalls caring for him. She might testify to his lack of cooperation with treatment which of course is the defense that Corizon will be using but also told me that she resigned her position there due to concerns about personal liability indicated that she felt Corizon policies and lack of staffing compromised health care for the IM's.

4). Yarira Lizarraga, RN. Who also left Corizon over liability issues. I have not yet been able to ask if she would be willing to testify but should see her this week

All of these continue to worsk for CoreCivic at Central Arizona Floence Correctional Complex where I work

It is also my understanding the Dr. V, the attending physician at the time for Mr. Long, no longer works there.

(i) This e-mail and any files transmitted with it are confidential and intended solely for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately and delete this e-mail and any associated files from your system. (ii) Views or opinions presented in this e-mail are solely those of the author and do not necessarily represent those of CoreCivic. (iii) The recipient should check this e-mail and any attachments for the presence of viruses. The company accepts no liability for errors or omissions caused by e-mail transmission or any damage caused by any virus transmitted by or with this e-mail. This email has been scanned for content and viruses by the Barracuda Email Security System.

EXHIBIT 2



301 E. Bethany Home Rd.
Suite B-100
Phoenix, AZ 85012

602/285-0100 phone
602/265-0267 fax
www.robbinsandcurtin.com

Robbins
& Curtin
PLLC

April 24, 2018

Jakelin Valladares
1070 N. 8th Place, Apt. 19
Coolidge, Arizona 85128

> **Re:** *Deposition Subpoena – Long v. Corizon, et al.*
> **Case No. CV2016-007692**

Dear Ms. Valladares:

This letter is sent to advise you that you have been subpoenaed for deposition on June 6, 2018 at 3:30 p.m. in the matter of *Kenneth and Cora Long v. Corizon Health, Inc.., et al.,* in which you are listed as a witness regarding the wrongful death of their son, Nicholas Long. Please mark your calendar. You are bound by this subpoena until released by our office. *Failure to appear could result in a civil arrest warrant being issued.* Enclosed is a check which is payment in full for your witness fee and mileage one-way.

The location of your deposition is in Chandler, AZ and listed on the Subpoena & Cross-Notice of Deposition. We are not able to speak with you, so if you have any question, please contact counsel for Corizon, Anthony Fernandez or Rebecca Stanton at 602-954-5605.

Thank you very much for your cooperation.

Very truly yours,

**ROBBINS & CURTIN, p.l.l.c.**

Kimberly M. Gonzalez
Paralegal for Anne E. Findling

:kg
Enclosures: As stated
cc:     Anthony Fernandez, Esq.
        Rebecca Stanton, Esq.
        Krista Carman, Esq.



**Robbins & Curtin PLLC**

301 E. Bethany Home Rd.
Suite B-100
Phoenix, AZ 85012

602/285-0100 phone
602/265-0267 fax
www.robbinsandcurtin.com

April 24, 2018

Darcee Bishop
393 W. Welsh Black Cir.
San Tan Valley, AZ 85143

   **Re:**  *Deposition Subpoena – Long v. Corizon, et al.*
     **Case No.  CV2016-007692**

Dear Ms. Bishop:

   This letter is sent to advise you that you have been subpoenaed for deposition on June 6, 2018 at 2:00 p.m. in the matter of *Kenneth and Cora Long v. Corizon Health, Inc.., et al.,* in which you are listed as a witness regarding the wrongful death of their son, Nicholas Long. Please mark your calendar.  You are bound by this subpoena until released by our office. ***Failure to appear could result in a civil arrest warrant being issued.*** Enclosed is a check which is payment in full for your witness fee and mileage one-way.

   The location of your deposition is in Chandler, AZ and listed on the Subpoena & Cross-Notice of Deposition.  We are not able to speak with you, so if you have any question, please contact counsel for Corizon, Anthony Fernandez or Rebecca Stanton at 602-954-5605.

   Thank you very much for your cooperation.

       Very truly yours,

       **ROBBINS & CURTIN, p.l.l.c.**

       Kimberly M. Gonzalez
       Paralegal for Anne E. Findling

:kg
Enclosures:  As stated
cc:  Anthony Fernandez, Esq.
   Rebecca Stanton, Esq.
   Krista Carman, Esq.

| | |
|---|---|
| **From:** | CustomerService=turbocourt.com@smtp.turbocourt.com on behalf of TurboCourt Customer Service <CustomerService@TurboCourt.com> |
| **Sent:** | Tuesday, May 08, 2018 12:02 PM |
| **To:** | Nelly Preca |
| **Subject:** | E-Filing Status: Form Set # 2620443 Delivered |

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 2620443 has been <mark>DELIVERED</mark> to Maricopa County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: CV2016-007692 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)
Case Title: Long, Et.Al. Vs. State Of Arizona, Et.Al.
Filed By: Nelly Preca
AZTurboCourt Form Set: #2620443
Keyword/Matter #: 92015 - AJF - LONG
Delivery Date and Time: May 08, 2018 12:01 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Response: DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT
Exhibit/Attachment (Supporting): EXHIBIT 1
Exhibit/Attachment (Supporting): EXHIBIT 2

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
Total Amount Paid: $6.70

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov. Please have your AZTurboCourt Form Set # available.

To view the link above:
Click on the link OR
1) Highlight the website address "URL" above, then Right Click on highlighted "URL" and select Copy.
2) Open a NEW internet browser window.

3) Right Click inside the address field in the new internet browser window and select Paste.

Thank you for using TurboCourt!